# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

DAVID O'CONNELL, individually and on
behalf of all others similarly situated,

                    Plaintiff,

v.                                                    C.A. No. 20-cv-0031-WES-PAS

UNITED STATES CONFERENCE OF
CATHOLIC BISHOPS,

                    Defendant.

## DEFENDANT'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

      Defendant United States Conference of Catholic Bishops ("USCCB"), through

counsel, submits the following memorandum of law in support of its motion to dismiss this

action for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and for improper

venue pursuant to Fed. R. Civ. P. 12(b)(3).[1]

## I.     INTRODUCTION

      Plaintiff's Complaint seeks to hale the Washington, D.C.-based USCCB into

court in Rhode Island to defend a nationwide class action relating to the Holy See's annual

collection known in the United States as Peter's Pence.  The case should be dismissed because

the USCCB does not have any contacts with Rhode Island that would support personal

jurisdiction.  The USCCB has no staff, offices, property, accounts, or other presence in Rhode

Island.  The standardized Peter's Pence bulletin inserts and other solicitation materials alleged in

the Complaint are prepared in Washington D.C., are made available to any diocese that requests

---

[1] By filing this motion, the USCCB in no way acknowledges or concedes the jurisdiction of the Court or waives arguments contesting personal jurisdiction, all of which are expressly reserved.

them, and are not targeted at Rhode Island.  The USCCB has no authority or control over the

governance of individual dioceses, and does not direct or control the Peter's Pence Collection in

Rhode Island (or anywhere else).  Subjecting the USCCB to litigation in Rhode Island, when it

has not purposefully availed itself of the benefits and protections of Rhode Island law, is not

reasonable or foreseeable and would violate the USCCB's constitutional right to due process.

The Complaint should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(3)

because the lack of minimum contacts between the USCCB and Rhode Island makes this an

improper venue.  The USCCB does not reside in Rhode Island, and the USCCB's alleged acts

giving rise to the claim took place in Washington, D.C, not in Rhode Island.

## II.    **BACKGROUND FACTS**

### A.    **The United States Conference of Catholic Bishops**

The USCCB is an assembly of all active Roman Catholic Bishops (which includes

Archbishops and Cardinals of the Church) in the United States and the U.S. Virgin Islands.  It

was organized as a non-profit charitable civil corporation under the laws of the District of

Columbia in 2001, and previously existed under other corporate names, U.S. Catholic

Conference ("USCC") and National Conference of Catholic Bishops ("NCCB"), since the

creation of its original predecessor organization, called the National Catholic Welfare Council, in

1919.  Exhibit A, Affidavit of Theresa Ridderhoff ("Ridderhoff Aff.") ¶ 2.

The USCCB advocates and promotes the pastoral teachings of the Roman

Catholic Church in such areas as liturgy, doctrine, education, family life, health care,

immigration, civil rights, criminal justice, and the economy.  Ridderhoff Aff. ¶ 3.

The USCCB's headquarters and principal place of business is located in

Washington, D.C.  All of its employees are located in Washington, D.C. with the exception of

two who are located in New York and one who is located in Miami, Florida.  Ridderhoff Aff. ¶ 4.

Under the Roman Catholic Church's *Code of Canon Law*, the tasks of the USCCB are closely circumscribed.  The Catholic Church is organized into dioceses, which in turn are divided into parishes.  Governance of a diocese rests with the bishop of the diocese, not with the USCCB.  Ridderhoff Aff. ¶ 5.

The USCCB does not have any authority or control over individual bishops or dioceses.  Actions taken or decisions made by bishops or dioceses, including those in Rhode Island, are made independently of the USCCB.  The USCCB does not supervise the conduct of bishops in Rhode Island or elsewhere.  The bishops of the Catholic Church are responsible directly to the Holy See, not to any intermediate entity.  Ridderhoff Aff. ¶ 6.

