**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAVID O'CONNELL, individually and on behalf of all others similarly situated, | Case No. 1:20-CV-01365-KBJ |
| Plaintiff, | |
| v. | Class Action |
| UNITED STATES CONFERENCE OF CATHOLIC BISHOPS, | |
| Defendant. | |

**ANSWER OF DEFENDANT**
**UNITED STATES CONFERENCE OF CATHOLIC BISHOPS**

Defendant, the United States Conference of Catholic Bishops (USCCB), submits this Answer to the Plaintiff's Complaint.

This Answer is based upon the USCCB's investigation to date, and Defendant USCCB reserves the right to supplement or amend this Answer during the course of litigation as new information is discovered. Except as otherwise expressly admitted in the paragraphs below, Defendant denies each and every allegation in the Complaint, and specifically denies any and all wrongdoing and/or liability. To the extent any allegation in the Complaint is not specifically and expressly admitted, it is denied. No statement herein constitutes a comment on the legal theories upon which Plaintiff purports to proceed. To the extent the Complaint asserts legal contentions, such legal contentions require no response in this Answer, and this Answer contains no response to legal contentions other than their general denial.

In response to the numbered paragraphs of the Complaint, Defendant admits, denies or otherwise avers as follows:

1.     *Plaintiff David O'Connell brings this action on behalf of himself and all others similarly situated, against Defendant United States Conference of Catholic Bishops ("USCCB"). Plaintiff alleges the following based upon information and belief, the investigation of counsel, and his personal knowledge of the factual allegations.*

Paragraph 1 states a legal conclusion to which no response is required.  To the extent that a response is required, Defendant denies the allegations.

2.     *Requests for charitable contributions must be scrupulously accurate. This is especially true when a powerful religious organization, already trusted by its members, asks them to donate money for specific charitable purposes—why would anyone ever suspect that the money would not be spent as promised?*

Paragraph 2 states a legal conclusion to which no response is required.  To the extent that a response is required, Defendant denies the allegations.

3.     *For years, USCCB has solicited and collected hundreds of millions of dollars in donations from parishioners of Catholic churches throughout Rhode Island and the United States as part of its "Peter's Pence" collection. USCCB consistently promotes this specific collection as necessary for helping those suffering the effects of war, oppression, natural disaster, or disease throughout the world, and who are thus in need of immediate relief.*

Defendant denies the allegations of paragraph 3.

4.     *Regrettably and tragically, only a very small portion of this money—as little as 10%—has found its way to the needy for whom it was given. The rest of the money—hundreds of millions of dollars over the last several years—has been diverted into various suspicious investment funds, which in turn have funneled the money into such diverse ventures as luxury*

*condominium developments and Hollywood movies while paying fund managers hefty, multi-million dollar commissions.*

Defendant denies the allegations of paragraph 4.

**5.**     *At the urging of USCCB, David O'Connell gave to Peter's Pence at Sacred Heart Church in East Providence, Rhode Island, in order to help those in disaster-stricken parts of the world in immediate need of assistance. On behalf of himself and everyone else in Rhode Island and the United States, he now asks USCCB to come clean. Having collected hundreds of millions of dollars from faithful and well-meaning donors for the poor in immediate need of assistance, USCCB must now account for itself and the money with which it was entrusted, and, in the interests of justice, it must disgorge the funds that were not spent as it promised.*

Defendant denies the allegations of paragraph 5, to the extent that it purports to contain allegations of fact to which a response is required.

**6.**     *This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d) because the Class consists of more than 100 members, the amount in controversy exceeds the sum or value of five million dollars exclusive of recoverable interest and costs, and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.*

Defendant denies that this Court has subject matter jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. § 1332 (d) or any other provision of law.

**7.**     *Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to the claims of Plaintiff and the Class occurred in this District. Furthermore, venue is proper in this District because Plaintiff made a donation to Peter's Pence in this District at Sacred Heart Church in East Providence, Rhode Island.*

Defendant denies that Plaintiff made a donation to Peter's Pence in this District but does not otherwise contest venue, assuming that the Court has subject matter jurisdiction.

8.      *Defendant United States Conference of Catholic Bishops ("USCCB") is a District of Columbia non-profit corporation with its principal place of business at 3211 4th Street NE, Washington, DC 20017. It may be served with process through its non-commercial registered agent, Monsignor J. Brian Bransfield, at 3211 4th Street NE, Washington, DC 20017.*

Defendant denies the allegations of paragraph 8.