Now, and at all times relevant to this lawsuit, the USCCB has maintained no offices, facilities, employees, agents, bank accounts, mailboxes, or telephone listings in the State of Rhode Island.  Ridderoff Aff. ¶ 7.

The USCCB does not own any real or personal property in Rhode Island, including any real or personal property used by dioceses or parishes in Rhode Island.  Ridderhoff Aff. ¶ 8.

The USCCB has not applied for, or obtained, permission to do business in Rhode Island.  Neither the USCCB, nor its predecessor organizations, ever have been registered to do business or been registered to receive charitable donations in Rhode Island.  Ridderhoff Aff. ¶ 9.

From its headquarters in Washington, D.C., the USCCB Office of National Collections ("National Collections") assists the Holy See in promoting the Peter's Pence Collection, which raises money to assist the Holy Father in responding to various needs.  The

3

Peter's Pence Collection, which is worldwide, provides funds to the Holy See to be used at the discretion of the Holy Father, Pope Francis.  Ridderhoff Aff. ¶ 10.

Each year, National Collections requests that dioceses advise it of whether they intend to participate in the Peter's Pence Collection.  The USCCB does not, and cannot, direct dioceses to do so.  Dioceses' participation in the Peter's Pence Collection is voluntary on the part of the dioceses.  If a diocese intends to participate, it is asked to provide the date on which it intends to take up the local collection.  Based on that information, and if and as requested by individual dioceses, National Collections provides limited resources to dioceses for parish use (e.g. bulletin inserts, posters and pew envelopes) to assist dioceses in their promotion of any Peter's Pence Collection that the local bishop decides to pursue.  Ridderhoff Aff. ¶ 11.

These communications take place from, and materials are provided from, Washington, D.C.  The USCCB does not conduct or oversee the Peter's Pence Collection in local dioceses, including in Rhode Island, and does not make visits to dioceses, including Rhode Island, in support of the Peter's Pence Collection, nor does it provide accountability documents to donors (*e.g.* acknowledgement letters, or an annual report) for this appeal, in Rhode Island or anywhere else.  Ridderhoff Aff. ¶ 12.

The USCCB also does not receive or administer funds for the Peter's Pence Collection, or control how they are used.  Rather, funds from parish appeals are gathered by the parish's diocese, and then are sent from the diocese directly to the Apostolic Nunciature in the United States, the equivalent of the Holy See's "embassy" in the United States.  The USCCB provides a blank transmittal form to dioceses to assist them in remitting funds to the Nunciature. The USCCB does not exert any control over funds raised by diocesan Peter's Pence Collections

nor does it have any role in deciding how funds are used, either in Rhode Island or anywhere else.  Ridderhoff Aff. ¶ 13.

**B.**     **The Claims In Plaintiff's Complaint**

The Complaint alleges (mistakenly) that the USCCB "has solicited and collected hundreds of millions of dollars in donations from parishioners of Catholic churches throughout Rhode Island and the United States as part of its 'Peter's Pence' collection."  Complaint ¶ 3.  The Peter's Pence Collection "is a special collection taken from Catholics around the world every June."  Complaint ¶ 18.

According to the Plaintiff, the USCCB "promotes and administers the Peter's Pence collection in coordination with dioceses, parishes, and churches across the country."  Complaint ¶ 19.  Further, the USCCB "creates and distributes uniform promotional materials for specific use in parishes and dioceses . . . all freely downloadable from USCCB's website."  Complaint ¶ 20.  The USCCB creates "exemplar 'bulletin announcements,'" Complaint ¶ 23, and suggested verbal announcements.  Complaint ¶ 24.  These materials refer to the Peter's Pence collection as a way to assist the charitable works of Pope Francis for the relief of people in need.  Complaint ¶¶ 22-24.