9.      *Defendant USCCB is the episcopal conference of the Catholic Church in the United States. It is composed of all active and retired members of the Catholic hierarchy in the United States. USCCB is served by a staff of approximately 315 lay people, priests, deacons, and others located at its headquarters in Washington, DC.*

Defendant admits the allegations of paragraph 9.

10.      *USCCB describes its purpose as "to promote the greater good which the Church offers humankind, especially through forms and programs of the apostolate fittingly adapted to the circumstances of time and place. This purpose is drawn from the universal law of the Church and applies to the episcopal conferences which are established all over the world for the same purpose."[1] In the United States, that includes the promotion, oversight, administration, and collection of coordinated charitable donation efforts throughout the country called "collections," including the Peter's Pence collection. USCCB regularly and routinely conducts business throughout the United States and Rhode Island, specifically including the promotion, oversight, administration and intake of donations through the Peter's Pence collection.*

---

[1] http://www.usccb.org/about/index.cfm (accessed December 23, 2019).

Defendant denies the allegations of paragraph 10, except to admit that it describes its purpose in the language quoted from its website, and that it promotes, administers and collects funds for a number of national collections; and to aver that it assists the Holy See in the promotion of the Peter's Pence Collection but does not administer, oversee, collect or receive funds for the Peter's Pence Collection.

11.    *USCCB, including its members, employees, subsidiaries, affiliates, volunteers, and agents, promoted, advertised, provided instructions for, administered, oversaw, and collected funds from donors throughout Rhode Island and the United States in connection with the Peter's Pence collection, and specifically within the Diocese of Providence and the Parish of Sacred Heart in East Providence.*

Defendant denies the allegations of paragraph 11, except to admit that it provided materials to assist in the promotion of the Peter's Pence Collection.

12.    *Plaintiff David O'Connell resides in East Providence, Rhode Island. He made a donation to Peter's Pence at Sacred Heart Church in East Providence, Rhode Island.*

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 and, on that basis, denies those allegations.

13.    *Plaintiff specifically reserves the right to amend this Complaint to name additional party defendants revealed by discovery or further investigation to have been involved with the diversion of donor funds from the Peter's Pence collection to purposes other than those promised.*

Paragraph 13 is a statement of Plaintiff's legal position to which no response is required. To the extent that a response is required, Defendant denies the allegations of paragraph 13.

14.     *Plaintiff and Class members did not discover and could not discover through the exercise of reasonable diligence that USCCB has been promoting and collecting donations to Peter's Pence for purposes other than those to which the funds were applied. Any statutes of limitation otherwise applicable to any claims asserted in this Complaint have thus been tolled by the discovery rule.*

Defendant denies the allegations of paragraph 14.

15.     *Any applicable statutes of limitation have also been tolled by USCCB's knowing, active, and ongoing fraudulent concealment of the facts alleged herein. USCCB has known or should have known of the non-charitable applications of donations to Peter's Pence while it has been soliciting and collecting them. Thus, USCCB has effectively concealed from, and failed to notify, Plaintiff, Class members, and the public of the critical material fact that the vast majority of donations to Peter's Pence are not spent for the purpose promised to donors. Although it knew or should have known that donations to Peter's Pence are diverted to non-charitable purposes, USCCB did not acknowledge the problem, and in fact actively concealed it.*

Defendant denies the allegations of paragraph 15.

16.     *USCCB was, and is, under a continuous duty to disclose to Plaintiff and Class members the true character and nature of the Peter's Pence collection, including the critical material facts that donations to Peter's Pence are not used as promised to help those in need of immediate relief from war, natural disaster, and oppression, but rather are diverted to other purposes. Instead, USCCB actively concealed the true character and nature of the Peter's Pence collection and made misrepresentations about the specified purposes of the collection. Plaintiff and Class members reasonably relied upon USCCB's concealment of these facts that rendered their statements misleading.*

Defendant denies the allegations of paragraph 16.

**17.**   *Based on the foregoing, USCCB is estopped from relying on any statutes of limitation in defense of this action.*

Defendant denies the allegations of paragraph 17.

**18.**   *Peter's Pence is a special collection taken from Catholics around the world every June. USCCB explains Peter's Pence as follows:*

> *The Peter's Pence Collection derives its name from an ancient custom. In ninth-century England[,] King Alfred the Great collected money, a "pence," from landowners as financial support for the Pope. Today, the Peter's Pence Collection supports the Pope's philanthropy by giving the Holy Father the means to provide emergency assistance to those in need because of natural disaster, war, oppression, and disease.[2]*

Defendant admits the allegations of paragraph 18, except for the allegation that the collection is taken up every June.