Mr. O'Connell states that he regularly attends Sacred Heart Church in East Providence, Rhode Island.  Complaint ¶ 34.  During the summer of 2018, he was "solicited from the pulpit" at his parish to contribute to the Peter's Pence Collection, and allegedly made a cash donation of an unspecified amount with the belief that it would be used "entirely and exclusively for emergency assistance to the poor."  *Id*. ¶¶ 34-35.  Based on various news articles published the following year in late 2019, he alleges that his donation was not used for that purpose.  *Id.* ¶¶ 27-30.

The Complaint alleges claims for Fraud (Count I), Unjust Enrichment (Count II) and Breach of Fiduciary Duty (Count III) and seeks restitution, damages and disgorgement among other relief.  Plaintiff also seeks certification of a proposed class of "[a]ll persons in the United States who donated monies to the Peter's Pence collection."  *Id.* ¶ 37.

III.   **ARGUMENT**

A.   **Plaintiff Has The Burden Of Establishing Personal Jurisdiction Over The USCCB That Is Consistent With Constitutional Due Process**

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of making a prima facie showing that the requirements of both the state long arm statute and constitutional due process have been met.  Under this prima facie test, the Court "consider[s] only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction."  *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992) (emphasis omitted); *see also A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016) (plaintiff bears the burden to establish personal jurisdiction over the defendant). No such showing has been made here.

To make such a showing, the plaintiff "ordinarily cannot rest upon the pleadings, but is obliged to adduce evidence of specific facts."  *Foster-Miller, Inc. v. Babcock & Wilcox Can.*, 46 F.3d 138, 145 (1st Cir. 1995) (citing *Boit*, 967 F.2d at 675).  The Court may consider "whatever supplemental filings (such as affidavits) are contained in the record."  *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016).  *See also Sawtelle v. Farrell*, 70 F.3d 1381, 1385-86 (1st Cir. 1995) (explaining that in assessing a motion to dismiss based on lack of personal jurisdiction, the court may consider supplemental materials such as affidavits).  It is those "specific facts" that are lacking here, because they do not exist.

The Rhode Island long arm statute reaches foreign defendants to the extent permitted by the provisions of the Constitution or laws of the United States.  R.I. Gen. Laws § 9-5-33(a).  Therefore, the District Court's *in personam* jurisdiction over the USCCB depends on whether the USCCB has the necessary contacts with Rhode Island to satisfy constitutional due process.

For the exercise of personal jurisdiction to be constitutional, a defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit [in the forum state] does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).  A defendant must have "fair warning that a particular activity may subject [it] to the jurisdiction of a foreign sovereign."  *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring).

**B.      The USCCB Is Not Subject To General Jurisdiction In Rhode Island**

When a defendant has "constant and pervasive" contacts with the forum, a court may assert general or "all-purpose" jurisdiction even for claims unrelated to the in-forum activities.  *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014).  General jurisdiction arises only when the defendant's contacts with the forum are so systematic and continuous "as to render [it] essentially at home in the forum State."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  *See also Int'l Shoe Co.*, 326 U.S. at 318 (distinguishing specific jurisdiction from situations where "continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities.").

The USCCB does not have "constant and pervasive" contacts with Rhode Island that would allow "all-purpose" jurisdiction.  *Daimler AG*, 571 U.S. at 122.  The USCCB does

not have any property, offices, or employees in Rhode Island, and is not registered to do business here.  The Supreme Court has recently held that even these types of indicia (which the USCCB does not have) are not necessarily enough to make a non-forum defendant "at home" in the jurisdiction.  *See Daimler AG*, 571 U.S. at 123, 136 (even if contacts of defendant's subsidiary, the "largest supplier of luxury vehicles to the California market," were imputed to defendant, "there would still be no basis to subject Daimler to general jurisdiction in California"); *BNSF Railway Co. v. Tyrrell*, 137 S.Ct. 1549, 1554, 581 U.S. __, 198 L.Ed.2d 36 (2017) (railroad with "over 2,000 miles of railroad track and more than 2,000 employees in Montana" not subject to general jurisdiction).  A "corporation that operates in many places can scarcely be deemed at home in all of them."  *Daimler*, 571 U.S. at 139 n. 20.  The USCCB, which is incorporated and has its headquarters in Washington, D.C., is not at home in Rhode Island or subject to general jurisdiction here.