**19.**   *In the United States, it is USCCB that promotes and administers the Peter's Pence collection in coordination with dioceses, parishes, and churches across the country. As USCCB states: "The USCCB National Collections Committee oversees the promotion of the Peter's Pence Collection."[3]*

Defendant denies the allegations of paragraph 19, except to admit that the USCCB oversees the promotion of the Peter's Pence Collection in the United States.

**20.**   *To do this, USCCB creates and distributes uniform promotional materials for specific use in parishes and dioceses. These include a social media tool kit, church bulletin inserts, letters from bishops, web ads, posters, and print ads, all freely downloadable from*

---

[2] http//www.usccb.org/catholic-giving/opportunities-for-giving/peters-pence/index.cfm (accessed December 23, 2019).

[3] http//www.usccb.org/catholic-giving/opportunities-for-giving/peters-pence/index.cfm (accessed December 23, 2019).

USCCB's website.[4]

Defendant denies the allegations of paragraph 20, except to admit that it creates and distributes or makes available on its website promotional materials for use in parishes and dioceses, including a social media tool kit, church bulletin inserts, a sample Bishop's letter, web ads, a poster, and print ads.

21.    *All of the Peter's Pence solicitation materials contain the same essential message, as stated in USCCB's sample church bulletin insert: "Donations to this collection support the charitable works of Pope Francis for the relief of those most in need."[5]*

Defendant denies the allegations of paragraph 21.

22.    *This screenshot of USCCB's bulletin insert solicitation shows exactly how USCCB illustrates the purpose of Peter's Pence to prospective donors.[6]*

> **How We Can Join Pope Francis and Be a Witness of Charity**
>
> By supporting the Peter's Pence Collection, you assist the charitable works of Pope Francis. Your generosity witnesses to charity and helps the Holy See reach out compassionately to those who are marginalized.
>
> For example, in the Dioceses of Embeder, Harar, and Mek in Ethiopia, people rely exclusively on subsistence farming and nomadic herding. The El Niño weather phenomenon worsened drought conditions in these regions, and the people fear a new famine that could be far worse than the 1984 famine that led to more than a million deaths in Ethiopia. But your support of the collection is helping the Holy Father to bring aid to the affected villages. Your donations have funded food and medicines that give the Ethiopian people a measure of relief and hope. Learn more by visiting *www.peterspence.va/opere*.

---

[4] See generally http://www.usccb.org/catholic-giving/opportunities-for-giving/peters-pense/collection/ (accessed December 21, 2019).

[5] http://www.usccb.org/catholic-giving/opportunities-for-giving/peters-pence/collection/2019/upload/pp-2019-bulletin-insert-bilingual.pdf (accessed December 21, 2019).

[6] http://www.usccb.org/catholic-giving/opportunities-for-giving/peters-pence/collection/2019/upload/pp-2019-bulletin-insert-bilingual.pdf (accessed December 21, 2019).

Defendant denies the allegations of paragraph 22, except to admit that it reproduces a portion of an exemplar church bulletin on the USCCB's website.

23.     *USCCB's exemplar "bulletin announcements" have a similar, more abbreviated approach, accompanied by instructions for use before, during, and after the collection:* [7]

## Bulletin Announcements—English

### Week Before the Collection
Next week, we will take up the Peter's Pence Collection, which provides Pope Francis with the funds he needs to carry out his charitable works around the world. The proceeds benefit our brothers and sisters on the margins of society, including victims of war, oppression, and natural disasters. Please be generous. For more information, visit *www.usccb.org/peters-pence*.

### Week of the Collection
Today is the Peter's Pence Collection, a worldwide collection that supports the charitable works of Pope Francis. Funds from this collection help victims of war, oppression, and natural disasters. Take this opportunity to join with Pope Francis and be a witness of charity to our suffering brothers and sisters. Please be generous today. For more information, visit *www.usccb.org/peters-pence*.

### Week After the Collection
Thank you for your generous support in last week's Peter's Pence Collection! Our parish collected $[*amount*]. Our contributions, combined with those from our brothers and sisters around the world, will help Pope Francis provide essential relief to people in need. If you missed the collection, it is not too late to give! Visit *www.usccb.org/nationalcollections,* and click on the "How to Give" link.

Defendant denies the allegations of paragraph 23, except to admit that the USCCB makes available exemplar bulletin announcements that parishes may use if they wish to do so.