### C.    The USCCB Is Not Subject To Specific Jurisdiction For Plaintiff's Claims

Where a defendant's contacts with the jurisdiction are something less than would confer general *in personam* jurisdiction, a court may in some cases constitutionally exercise specific jurisdiction over certain claims.  Specific jurisdiction depends on three factors:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities.  Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.  Third, the exercise of jurisdiction must ... be reasonable.

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992).  *See also Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 288 (1st

Cir. 1999); *PREP Tours, Inc. v. American Youth Soccer Organization*, 913 F.3d 11, 18 (1st Cir. 2019).

All three prongs of the test for specific jurisdiction must be satisfied. *Phillips Exeter Acad.,* 196 F.3d at 288. Plaintiff's Complaint fails under all three.

### 1. <u>The Plaintiff's Claims Do Not Arise Out Of, Or Relate To, Any Activities of USCCB In Rhode Island</u>

The first test, relatedness, "focuses on the nexus between the defendant's contacts and the plaintiff's cause of action." *Ticketmaster-N.Y., Inc. v. Alioto*, 26 F.3d 201, 206 (1st Cir. 1994). It requires a "'demonstrable nexus' between the complaint's claims and the activities in the forum that properly may be attributed to the defendants, such that 'the litigation itself is founded directly on those activities.'" *PREP Tours, Inc. v. American Youth Soccer Organization*, 913 F.3d 11, 18 (1st Cir. 2019) (citing *Adelson v. Hananel*, 652 F.3d 75, 81 (1st Cir. 2011)).

The relatedness inquiry must be conducted on a claim by claim basis. *Phillips Exeter Acad.,* 196 F.3d at 289. Here, the plaintiff has alleged both tort claims (fraud and breach of fiduciary duty) and quasi-contract claims (unjust enrichment). When claims are based in tort, the court should "look to whether the plaintiff has established cause in fact (i.e., the injury would not have occurred 'but for' the defendant's forum-state activity) and legal cause (i.e., the defendant's in-state conduct gave birth to the cause of action)." *Scottsdale Capital Advisors Corp. v. The Deal, LLC*, 887 F.3d 17, 21 (1st Cir. 2018) (quoting *Mass. School of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 35 (1st Cir. 1998) (internal quotation marks omitted) (quoting *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992)). In-forum effects of non-forum activity, standing alone, are not enough to support personal jurisdiction. *Sawtelle v. Farrell*, 70 F.3d 1381, 1390-91 (1st Cir.

1995); *see also A Corp. v. All American Plumbing, Inc.*, 812 F.3d 54, 59-60 (1st Cir. 2016) (defendant's alleged trademark infringement causing plaintiff's Arizona franchisee to lose sales, indirectly harming plaintiff in Massachusetts, was insufficient to fulfill relatedness prong).

Claims for unjust enrichment are assessed in the same way as claims for breach of contract. *LP Solutions LLC v. Duchossois*, 907 F.3d 95, 103 n. 6 (1st Cir. 2018) (citing *C.W. Downer v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, at 64, 66 (1st Cir. 2014)) (applying the same jurisdictional analysis to related breach of contract and unjust enrichment claims). When claims are based in contract, the court looks to whether the in-forum contacts are "instrumental either in the formation of the contract or its breach." *Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007) (quoting *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999)). The First Circuit has "repeatedly made clear, however, that an out-of-forum party's contract with an in-forum party is not in and of itself sufficient to establish personal jurisdiction over the out-of-forum party, even where the plaintiff's claims include non-contract claims." *PREP Tours*, 913 F.3d at 22 n. 7 (citing *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 621 (1st Cir. 2001)).