24.     *USCCB also furnishes specific instructions for Peter's Pence appeals to be read from the pulpit at church services:* [8]

## Parish Appeal

(***Please read this text from the pulpit, or** include it as part of your weekly announcements.*)

Today we take up the Peter's Pence Collection, which supports the charitable works of Pope Francis. Catholics around the globe support this collection to help the Holy Father reach out to people suffering in our world, especially those enduring the effects of war and violence, natural disasters, and religious persecution. Please be generous today.

---

[7] http://www.usccb.org/catholic-giving/opportunities-forgiving/peters-pence/collection/2019/upload/pp-2019-bulletin-announcements.doc (accessed December 21, 2019).

[8] http://www.usccb.org/catholic-giving/opportunities-for-giving/peters-pence/collection/2019/upload/pp-2019-parish-appeal.doc (accessed December 23, 2019).

Defendant denies the allegations of paragraph 24, except to admit that the USCCB makes available text that may be read from the pulpit or included as part of a parish's weekly announcements if the parish so chooses.

25. *For those American Catholics inspired to research Peter's Pence directly from the Vatican website, the messages all reinforce that of the USCCB materials. The Vatican catalogues "works realized" by Peter's Pence, replete with images and elaborate descriptions of disaster relief undertaken in various countries (for example, Ecuador):[9]*



**ECUADOR**

Thanks to Peter's Pence has begun a new reconstruction project after the earthquake that struck the coastal regions

In April 2016, an earthquake of 7.8 on the Richter scale hit the coastal area of Ecuador, located less than 200 kilometers from the capital Quito, causing - according to the UN Office for Humanitarian Affairs (OCHA) - 700 deaths, 12,000 injured, 50 thousand homeless.

After aid for the first emergencies, the Holy See started **a project for the reconstruction of houses, schools and public buildings** in the province of Manabi, the epicenter of the earthquake.

In fact, governments' data shows that the destroyed or damaged buildings exceed 2,000 units, over 600 of these are schools, while in many cities water, sewage and electricity networks have to be rebuilt.

The material damages amount to over 3 billion dollars.

Defendant denies the allegations of paragraph 25, except to admit that the Holy See maintains a website that describes the Peter's Pence Collection and to aver that the website speaks for itself and is the best evidence of its content.

26. *USCCB is well aware of the importance of transparency, accountability, accuracy, and honoring donor intent in connection with national collections like Peter's Pence. It*

---

[9] http://www.peterspence.va/en/opere-realizzate/eduador.html (accessed December 21, 2019).

*has adopted specific guidelines for administering USCCB national collections in dioceses.[10] The*

*guidelines discuss the importance of the proper use of promotional materials; they additionally*

*have an extensive discussion about honoring donor intent.*

*Citing both Canon law and "civil laws observed within the United States," the guidelines*

*"call for procedures that ensure donor funds are used for precise purposes intended in the*

*donation appeal." In particular, USCCB guidelines state:[11]*

> The national collections are required to adhere to the fundamental principle of "donor intent." For this reason, the following principles should be closely followed:[16]
>
> - Donors should be informed about the intended uses of donated resources.
> - Donors must be assured that gifts will be used for the purposes for which they were given.
>
> The principles and requirements of donor intent must be preserved throughout the entire collection process, from the announcement of the intention of the collection, through the safeguarding and delivering of funds, to the final use by the various collection Subcommittees of the USCCB, including the use and reporting by eventual recipient grantees. Diocesan bishops and parish pastors have a special obligation to be vigilant that the norms of both canon and civil law are followed in these instances.[17]

Defendant denies the allegations of paragraph 26, except to admit that the USCCB

publishes on its website Guidelines for Administering USCCB National Collections in Dioceses,

which speak for themselves and are the best evidence of their content, and to aver that those

---

[10] http://www.usccb.org/_cs_upload/about/national-collections/collection-administration/43214_1.pdf  (accessed December 21, 2019).

[11] http://www.usccb.org/_cs_upload/about/national-collections/collection-administration/43214_1.pdf (at p.5) (accessed December 21, 2019) (footnotes from original document omitted in screenshot).

Guidelines distinguish between "universal collections [that] have been established by the Holy See itself," including Peter's Pence "for the needs of the Holy Father," and national collections established by the USCCB.

**27.** *Despite USCCB's assurances that it honors donor intent, and that donations to Peter's Pence are for the suffering in immediate need, it has recently become apparent that these donor funds are not being used for the purpose USCCB promises. On October 17, 2019, the Italian news magazine L'Espresso published a story sourced from secret internal Vatican investigative reports, as pictured in this screenshot:*[12]



Defendant denies the allegations of paragraph 27, except to admit that *L'Espresso* published an article on October 19, 2019, which speaks for itself and is the best evidence of its content.