In the instant case, Plaintiff does not allege any contact of USCCB, with him, in the forum state. Indeed, Plaintiff alleges no forum state activity of the USCCB at all. The USCCB makes standardized Peter's Pence Collection materials available on its web site to dioceses wherever they might be and supplies limited amounts of printed materials to dioceses on request, but the USCCB does not conduct any in-forum activities to solicit the collection. Exhibit A, Ridderhoff Aff. ¶ 12. Instead, the collection is at the direction and under the control of the dioceses and parishes, as reflected by Plaintiff's allegation that he was "solicited from the pulpit." Complaint ¶ 34; *see also* Ridderhoff Aff. ¶ 11. That is, Plaintiff's diocese, acting

through Plaintiff's parish, sought contributions for Peter's Pence.  Furthermore, the USCCB in

no way administers or controls the funds collected, as they are sent directly by each diocese to

the Apostolic Nunciature, the "embassy" of the Holy See in the United States.  Ridderhoff Aff. ¶

13.  Hence, there is no causal link between any in-forum activity by the USCCB and Mr.

O'Connell's alleged injury.  Because the Plaintiff's tort claims do not arise from, and are

unrelated to, any in-forum activity by the USCCB, they do not permit the exercise of personal

jurisdiction here.

       Plaintiff's unjust enrichment claim must be dismissed for similar reasons.  There

are no claimed in-forum activities by the USCCB, that could create a quasi-contractual

relationship with the Plaintiff.  A claim for unjust enrichment requires the conferral upon, and

appreciation of, a benefit by the defendant.  *Bouchard v. Price,* 694 A.2d 670, 673 (R.I. 1997).

Because there were no in-forum activities by the USCCB that would support either of these

elements of Plaintiff's unjust enrichment claim, it also fails the relatedness test for purposes of

establishing personal jurisdiction.

      2.      <u>The USCCB Did Not Purposefully Avail Itself Of The Benefits And Protections Of Rhode Island Law</u>

       The second prong of the specific jurisdiction test, purposeful availment,

"represents a rough quid pro quo:  when a defendant deliberately targets its behavior toward the

society or economy of a particular forum, the forum should have the power to subject the

defendant to judgment regarding that behavior."  *Carreras*, 660 F.3d at 555 (*citing J. McIntyre

Mach., Ltd. v. Nicastro*, 564 U.S. 873, 879, 131 S.Ct. 2780, 180 L.Ed.2d 765 (2011) (plurality

op.)).  Purposeful availment analysis "'will vary with the quality and the nature of the

defendant's activity.'"  *PREP Tours*, 913 F.3d at 20 (quoting *Burger King*, 471 U.S. at 474-75,

105 S.Ct. 2174).  "'[T]he two cornerstones of purposeful availment' are 'voluntariness' and 'foreseeability.'"  *PREP Tours*, 913 F.3d at 19 (quoting *Ticketmaster-N.Y.*, 26 F.3d at 207).

"Voluntariness requires that the defendant's contacts with the forum state 'proximately result from actions by the defendant himself.'"  *Id*. at 20 (citing *Phillips*, 530 F.3d at 28) (quoting *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174).  Specific jurisdiction may not rest on "the 'unilateral activity of another party or a third person.'"  *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).  "[C]ontacts that cannot be attributed 'proximately' to the defendant's own activities constitute 'unilateral' activity that cannot establish purposeful availment."  *PREP Tours,* 913 F.3d at 19 (citing *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174).  *See Nicastro*, 564 U.S. at 878, 879, 131 S.Ct. 2780 (plurality opinion) (no specific jurisdiction when the defendant knew only "that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states.") (internal quotation marks omitted).

"[E]ven where it is the out-of-forum defendant who voluntarily and knowingly establishes some contacts with the forum, specific jurisdiction over the defendant may still be lacking if the prospect of in-forum litigation was not foreseeable in light of the nature and quality of that contact with the forum."  *PREP Tours, Inc*., 913 F.3d at 26 (citing *Kulko*, 436 U.S. at 94, 97-98, 98 S.Ct. 1690).  "[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there."  *Burger King*, 471 U.S. at 474, 105 S.Ct. 2174 (quoting *World-Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. 559).  In the instant case, every one of these factors is absent.