---

[12] http://espresso.repubblica.it/plus/articoli/2019/10/17/news/vaticano-obolo-san-pietro-1.340060 (accessed December 23, 2019)

28.     *The* L'Espresso *story revealed that most of the Peter's Pence funds are diverted into "reckless speculative operations," with 77% of the collections—roughly $560 million—given to Credit Suisse, a Swiss-based investment company.*[13] *The story also detailed how an Italian financier named Raffaele Mincione was approached by a high-ranking Vatican official to make a $200 million investment, which Mincione used to purchase real estate in London for a luxury apartment development through a fund he managed. Eventually, when returns were less than projected, the Vatican pulled out of the fund and bought the entirety of the property, resulting in Mincione realizing almost $170 million in income.*[14]

Defendant denies the allegations of paragraph 28, except to admit that *L'Espresso* published an article on October 19, 2019, which speaks for itself and is the best evidence of its content.

29.     *On December 4, 2019, the Italian newspaper* Corriere della Sera *published additional details on the diversion of Peter's Pence funds.*[15] *This revealed that more than $1 million was invested in the Elton John biopic* Rocketman*, and more than $3.6 million in the film* Men in Black: International.[16] *Additionally, millions of dollars were invested in a Malta-based investment company called Centurion Global Fund run by an Italian financier named Enrico Crasso, who received "millions of euros in commissions" while losing 4.61% of the fund (approximately two million euros) by the end of 2018.*[17]

---

[13] https://cruxnow.com/Vatican/2019/10/leaked-documents-detail-200-million-vatican-deal-for-swanky-london-property/ (accessed December 22, 1029).

[14] https://cruxnow.com/vatican/2019/10/leaked-documents-detail-200-million-vatican-deal-for-swanky-london-property/ (accessed December 22, 2019).

[15] https://www.corriere.it/english/19_dicembre_04/vatican-invested-lapo-elkann-and- elton-john-film-72e070b0-16c0-11ea-b17e-02f19725a806.shtml?refresh_ce-cp (accessed December 22, 2019).

[16] http://www.ncregister.com/site/print/62807 (accessed December 22, 2019).

[17] http://www.ncregister.com/site/print/62807 (accessed December 22, 2019).

Defendant denies the allegations of paragraph 29, except to admit that *Corriere della Sera* published an article on December 4, 2019, which speaks for itself and is the best evidence of its content.

**30.** *On December 11, 2019, the* Wall Street Journal *reported that only 10% of donations to the Peter's Pence collection actually go to charitable works.[18] Most of the money is used to plug holes in the Vatican's administrative budget, "[b]ut for at least the past five years, only about 10% of the money collected—more than €50 million was raised in 2018—has gone to the sort of charitable causes featured in advertising for the collection, according to people familiar with the matter." [19]*

Defendant denies the allegations of paragraph 30, except to admit that the *Wall Street Journal* published an article on December 11, 2019, which speaks for itself and is the best evidence of its content.

**31.** *Asked in November about the reports of Peter's Pence being used for purposes other than charity, Pope Francis, according to the* Catholic News Service*, "said no one should be bothered by the fact that the Vatican invests the money it collects from Catholics around the world. 'The sum of Peter's Pence arrives and what do I do? Put it in a drawer? No, that's bad administration. I try to make an investment.'"[20]*

---

[18] https://www.wsj.com/articles/vatican-uses-donations-for-the-poor-to-plug-its- budget-deficit-11576075764 (accessed December 22, 2019).

[19] https://www.wsj.com/articles/vatican-uses-donations-for-the-poor-to-plug-its-budget-deficit-11576075764 (accessed December 22, 2019).

[20] https://www.catholicnews.com/services/englishnews/2019/financial-scandal-shows-vatican-reforms-are-working-pope-tells-media.cfm (accessed December 22, 2019).

Defendant denies the allegations of paragraph 31, except to admit that the *Catholic News Service* published an article on November 26, 2019, which speaks for itself and is the best evidence of its content.

**32.**    *But many reactions to news of the actual use of Peter's Pence were not accepting. Some commentators asked whether there was "a bait and switch at Peter's Pence," noting "the great disparity between how it is marketed and what the vast majority of the collection is actually used for."[21]*

Defendant denies the allegations of paragraph 32, except to admit that it refers to two published commentaries that speak for themselves and are the best evidence of their content.