Three cases involving more extensive in-forum contacts than the USCCB has with Rhode Island are instructive.  In *PREP Tours*, a California non-profit contacted a Puerto Rico tour organizer for information about prices and "what the company could 'offer' regarding an all-inclusive trip to Puerto Rico" for a large group of soccer players.  913 F.3d at 15.  Over the next four months, the parties exchanged itineraries, emails, telephone calls and at least one text, at the end of which time PREP was informed that the trip would be booked through a different company.  PREP sued for breach of the Puerto Rico tort doctrine *culpa in contrahendo*, failure to negotiate in good faith.  *Id*.  The First Circuit concluded that the nature and quality of the parties' communications did not "suffice to support the conclusion that the defendants' activities established a 'substantial connection' between the defendants and the forum," *id*. at 26-27 (quoting *Burger King*, 471 U.S. at 475, 105 S.Ct. 2174), even for a claim that (like unjust enrichment) did not depend on the formation of a contract.  There is also no substantial connection between the USCCB and Rhode Island that would allow personal jurisdiction to be asserted.

Similarly, the First Circuit held in *LP Solutions LLC v. Duchossois*, 907 F.3d 95 (1st Cir. 2018), that the Duchossois family did not reasonably anticipate being haled into court in Maine over an alleged breach of a contract to sell Chicago real estate to the Maine plaintiff.  The defendants sent three distribution payments to Maine, communicated on numerous issues with the plaintiff, and had other contingent obligations.  The court held that these contacts "do not constitute the 'continuing and wide-reaching contacts,' that form the 'substantial connection,' with the forum necessary to make the exercise of jurisdiction foreseeable."  *Id*. at 107.  The First Circuit noted approvingly the district court's finding that the case's "center of gravity" was in Illinois.  *Id*.

13

Another case of attenuated contacts, *Phillips Exeter Academy v. Howard Phillips Fund*, 196 F.3d 284 (1st Cir. 1999), also demonstrates why personal jurisdiction does not exist here. *Phillips Exeter* involved a dispute over alleged underpayments by a Florida-based charitable trust to Phillips Exeter Academy in New Hampshire. The payments were made pursuant to the will of a Florida resident, and "[m]ost of the relevant interactions (e.g., the execution of the will, the acceptance of the bequest, and the payment decisions) occurred in Florida." *Id*. at 290. The only significant nexus between the dispute and New Hampshire was that the charitable trust sent an annual payment to Phillips Exeter there. The First Circuit found that the Florida-based charitable trust's annual payments to Phillips Exeter in New Hampshire were not enough to subject the trust to suit in that jurisdiction:

> Here, the Fund received a very large bequest as a result of its acceptance of the obligation to make certain payments to Exeter, but this benefice did not flow from any relationship with New Hampshire. Indeed, the annual payments sent to Exeter in New Hampshire comprise the Funds only pertinent contacts with that state – and there is not so much as a hint that the Fund benefitted in any way from the protections of New Hampshire law in making these payments. The very exiguousness of these contacts suggests that the Fund could not reasonably have foreseen its susceptibility to suit in a New Hampshire court.

*Id.* at 292. As in *Phillips Exeter*, there is "not so much as a hint" that the USCCB benefitted in any way from the protections of Rhode Island law in connection with the Peter's Pence Collection, or that it could reasonably foresee being sued by Plaintiff in Rhode Island.