**33.**    *Another commentator, writing in the Catholic Herald, noted this exchange between Francis X. Rocca, author of the Wall Street Journal article, and one Cardinal of the Catholic Church, shown in the following screenshot:[22]*

On Twitter, Cardinal Wilfrid Napier of Durban noted, "According to information given to the Council for the Economy," of which he is a member, "the Pope's Petrine ministry extends beyond care of the poor". Napier went on to say, "Therefore, if the Peter's Pence Collection is taken up to support the Pope in his Petrine ministry, it is for a much wider purpose than simply care of the Poor."

Rocca replied: "Your Eminence, that is of course correct under the law. The problem is that the promotional material from the Vatican and local churches gives an entirely different impression, so people are giving under the misapprehension that the money goes mainly to the poor."

Cardinal Napier responded, "Then I think we have to say the promotional material is not accurate, misleading or even wrong, because it does not reflect the truth."

---

[21] https://acton.org/publications/transatlantic/2019/12/13/bait-and-switch-peters- pence (accessed December 22, 2019); *see also* https://www.lifesitenews.com/opinion/catholics-should-be-outraged-at-vaticans- peters-pence-bait-and-switch (accessed December 23, 2019).

[22] https://catholicherald.co.uk/commentandblogs/2019/12/15/what-the-peters-pence-furore-tells-us-about-vatican-financial-reform/ (accessed December 23, 2019).

Defendant denies the allegations of paragraph 33, except to admit that the *Catholic Herald* published a Comment on December 15, 2019, which speaks for itself and is the best evidence of its content.

34.   *David O'Connell regularly attends Sunday [M]ass at Sacred Heart Church in East Providence, Rhode Island. In the summer of 2018, during a Sunday [M]ass in which he was solicited from the pulpit as directed by USCCB to help those in need of emergency relief, he made a cash donation to the Peter's Pence collection. Nothing he saw or heard, on that day or beforehand, told him or made him understand that his donations to Peter's Pence would be used for anything other than emergency assistance to the neediest people around the world.*

Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 34 and, on that basis, denies those allegations.

35.   *Even if David O'Connell had slowly and carefully researched external sources such as the USCCB or Vatican websites, he would still reasonably be unaware that his donations to Peter's Pence would not be used entirely and exclusive for emergency assistance to the poor. He had no reason to suspect that the Peter's Pence collection was actually used for investments and other purposes rather than for emergency assistance, and USCCB's failure to inform them about this was material; if USCCB had disclosed this fact, David O'Connell would not have donated to the Peter's Pence collection.*

Defendant denies the allegations of paragraph 35.

36.   *USCCB has always known the difference between a donation for emergency assistance and a donation to defray Vatican administrative expenses. But USCCB hid this distinction in its promotion, oversight, and administration of the Peters Pence collection in the United States, and, as a result, it has effectively profited at the expense of David O'Connell and*

16

*the members of the public. David O'Connell donated money for specific charitable purposes, which USCCB directed into other, non-charitable purposes. All along, USCCB knew or should have known this was the likely result, but it promoted the Peter's Pence collection as a charitable effort meant only for the poorest of the poor regardless; accordingly, millions of donors across the country ended up in the exact same position as David O'Connell.*

Defendant denies the allegations of paragraph 36.

**37.** *Plaintiff David O'Connell seeks to represent the following Class: All persons in the United States who donated money to the Peter's Pence collection. Excluded from the Class are USCCB and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the Judge to whom this case is assigned and his/her immediate family.*

**38.** *Plaintiff reserves the right to revise the Class definition based upon information learned through discovery.*

**39.** *Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.*

**40.** *This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.*

**41.** *Pursuant to Federal Rule of Civil Procedure 23(a)(1), the members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiff is informed and believes that there are millions of members of the Class, the precise number is unknown to him. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include*

17

*U.S. mail, electronic mail, internet postings, and/or published notice.*

*42.   Pursuant to Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3), this action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:*

> *a) Whether USCCB engaged in the conduct alleged herein;*
>
> *b) Whether USCCB's conduct violates common law as asserted herein;*
>
> *c) Whether Plaintiff and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and*
>
> *d) Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.*

*43.   Pursuant to Federal Rule of Civil Procedure 23(a)(3), Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through USCCB's wrongful conduct as described above.*

*44.   Pursuant to Federal Rule of Civil Procedure 23(a)(4), Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Class he seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.*

*45.   Pursuant to Federal Rule of Civil Procedure 23(b)(2), Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.*

*46.   Pursuant to Federal Rule of Civil Procedure 23(b)(3), a class action is superior*