In contrast to *PREP Tours, Duchossois*, and *Phillips Exeter,* the exercise of specific jurisdiction has been held to be foreseeable when there is a regular and on-going relationship with the plaintiff. *See, e.g., Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 36-40 (1st Cir. 2016) (personal jurisdiction over non-forum franchisee that renewed franchise contract twice and had multi-year business relationship with in-forum

14

franchisor); *Adelson*, 652 F.3d at 79, 82-83 (personal jurisdiction over non-forum employee who "directed regular administrative and financial conduct" toward in-forum employer over years of employment); *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 61-62 (1st Cir. 2002) (personal jurisdiction over non-forum law firm with "ongoing relationship" with in-forum lawyer); *Knox v. MetalForming, Inc.*, 914 F.3d 685, 692 (1st Cir. 2019) (personal jurisdiction over non-forum manufacturer "which sold dozens of expensive products into the forum over nearly two decades, and which initiated an ongoing relationship with its in-forum purchasers"); *Plixer International, Inc. v. Scrutinizer GmbH*, 128 U.S.P.Q.2d 1274, 905 F.3d 1, 10 (1st Cir. 2018) (personal jurisdiction over defendant with "regular flow or regular course of sale" in the forum).

Here, the USCCB does not have the "'continuing and wide-reaching contacts,' that form the 'substantial connection,' with the forum necessary to make the exercise of jurisdiction foreseeable." *Duchossois*, 907 F.3d at 107. The USCCB has not "deliberately target[ed] its behavior" toward Rhode Island, *Carreras*, 660 F.3d at 555, and has in no way availed itself of the protections and benefits of the law of Rhode Island. In fact, the USCCB's relevant "contacts" with Rhode Island for purposes of the Complaint are the same as its contacts with every other state, no less and no more.

Other federal courts that have considered whether the USCCB's activities in Washington, D.C. give rise to constitutionally required minimum contacts elsewhere for purposes of exercising personal jurisdiction have concluded that they do not. *See Means v. United States Conference of Catholic Bishops*, 836 F.3d 643 (6th Cir. 2016). In *Means*, the plaintiff was a hospital patient who alleged that she suffered an injury because medical treatment "Directives" published by the USCCB purportedly prevented the hospital from taking medically

advisable actions. *Id*. at 647. The Sixth Circuit affirmed the trial court's order dismissing the action for lack of minimum contacts:

> USCCB's action of publishing the Directives does not "create a substantial connection" between USCCB and Michigan. Michigan – like every state – does have Catholic hospitals, and USCCB does intend the Directives to be implemented by all Catholic healthcare institutions . . . . But this is not a "substantial connection" such that USCCB would reasonably expect to be haled into court in Michigan. Rather, USCCB is connected to Michigan through exactly the sort of "attenuated contacts" that do not permit the exercise of personal jurisdiction.

*Id.* (internal citation omitted).

As with the Directives in *Means*, the USCCB's standardized Peter's Pence Collection materials are published in Washington, D.C. and are not targeted at Rhode Island or any other forum. In fact, the standardized Peter's Pence Collection materials at issue in this case are arguably even less significant for purposes of a personal jurisdiction analysis than the Directives in *Means*. The Sixth Circuit noted that even a requirement for an organization to follow the Directives in order to maintain its status as "Catholic" would not trigger personal jurisdiction in the forum where the organization was located. *Id*. In contrast, there is no requirement for individual dioceses to participate in the Peter's Pence Collection, or to use the standard materials prepared by the USCCB.

The "center of gravity" for any claims against the USCCB based on the Peter's Pence Collection, *Duchossois*, 907 F.3d at 107, is in Washington, D.C., where the USCCB is domiciled and headquartered. Haling the USCCB into court in Rhode Island on these facts is not foreseeable and would violate due process.

16

### 3.  Exercising Jurisdiction Over The USCCB For Purposes Of This Case Would Not Be Reasonable

The third factor in the specific personal jurisdiction analysis is reasonableness. Courts have identified five so-called "gestalt factors" that "put into sharper perspective the reasonableness and fundamental fairness of exercising jurisdiction in particular situations." *Pritzker v. Yari*, 42 F.3d 53, 64 (1st Cir. 1994). These factors are:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*Adelson*, 510 F.3d at 51 (quoting *United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992)). These gestalt factors generally "play a larger role in cases ... where the minimum contacts question is very close." *C.W. Downer*, 771 F.3d at 69 (quoting *Adelson v. Hananel*, 510 F.3d 43, 51 (1st Cir. 2007).