*to any other available means for the fair and efficient adjudication of this controversy, and no*

*unusual difficulties are likely to be encountered in the management of this class action. The*

*damages or other financial detriment suffered by Plaintiff and the other Class members are*

*relatively small compared to the burden and expense that would be required to individually*

*litigate their claims against USCCB, so it would be impracticable for Class members to*

*individually seek redress for USCCB's wrongful conduct. Even if Class members could afford*

*individual litigation, the court system could not. Individualized litigation creates a potential for*

*inconsistent or contradictory judgments and increases the delay and expense to all parties and*

*the court system. By contrast, the class action device presents far fewer management difficulties,*

*and provides the benefits of single adjudication, economy of scale, and comprehensive*

*supervision by a single court.*

Paragraphs 37 through 46 are statements of Plaintiff's legal position to which no response is required.  To the extent that a response is required, Defendant denies the allegations of each and every one of these paragraphs.  Defendant specifically disputes that this case can or should be maintained as a class action, that Plaintiff can or should serve as a class representative, and that Plaintiff or any other member of the purported class is entitled to any of the relief requested.

**47.**   *Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.*

Defendant repeats and incorporates by reference its answers to all paragraphs.

**48.**   *USCCB consistently, routinely, and uniformly solicited donations for the Peter's Pence collection as emergency assistance needed for victims of war, oppression, natural disaster, or disease throughout the world. By doing this, USCCB communicated to Plaintiff and*

19

*to each Class member that any money they donated to Peter's Pence would be used exclusively for these purposes.*

Defendant denies the allegations of paragraph 48.

**49.** *This was a material representation, as USCCB knew that prospective donors would be inclined to donate to Peter's Pence if they believed their donations were urgently needed by people in dire circumstances. And this was a false representation, because the donations were never going to be routed immediately to the needy, but rather were going to be diverted into investment funds and subsequently into purposes such as real estate, Hollywood films, and hefty commissions for fund managers.*

Defendant denies the allegations of paragraph 49.

**50.** *USCCB knew or should have known the representations were false and intended Plaintiff and Class members to rely on them. Plaintiff and Class members decided to donate to Peter's Pence based in part on the representations communicated to them by USCCB.*

Defendant denies the allegations of paragraph 50.

**51.** *But for USCCB's fraud, Plaintiff and the members of the Class would not have donated to the Peter's Pence collection. Plaintiff and the members of the Class have sustained damage because they contributed money for specific charitable purposes which USCCB did not spend in accordance with its promises. Accordingly, USCCB is liable to Plaintiff and the members of the Class for damages in an amount to be proven at trial.*

Defendant denies the allegations of paragraph 51.

**52.** *USCCB consistently, routinely, and uniformly solicited donations for the Peter's Pence collection as emergency assistance needed for victims of war, oppression, natural disaster, or disease throughout the world. By doing this, USCCB communicated to Plaintiff and*

*to each Class member that any money they donated to Peter's Pence would be used exclusively*

*for these purposes.*

Defendant denies the allegations of paragraph 52.

**53.**   *USCCB concealed and suppressed the fact that the donations were never going to*

*be routed immediately to the needy, but rather were going to be diverted into investment funds*

*and subsequently into purposes such as real estate, Hollywood films, and hefty commissions for*

*fund managers. This was a material fact about which USCCB had or should have had*

*knowledge, and that it concealed from Plaintiff and the members of the Class to mislead them.*

Defendant denies the allegations of paragraph 53.

**54.**   *Plaintiff and the members of the Class did not know this fact and could not have*

*discovered it through a reasonably diligent investigation.*

Defendant denies the allegations of paragraph 54.

**55.**   *USCCB had a duty to disclose that donations to Peter's Pence would not be*

*immediately spent on emergency assistance for the needy around the world because (1) USCCB*

*had or should have had exclusive knowledge of the material, suppressed facts;*

*(2) USCCB took affirmative actions to conceal the material facts, including by devising and*

*implementing a promotional program for Peter's Pence that emphasized the need for emergency*

*assistance for the poor; (3) USCCB made partial representations by suggesting in promotional*

*and solicitation materials that donations to the Peter's Pence collection are exclusively to aid the*

*needy in dire circumstances around the world.  Plaintiff and Class members decided to donate to*

*Peter's Pence based in part on the representations communicated to them by USCCB's*

*promotions and solicitations.*

Defendant denies the allegations of paragraph 55.