The application of these reasonableness factors in this case strongly supports dismissal. While the relative burdens on the parties of appearing somewhere other than their home jurisdictions may appear to be more or less in equilibrium, given e-filing and other modern means of communication, the other factors tilt decisively in favor of the USCCB. The fact remains that the USCCB is incorporated in and conducts virtually all of its activities in Washington, D.C. Everything that the USCCB did in relation to the Peter's Pence Collection, it did in Washington, D.C. Regarding the forum state's interest in adjudicating the dispute (factor number two), it is important to note that only the Plaintiff's unspecified alleged cash contribution to Sacred Heart Church in East Providence in 2018, Complaint ¶ 34, is the basis for a putative nationwide class action of "[a]ll persons in the United States who donated money to the Peter's Pence collection." *Id.* ¶ 37. Rhode Island's interest in adjudicating a national class action

against a non-profit that is domiciled in Washington, D.C., and that made the same standardized Peter's Pence materials equally available to every diocese in the country, is minimal.  Similarly, the judicial system's interest in obtaining the most effective resolution of the controversy (factor number four), and the common interests of all sovereigns (factor number five) will be served by having any claims against the USCCB based on the Peter's Pence Collection brought in the jurisdiction where the USCCB is domiciled and headquartered, Washington, D.C.

It would violate fundamental fairness and due process to exercise personal jurisdiction over the USCCB in Rhode Island for purposes of this potentially sprawling class action involving activities in all fifty states.  The burden on Plaintiff of bringing his claims in an appropriate forum is minimal and further supports dismissal.

**D.     The Lack Of Minimum Contacts Between The USCCB And Rhode Island Also Requires Dismissal Pursuant To Fed. R. Civ. P. 12(b)(3)**

The Complaint should also be dismissed pursuant to Fed. R. Civ. P. 12(b)(3) because the lack of minimum contacts between the USCCB and Rhode Island makes this forum an improper venue.

Venue lies in "a judicial district in which any defendant resides," or a district in which "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(1) and (2).  An entity that is a defendant is deemed to reside in any judicial district in which the defendant is subject to the Court's personal jurisdiction with respect to the action in question.  28 U.S.C. § 1391(c)(2).

As set forth in the preceding paragraphs, the USCCB is not subject to personal jurisdiction with respect to this action, and therefore is not a resident of this judicial district for purposes of venue.  Furthermore, the USCCB's alleged acts giving rise to the claim took place in

18

Washington, D.C, not in Rhode Island, so that no "substantial part of the events or omissions giving rise to the claim" occurred here.  The Complaint does not allege, nor could it, that a "substantial part of the property that is the subject of the action" is located in Rhode Island.  In fact, the Complaint does not allege that any property at issue is located here at all.  Because the venue selected by the Plaintiff does not comply with the requirements of 28 U.S.C. § 1391, the case should be dismissed for that reason as well.

## IV.     CONCLUSION

For all of the foregoing reasons, the USCCB's motion to dismiss for lack of personal jurisdiction should be granted.

UNITED STATES CONFERENCE OF
CATHOLIC BISHOPS

By Its Attorneys,

PARTRIDGE SNOW & HAHN LLP


/s/ Robert K. Taylor
Robert K. Taylor (#6514)
Eugene G. Bernardo II (#6006)
40 Westminster Street, Suite 1100
Providence, RI  02903
(401) 861-8200
(401) 861-8210 FAX
ebernardo@psh.com
rtaylor@psh.com

DATED:  February 13, 2020

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on February13, 2020.

/s/ Robert K. Taylor

3771183.1/1444-1