21

56.     *But for USCCB's fraud, Plaintiff and the members of the Class would not have made donations to the Peter's Pence collection. Plaintiff and the members of the Class have sustained damage because they contributed money for specific charitable purposes which USCCB did not spend in accordance with its promises. Accordingly, USCCB is liable to Plaintiff and the members of the Class for damages in an amount to be proven at trial.*

Defendant denies the allegations of paragraph 56.

57.     *Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.*

Defendant repeats and incorporates by reference its answers to all paragraphs.

58.     *As described in detail in the factual allegations above, USCCB made false representations to Plaintiff and the members of the Class that resulted in their contributions of money for charitable purposes to their detriment.*

Defendant denies the allegations of paragraph 58.

59.     *Under these circumstances as described above, USCCB has received money from Plaintiff and the members of the Class that USCCB, in equity and good conscience, ought not to retain.*

Defendant denies the allegations of paragraph 59.

60.     *As a result, USCCB is liable in restitution to Plaintiff and the members of the Class to disgorge and remit to Plaintiff and the Class all monies contributed, in an amount to be proved at trial.*

Defendant denies the allegations of paragraph 60.

61.     *Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.*

Defendant repeats and incorporates by reference its answers to all paragraphs.

62.     *As described in detail in the factual allegations above, USCCB promoted, advertised, provided instructions for, administered, oversaw, and collected funds from donors throughout Rhode Island and the United States in connection with the Peter's Pence collection. USCCB owed Plaintiff and the members of the Class fiduciary duties in connection with its promotion, solicitation, and handling of all charitable contributions to the Peter's Pence collection.*

Defendant denies the allegations of paragraph 62.

63.     *Under the circumstances described in detail above, USCCB breached its fiduciary duties to Plaintiff and the members of the Class by failing to ensure that the charitable contributions to the Peter's Pence collection were spent in accordance with USCCB's promises.*

Defendant denies the allegations of paragraph 63.

64.     *As a result of USCCB's breaches of its fiduciary duties, Plaintiff and the members of the Class have sustained damages, and USCCB is liable to Plaintiff and the members of the Class for damages in an amount to be proved at trial.*

Defendant denies the allegations of paragraph 64.

65.     *David O'Connell, individually and on behalf of the members of the Class, respectfully request that the Court enter judgment in their favor and against USCCB, as follows:*

A.     *Certification of the proposed Class, including appointment of Plaintiff's counsel as Class Counsel;*

B.     *An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, and fraudulent practices alleged in this Complaint;*

23

C.     *Injunctive relief;*

D.     *Costs, restitution, damages, and disgorgement in an amount*
       *to be determined at trial;*

E.     *An order requiring USCCB to pay both pre- and post-judgment*
       *interest on any amounts awarded;*

F.     *An award of costs and attorneys' fees; and*

G.     *Such other or further relief as may be appropriate.*

Defendant denies the allegations of paragraph 65 and denies that Plaintiff or any member

of any purported class is entitled to any relief.

**66.**     *Plaintiff hereby demands a jury trial for all claims so triable.*

Paragraph 66 is a statement of Plaintiff's legal position, to which no response is required.

## <u>DEFENSES AND AFFIRMATIVE DEFENSES</u>

Without assuming any burden of proof that Defendant would not otherwise bear,

Defendant USCCB asserts the following defenses, all of which are pleaded in the alternative, and

none of which constitutes an admission that Plaintiff is entitled to any relief whatsoever.

1.  The Court lacks subject matter jurisdiction over the case.

2.  The Complaint fails to state a claim upon which relief can be granted.

3.  A party required to be joined under Rule 19 of the Federal Rules of Procedure, if
    feasible, cannot be joined, and the action should not in equity and good conscience
    proceed between the existing parties in its absence.

4.  The Complaint is barred by the applicable statute of limitations.

5.  The Complaint is barred by the doctrine of laches.

Dated: July 6, 2020                              Respectfully submitted,

                                                 */s/ Kevin T. Baine*
                                                 Kevin T. Baine (DDC No. 238600)

                                                 WILLIAMS & CONNOLLY LLP
                                                 725 Twelfth Street, N.W.
                                                 Washington, DC 20005
                                                 Tel.: (202) 434-5000
                                                 Fax: (202) 434-5029
                                                 kbaine@wc.com

                                                 *Attorneys for Defendant United*
                                                 *States Conference of Catholic*
                                                 *Bishops*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this date, I caused the Answer of Defendant United States Conference of Catholic Bishops to be filed and served electronically via the Court's ECF System upon counsel of record.  I further certify that all parties required to be served have been served.

Dated: July 6, 2020                                             By: /s/ *Kevin T. Baine*