# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DAVID O'CONNELL, individually and on behalf of all others similarly situated,

      Plaintiff,

    v.

UNITED STATES CONFERENCE OF CATHOLIC BISHOPS,

      Defendant.

Case No. 1:20-cv-01365-KBJ

## REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION, FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Kevin T. Baine
Emmet T. Flood

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel.: (202) 434-5000
Fax: (202) 434-5029
kbaine@wc.com
eflood@wc.com

Dated: August 21, 2020

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 4

I.    PLAINTIFF CANNOT EVADE THE USCCB'S CHALLENGE TO HIS
      INADEQUATE PLEADING WHEN THE MOTION IS EXPRESSLY
      AUTHORIZED BY THE FEDERAL RULES OF CIVIL PROCEDURE AND
      WHEN HE HAS FAILED TO MEET RULE 9(B)'S EXACTING STANDARDS. .......... 4

      A.    Federal Rule of Civil Procedure 12(h)(2)(B) Expressly Authorizes a
            Challenge to Plaintiff's Failure to State a Claim Upon Which Relief Can
            Be Granted. ................................................................................................ 4

      B.    Plaintiff's Failure to Plead Fraud with Particularity Is Not Cured by Far-
            Fetched Inferences From Information He Neither Saw Nor Heard. ................ 8

II.   PLAINTIFF'S FRAUD CLAIM FAILS BECAUSE HE HAS NOT
      CONTESTED THE USCCB'S ARGUMENTS CONCERNING HIS FAILURE
      TO PLEAD REQUIRED ELEMENTS OF THE CAUSE OF ACTION. ..................... 11

      A.    In Failing to Respond to the USCCB's Arguments Concerning Defects in
            Plaintiff's Fraud Claim, He Has Conceded Those Arguments. ..................... 11

      B.    Plaintiff's Proposed "Inferences" Do Not Remedy the Failure to Oppose
            Arguments Directed at the Complaint's Lack of Particularity. ..................... 13

III.  PLAINTIFF'S UNJUST ENRICHMENT CLAIM CANNOT GO FORWARD ............ 15

IV.   PLAINTIFF HAS NOT PLED THE EXISTENCE OF A FIDUCIARY
      RELATIONSHIP. ........................................................................................... 18

V.    THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE NO
      NEUTRAL PRINCIPLES CAN RESOLVE PLAINTIFF'S QUESTIONS
      ABOUT THE IMMEDIATE AND EXCLUSIVE USE OF PETER'S PENCE
      FUNDS. ......................................................................................................... 21

CONCLUSION ...................................................................................................... 24

# TABLE OF AUTHORITIES

## FEDERAL CASES

*CAIR v. Gaubatz*, 793 F. Supp. 2d 311 (D.D.C. 2011).............................................18, 20

*Cephalon, Inc. v. Slayback Pharma LLC*, 2019 WL 3597105 (D. Del. Aug. 1, 2019) ...................................................................................................................5

*Cordoba Initiative Corp. v. Deak*, 900 F. Supp. 2d 42 (D.D.C. 2012)...................19, 20

*Democracy Partners v. Project Veritas Fund*, ---F. Supp. 3d---, 2020 WL 1536217 (D.D.C. Mar 31, 2020).................................................................19, 20

*Edwards v. Ocwen Loan Servicing, LLC*, 24 F. Supp. 3d 21 (D.D.C. 2014) ..............16

*Firestone v. Firestone*, 76 F.3d 1205 (D.C. Cir. 1996)...........................................19, 20

*Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15 (D.D.C. 2003) ...................................................................................................11

*In re APA Assessment Fee Litig.*, 766 F.3d 39 (D.C. Cir. 2014) ................................16

*Jimenez v. McAleenan*, 395 F. Supp. 3d 22 (D.D.C. 2019) .........................................7

*Johnson v. Mazza*, 2017 WL 663153 (C.D. Cal. Feb. 17, 2017)..................................5

*Kaempe v. Myers*, 367 F.3d 958 (D.C. Cir. 2004) ......................................................16

*Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94 (1952) ..............................................22

*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271 (D.C. Cir. 1994) ..................................9

*Longwood Vill. Rest., Ltd. v. Ashcroft*, 157 F. Supp. 2d 61 (D.D.C. 2001)................16

*MobilizeGreen, Inc. v. Cmty. Found. For Nat'l Capital Region*, 101 F. Supp. 3d 36 (D.D.C. 2015) ................................................................................................19

*Montclair v. Ramsdell*, 107 U.S. 147 (1883) ...............................................................7

*Murphy v. Dep't of Air Force*, 326 F.R.D. 47 (D.D.C. 2018) ...................................6, 7

*Musgrove v. Brookings Inst.*, 78 F. Supp. 3d 496 (D.D.C. 2015)................................16

*NLRB v. Catholic Bishop of Chicago*, 440 U.S 490 (1979)........................................23

*Northrop Grumman Corp. v. Factory Mutual Ins. Co.*, 2006 WL 8422003 (C.D. Cal. Aug. 9, 2006)..........................................................................................4, 5

*Osborn v. Griffin*, 865 F.3d 417 (6th Cir. 2017)....................................................17, 18

*Paul v. Judicial Watch, Inc.*, 543 F. Supp. 2d 1 (D.D.C. 2008) .................................15

*Rollins v. Wackenhut Servs.*, 703 F.3d 122 (D.C. Cir. 2012) ......................................6, 7

*S.E.C. v. Contorinis*, 743 F.3d 296 (2d Cir. 2014)........................................................17

*S.E.C. v. First City Fin. Corp.*, 890 F.2d 1215 (D.C. Cir. 1989)...................................17

*Sabre Int'l Sec. v. Torres Adv. Enter. Sols., LLC*, 60 F. Supp. 3d 36 (D.D.C. 2014) ...................15

*T.M. v. District of Columbia*, 961 F. Supp. 2d 169 (D.D.C. 2013)................................16

*Tapp v. Wash. Metro. Area Transit Auth.*, 306 F. Supp. 3d 383 (D.D.C. 2016) ..........................6

*Texas v. United States*, 798 F.3d 1108 (D.C. Cir. 2015), *cert. denied sub nom. Texas v. Davis*, 136 S. Ct. 981 (2016) ..............................................11, 13

*Unified Container, LLC v. Mazuma Cap. Corp.*, 280 F.R.D. 632 (D. Utah 2012)........................9

*United States ex rel. Tran v. Computer Sciences Corp.*, 53 F. Supp. 3d 104 (D.D.C. 2014) ........................................................8, 12

*United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 685 F. Supp. 2d 129 (D.D.C. 2010) ............................................15, 16

*Ying Qing Lu v. Lezell*, 919 F. Supp. 2d 1 (D.D.C. 2013) ............................................19

### STATE CASES

*Bible Way Church of Our Lord Jesus Christ of the Apostolic Faith v. Beards*, 680 A.2d 419 (D.C. 1996), *cert denied*, 520 U.S. 1155 (1997)................................22, 23

*United Methodist Church v. White*, 571 A.2d 790 (D.C. 1990) ............................22, 23

### OTHER AUTHORITIES

5C Charles A. Wright and Arthur Miller, Fed. Prac. & Proc. § 1367 (3d ed. 2019) ......................7

5C Charles A. Wright and Arthur Miller, Fed. Prac. & Proc. § 1392 (3d ed. 2019) ......................5

*Fed. R. Civ. P. 9(b) .......................................................................... *passim*

Fed. R. Civ. P. 12(b)(6).........................................................................5

Fed. R. Civ. P. 12(c) .........................................................................5

*Fed. R. Civ. P. 12(g)(2)...................................................................... *passim*

*Fed. R. Civ. P. 12(h)(2)...................................................................... *passim*

Fed. R. Civ. P. 12(h)(3).......................................................................21

Local Rule 7(b) ..............................................................................11

## <u>INTRODUCTION</u>

Plaintiff's central contention is a claim of fraud.  When the USCCB points out that he has not identified a specific false statement coming from an identified speaker, or his own action in reliance on such a speaker and statement, he responds not by reference to allegations in his Complaint, but rather by accusing Defendant of "quibbl[ing] over specificity" and "focusing myopically on the 'who, what, where' of [Plaintiff's] recollected account."  Plaintiff's Opposition to Defendant's Motion, ECF No. 24 ("Opp'n") at 1, 15.  This simply will not do: The heightened pleading burden imposed by Rule 9(b) is not optional.  The requirement of specificity effectuated by the "who, what, where" inquiry is central to any fraud claim because it serves a critical legal function.  Yet, rather than meet the rule's requirement that he specify the particulars at the putative fraud's point of communication, Plaintiff devotes all but one sentence of the Opposition to discussing something else: statements made on the USCCB website and documents attached to it.  Yet Plaintiff never read the statements on the USCCB's website before making his (unspecified) Peter's Pence gift, and for all the Complaint and Opposition show, he did not even know such a website existed (or for that matter, that the USCCB itself existed) before making it.

Despite these defects, Plaintiff contends that the case must go forward because he had an "understanding" that his donation would be used "immediately" and "exclusively" for the poor and suffering.  But he again identifies no speaker or pre-gift statement that he heard or read to support his understanding that Peter's Pence donations would be distributed "immediately" and "exclusively."  He instead asks this Court to infer that a written statement on the USCCB's website, one he never saw or heard before giving, provides a basis for that "understanding."  But his "understanding" does not match even that written statement and is not inferable from it,

1

leaving him without the remotest factual basis for pleading that the USCCB is legally responsible for any action taken on that "understanding."

With no allegation identifying any speaker, statement or act of reliance, and with no basis for thinking that distribution of Peter's Pence funds to the poor and suffering would be both "immediate" and "exclusive," Plaintiff nevertheless invites this Court to adjudicate basic questions concerning both (i) the Holy See's *timetable* (How quickly is "immediately"? May the Holy See first invest certain funds and distribute the proceeds later?) and (ii) the Holy See's *decisions* as to how to allocate the funds (May the Holy See deduct administrative or other expenses as is typical with charitable giving? What qualifies as "poor" and were the Holy See's gifts made to the truly poor?). When Plaintiff insists "that discovery is needed to determine how the Peter's Pence funds travel from the pockets of parishioners into Swiss hedge funds," Opp'n at 22, there can be no doubt of his purpose to insert this Court into questions of Vatican administration. Such questions cannot be answered by recourse to neutral civil-law principles. They are discretionary decisions for church authorities.

Plaintiff fails even to contest a number of the USSCB's arguments about the missing elements of fraud. And the Opposition provides no credible justification for continuing his breach of fiduciary duty claim for the simple reason that, at the time of his gift, Plaintiff had no relationship whatsoever with the USCCB, let alone the kind of "special relationship" giving rise to a fiduciary duty in limited factual circumstances. His unjust enrichment claim fares no better. The USCCB's website – a source Plaintiff regards as having supreme importance – plainly says that Peter's Pence collection funds are sent to the Apostolic Nunciature for use by the Holy See, and clearly directs diocesan officials *not* to send such funds to the USCCB. The USCCB was not the funds' recipient and so did not retain them. It simply was not enriched, justly or unjustly.

What remains is a specious argument concerning the supposed "procedural[] improp[riety]," of the USCCB's making 12(b)(6)-type arguments after the filing of an answer. Opp'n at 12. That position willfully ignores the posture of this case: The USCCB is not seeking a second bite at the apple by filing a serial 12(b)(6) motion. On Plaintiff's own motion, the U.S. District Court for the District of Rhode Island (the "Rhode Island court") transferred the case to this Court rather than dismissing it outright for lack of personal jurisdiction. Having decided not to make a 12(b)(6) motion in the manifestly wrong forum and at a time when (by rule) that decision did not operate as waiver, the USCCB, following transfer to this Court, was obligated first to file an answer (the time for a 12(b)(6) motion having passed); and could only then raise the defense of failure to state a claim by way of a 12(c) motion (which it filed a few days after the answer). Plaintiff's twin contentions that the answer "mooted" the USCCB's failure-to-state-a-claim argument "entirely," Opp'n at 1, and that the present motion constitutes "improper" argument, Opp'n at 12, are nothing but waiver arguments in disguise. The right to make a Rule 12(c) failure-to-state-a-claim argument is not waived by the filing of an answer; to the contrary, it is expressly preserved in the plain text of Federal Rule of Civil Procedure 12(g) & (h).

In short, the Opposition does nothing to remedy the Complaint's fatal flaws. It depends entirely on information Plaintiff never read and never relied upon, information posted on the website of an entity that he appears to have been unaware of, with which he had no relationship of any kind, and which does not retain the funds he seeks to recover. And it invites this Court to insert itself into the internal affairs of the Catholic Church by adjudicating questions relating to the Holy See's distribution timetable and allocation decisions for Peter's Pence funds. The invitation should be declined.

## ARGUMENT

**I.     PLAINTIFF CANNOT EVADE THE USCCB'S CHALLENGE TO HIS INADEQUATE PLEADING WHEN THE MOTION IS EXPRESSLY AUTHORIZED BY THE FEDERAL RULES OF CIVIL PROCEDURE AND WHEN HE HAS FAILED TO MEET RULE 9(B)'S EXACTING STANDARDS.**

Plaintiff has completely failed, and all but acknowledges that he has failed, to plead fraud with particularity.  His Opposition adopts two tactics for excusing this failure.  First, he asks the Court to find that the filing of the USCCB's answer absolves him of any obligation to meet the exacting requirements of Federal Rule of Civil Procedure 9(b).  Implicitly recognizing this tactic's weakness, he then seeks the court's assistance in drawing unsupported inferences from statements and sources he appears not to have been aware of at the time of his gift.  Both approaches fail.

**A.     Federal Rule of Civil Procedure 12(h)(2)(B) Expressly Authorizes a Challenge to Plaintiff's Failure to State a Claim Upon Which Relief Can Be Granted.**

Plaintiff says that the "USCCB's 9(b) challenge is procedurally improper," because the USCCB "could have made the Rule 12(b)(6) argument challenging the specificity of any allegations at that time [of his Rule 12(b)(2) motion], but it did not."  Opp'n at 12.[1]  A complete and dispositive response to the procedural-impropriety charge is found in the text of Federal Rule of Civil Procedure 12(h)(2) itself:  "Failure to state a claim on which relief can be granted . . . may be raised . . . (B) by a motion under Rule 12(c)."  Which is just what the USCCB did here.

Plaintiff's deployment of an unpublished California federal court decision does not help him.  He cites *Northrop Grumman Corp. v. Factory Mutual Ins. Co.*, 2006 WL 8422003 (C.D.

---

[1] In this connection, Plaintiff also asserts that "nothing in USCCB's answer . . . mentions any lack of specificity under 9(b) or otherwise takes issue with the particularity of any allegations," Opp'n at 12, without acknowledging the Answer's second affirmative defense which says "[t]he Complaint fails to state a claim on which relief can be granted."  Answer, ECF No. 20, at 24.

Cal. Aug. 9, 2006) for two uncontroversial propositions.  First, that "[i]n essence this is a 12(b)(6) motion, and serial 12(b)(6) motions are disfavored."  *Id.* at *2.  Whether or not the USCCB's motion is "in essence a 12(b)(6) motion,"[2] it does *not* seek *serial* consideration of anything.  The arguments made in the present motion are presented here for the first time, and in the proper forum.  Second, *Northrop Grumman* says that a "motion attacking sufficiency of pleadings in [a] fraud case is a well-known and common pre-answer motion."  *Id.*  That point too is correct – and irrelevant.  Whether taken separately or together, Rules 12(b)(6), 12(g)(2) and 12(h)(2)(B) place no barrier to the USCCB's assertion of Rule 9(b) grounds for dismissing the fraud claim for the first time promptly after filing an answer with a transferee court.[3]

The premise of Plaintiff's argument appears to be that the USCCB was obligated to make every conceivable Rule 12 argument for dismissal to the Rhode Island court or lose the ability ever to make all not-then-unasserted Rule 12 arguments later.[4]  That is simply not the law.  Rule 12(g)(2) clearly states that a party must not make a Rule 12 motion raising a defense or objection that could have been, but was not, made in an earlier motion, "*except as provided in Rule 12(h)(2).*"  Fed. R. Civ. P. 12(g)(2) (emphasis added).  Rule 12(h)(2), in turn, specifically provides that a failure-to-state-a-claim motion "may be raised . . . by a motion under Rule 12(c)" – precisely what the USCCB has done here.  Fed. R. Civ. P. 12(h)(2); *see also* 5C Charles A. Wright and Arthur Miller, Fed. Prac. & Proc. § 1392 (3d ed. 2019) ("[I]f a party makes a

---

[2] If the USCCB's Rule 12(c) motion is, as the Opposition says, "in essence a 12(b)(6) motion," then it is available to be made under the express terms of Rules 12(h)(2)(B) and 12(c).

[3] Cases considering the merits of Rule 9(b) arguments presented in Rule 12(c) motions include *Cephalon, Inc. v. Slayback Pharma LLC*, 2019 WL 3597105, at *1 (D. Del. Aug. 1, 2019) (granting Rule 12(c) motion for counterclaims' failure to satisfy Rule 9(b)); *Johnson v. Mazza*, 2017 WL 663153, at *6 (C.D. Cal. Feb. 17, 2017) ("Failure to plead with particularity as required by Rule 9(b) can be challenged by a Rule 12(c) motion.").

[4] At page 11, the Opposition says: "Under Rule 12(c), the court is required to treat all of the allegations of the complaint as true and undisputed, yet USCCB placed them all at issue by filing a denial-laden answer."  If this view of the effect of an answer's filing were correct, Rule 12(h)(2)(B) itself – "Failure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c)" – would be a dead letter.

preliminary motion under Rule 12 and fails to include one of the Rule12(h)(2) objections, she has not waived it[.]").

Plaintiff also contends that the USCCB's motion should be denied because it is subject to a mode of judicial consideration that cannot be conducted at this stage of the case.  Opp'n at 13–14 (citing *Murphy v. Dep't of Air Force*, 326 F.R.D. 47 (D.D.C. 2018)).  But the plain text of Rule (h)(2) says that the failure-to-state-a-claim argument *is* available in a Rule 12(c) motion.  And "the standard of review for motions pursuant to Rule 12(c)" – as the D.C. Circuit and scores of district court decisions in this district attest – "essentially mirrors the standard for motions to dismiss under Rule 12(b)."  *Tapp v. Wash. Metro. Area Transit Auth.*, 306 F. Supp. 3d 383, 391 (D.D.C. 2016); *see also Rollins v. Wackenhut Servs.*, 703 F.3d 122, 130 (D.C. Cir. 2012) ("The filing of an answer . . . does not mean that the requirements of *Iqbal*, and *Twombly* do not apply to a Rule 12(c) motion, which here is functionally equivalent to a Rule 12(b)(6) motion.").

Despite the unequivocal language of Rule 12(h)(2)(B) and the plethora of decisions applying 12(b)(6) standards to 12(c) motions, Plaintiff contends that the USCCB's motion cannot be granted at this time because it is the equivalent of a summary judgment motion.  Some cases, including decisions of this Court, have determined that in limited circumstances, summary-judgment-type treatment is appropriate for a Rule 12(c) motion.  *See*, *e.g.*, *Murphy*, 326 F.R.D. at 48–49 (citing cases).  But this is not such a situation.  Given the obvious unsuitability of the original forum Plaintiff chose and the transfer to this court at Plaintiff's request, the USCCB's decision not to bring a 12(b)(6) motion before the Rhode Island court cannot remotely be characterized as undue or prejudicial delay.  This is the first failure-to-state-a-claim motion brought by the USCCB.  There is no waiver – the motion is plainly preserved by the terms of Rule 12.  And it was brought promptly after the filing of an answer.  Plaintiff has not

cited and the USCCB has not identified any case refusing 12(b)(6)-type (as distinguished from

Rule 56-type) review in a setting like this.  In fact, the cases on which Plaintiff relies do not even

mention Rule 12(h)(2)(B) or its preserving language.  The USCCB is aware of no case refusing

12(b)(6)-type consideration in a setting in which a court took into consideration the effect of

Rule 12(h)(2)(B) upon this kind of Rule 12(c) motion.

     The answer to the question whether in the present setting the USCCB's Rule 12(c)

failure-to-state-a-claim motion should be considered more like a 12(b)(6) motion to dismiss or a

motion for summary judgment is therefore clear:  Not only does Rule 12(h)(2)(B) expressly

authorize 12(b)(6)-type treatment here, Rule 12(c)'s precise function is to serve as an "auxiliary

or supplemental procedural device to determine the sufficiency of the case before proceeding any

further, and investing additional resources in it."  5C Wright & Miller § 1367.  "When that's the

case – as it is here – the standard of review is 'functionally equivalent' to that for a Rule 12(b)(6)

motion."  *Jimenez v. McAleenan*, 395 F. Supp. 3d 22, 30 (D.D.C. 2019) (quoting *Rollins*, 703

F.3d at 130).  On the present facts, any other result would amount to a complete nullification of

that aspect of Rule 12(c) expressly preserved by Rule 12's sections (g)(2) and (h)(2)(B).  Any

interpretation nullifying these provisions is erroneous.  *See Montclair v. Ramsdell*, 107 U.S. 147,

152 (1883) (requiring courts "to give effect, if possible, to every clause and word of a statute").

     In any event, the USCCB has satisfied the 12(c) obligation articulated in cases such as

*Murphy* and *Tapp*, to the effect that "the law entitles [the USCCB] to win given the undisputed

facts that have been alleged in both parties' pleadings."  *Murphy*, 326 F.R.D. at 49.  For the

purpose of this motion, the USCCB is not disputing any of Plaintiff's allegations, such as they

are.  The "facts that have been alleged" do not include so much as a single statement made by the

unidentified non-party speaker Plaintiff alleges he heard; they include no allegation that the

USCCB had any intent to deceive anyone; or that the USCCB was aware of the purported falsity

of the (again, unspecified) statement Plaintiff allegedly heard from the pulpit; or that he acted in

reliance on any (mis)representation made by the USCCB, the sole defendant here.  Nonexistent

"allegations" not averred in the Complaint cannot and do not create issues of contested fact.

What is missing here are statements particularizing the fundamental elements of the purported

fraud itself.  Even on Plaintiff's view of the appropriate standard/mode of review, *see* Opp'n at

13–14, which view is itself doubtful given the preserving language of Rule 12(g)(2) and

12(h)(2)(B), the merits of the fraud claim can be fully and fairly decided for this reason:  Plaintiff

has simply failed to place all of the tort's necessary elements in controversy.

### B.    Plaintiff's Failure to Plead Fraud with Particularity Is Not Cured by Far-Fetched Inferences From Information He Neither Saw Nor Heard.

Relying on this Court's discussion of Rule 9(b) in *United States ex rel. Tran v. Computer

Sciences Corp.*, 53 F. Supp. 3d 104 (D.D.C. 2014), Plaintiff seems to suggest that the failure-to-

state-a-claim analysis is somehow different when the claim challenged sounds in fraud.  *See*

Opp'n at 14–15.  This Court's decision in *Tran* does not excuse Plaintiff's failure to plead fraud

with the required particularity.  *Tran* first quoted Rule 9(b)'s particularity requirement

(favorably) and then reaffirmed a plaintiff's obligation to "state the time, place and content of the

false misrepresentation, the fact misrepresented, and what was retained or given up as a

consequence of the fraud . . . [and] individuals allegedly involved in the fraud."  *Tran*, 53 F.

Supp. 3d at 115 (internal citations and quotation marks omitted).  With the arguable exception of

the "time" factor (*see* Compl. ¶ 34: "during a Mass in the summer of 2018"), Plaintiff has not

even attempted to meet the well-established Rule 9(b) specificity requirements recited in *Tran*.

Plaintiff's other attempts to excuse himself from the requirements of Rule 9(b) are

altogether inadequate.  He admits that "his complaint . . . does not include a verbatim recitation

of each word spoken from the pulpit about Peter's Pence, or name the priest who said the words he heard, or even assign a specific dollar amount to [his] cash contribution," Opp'n at 15, and then contends that "that level of specificity is not required." *Id*. It is gratifying to see Plaintiff tacitly concede that Rule 9(b) requires him to address the "who, what, when" of the fraudulent statement(s). The problem of course is not that the Complaint lacks a "verbatim recitation of each word spoken" but rather *that it contains no recitation – verbatim or otherwise – of any word spoken*. For that simple reason, the Complaint fails to meet Rule 9(b)'s requirements.

Plaintiff also offers an especially weak excuse for not meeting his pleading burden. Relying on a single decision of a Utah federal district court, Plaintiff contends that Rule 9(b) motions serve little purpose after the filing of an answer. Opp'n at 12–13 (citing *Unified Container, LLC v. Mazuma Cap. Corp.*, 280 F.R.D. 632, 636 (D. Utah 2012)). Yet *Unified Container* itself acknowledges that post-answer Rule 9(b) motions are not waived. 280 F.R.D. at 636–38. In any event, the present motion serves the important, even vital, purpose of testing the sufficiency of Plaintiff's fraud claim at the threshold. Rule 9(b) "attempts in part to prevent[] the filing of a complaint as a pretext for the discovery of unknown wrongs." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1279 n.3 (D.C. Cir. 1994) (internal citations and quotation marks omitted).

Because the USCCB did not move for dismissal pursuant to Rule 12(b)(6) in the Rhode Island court, consideration of Rule 9(b) grounds makes perfect sense at this stage. The case was transferred from Rhode Island to this (appropriate) venue at Plaintiff's request and the Rhode Island court was not burdened with a duty to consider and opine on every conceivable ground for dismissal at that time. There was no waiver or other error in the decision not to bring a failure-to-state-a-claim argument at that time. Rule 12(h)(2)(B) authorizes making such an argument at

a later time and the policy of the federal rules supports it.  *See* Fed. R. Civ. P. 12(h) advisory

committee's note to 1966 Amendments ("[T]he more substantial defenses of failure to state a

claim upon which relief can be granted, failure to join a party indispensable under Rule 19, and

failure to state a legal defense to a claim (see Rule 12(b)(6), (7), (f)), as well as the defense of

lack of jurisdiction over the subject matter (see Rule 12(b)(1)), are expressly preserved against

waiver by amended subdivision (h)(2) and (3).").

     The Opposition also points to something referred to in the Complaint and not disputed in

the USCCB's motion.  The USCCB has in fact published a document entitled "One Church, One

Mission" (the "Guidelines").[5]  *See* Memorandum of Points & Authorities in Support of

Defendant's Motion, ECF No. 22-1 ("Mem.") at 4 n.4.  That document does indeed provide

guidance for U.S. Catholic dioceses in the administration of national collections.  What the

Opposition cannot bring itself to acknowledge is that the Guidelines distinguish "universal

collections . . . established by the Holy See," Guidelines at 3, from the ordinary run of national

collections "authorized by the USCCB," Guidelines at 1, and they do so precisely because they

are given different treatment.  The USCCB's website quite explicitly says that "**Gifts for the**

**Peter's Pence Collection should NOT be sent to USCCB**, but instead should be sent directly to

the Vatican through the Apostolic Nunciature."  *See* Mem. at 3–6, 16–18 (emphasis in original).

     The more important point is this:  Although the Opposition is correct in saying that the

Complaint "discusses and quotes extensively from the 'donor intent' section of the Guidelines,"

Opp'n at 6, the Complaint nowhere alleges, and the Opposition does not support the idea, that

Plaintiff ever saw the Guidelines or any part of it, or that it was read to him, or that he was ever

---

[5] At page 3 of his Opposition, Plaintiff refers to the U.S. Catholic Church's group tax exemption obtained by the
USCCB each year.  Although the Opposition refers to the expression "subordinate organizations" in the IRS Group
Exemption Letter, Plaintiff does not argue, and the Complaint does not allege, that the Group Exemption has any
bearing on Plaintiff's claims or the USCCB's arguments in this case.

aware of it before making his Peter's Pence donation, or that he relied on it before making his

donation.  The Guidelines document does not salvage his defective fraud claim.

II.   **PLAINTIFF'S FRAUD CLAIM FAILS BECAUSE HE HAS NOT CONTESTED THE USCCB'S ARGUMENTS CONCERNING HIS FAILURE TO PLEAD REQUIRED ELEMENTS OF THE CAUSE OF ACTION.**

Although it is buried in footnote 17, the Opposition ultimately acknowledges the reason

for Plaintiff's failure to plead all elements of his fraud claim with the required particularity:

"Mr. O'Connell's fraud allegations are based on the USCCB's affirmative misrepresentations[.]"

Opp'n at 16 n.17 (citing Compl. ¶¶ 47–51).  Which is to say, his claim is not actually based on

unspecified statements from the pulpit at all.  This explains the Opposition's resultant failure to

contest the USCCB's arguments.  But it does not excuse it.

A.   **In Failing to Respond to the USCCB's Arguments Concerning Defects in Plaintiff's Fraud Claim, He Has Conceded Those Arguments.**

By failing to address a number of arguments made by the USCCB in its motion, Plaintiff

has conceded them.  *See* LCvR 7(b); *Texas v. United States*, 798 F.3d 1108, 1110 (D.C. Cir.

2015), *cert. denied sub nom. Texas v. Davis*, 136 S. Ct. 981 (2016) ("[Local Rule 7(b)] is

understood to mean that if a party files an opposition to a motion and therein addresses only

some of the movant's arguments, the court may treat the unaddressed arguments as conceded.");

*Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003)

("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive

motion and addresses only certain arguments raised by the defendant, a court may treat those

arguments that the plaintiff failed to address as conceded.").

The Opposition skirts the USCCB's arguments that Plaintiff failed to plead with

particularity the circumstances surrounding the alleged fraud, including *who* made the alleged

(mis)representation and the *content o*f the allegedly false misrepresentation, including the fact

misrepresented.  Mem. at 9–10.  As to the elements of fraud, Plaintiff's only direct response is to say that he provided a sufficient "when" for the purported misrepresentation.  Opp'n at 14.  But in the very case Plaintiff cites, this Court held a complaint sufficient under Rule 9(b) because the plaintiff's allegations had succeeded in "identif[ying] the *relevant individuals* involved in the scheme" and "the *specific claims* . . . that were allegedly false."  *Tran*, 53 F. Supp. 3d at 123 (emphases added).  Plaintiff fails to address this aspect of *Tran* or confront the arguments in the USCCB's motion that the Complaint fails to allege sufficient details regarding *who* made the fraudulent statements and *what was said*.  Mem. at 9–10.  Instead, he again cites USCCB website materials conveying the "purpose" of Peter's Pence and asks the Court to infer that whatever statement he heard from whomever he heard it led him to think his donation would immediately[6] and exclusively be applied to those in need of emergency assistance.  Opp'n at 15–16.  But such non-specific allegations are precisely what Rule 9(b) seeks to prevent.  *See Tran*, 53 F. Supp. 3d at 115 ("[D]efendants must be able to defend against the charge and not just deny that they have done anything wrong.") (internal citations omitted).

Plaintiff also makes no effort to refute the USCCB's arguments that the Complaint fails to allege facts sufficient to establish that the USCCB had any *intent* to deceive.  *See* Mem. at 13–14.  Nor does Plaintiff counter the USCCB's argument that the Complaint provides no factual basis to show that *the USCCB knew* that whatever representation Plaintiff heard "from the pulpit" was materially false or misleading.  Mem. at 13.  And nowhere in his Opposition does

---

[6] The Opposition's only supporting reference to the concept of "immediately" occurs on page 5, where it quotes from the USCCB Guidelines:  "the proceeds [received in the dioceses for national collections should] be sent without delay and in their entirety . . . [N]ot to turn over the entirety of the collection *immediately* is to violate the intention of donors."  Opp'n at 5 (emphasis in Opp'n) (quoting Guidelines at 6).  Even if Plaintiff had been aware before giving of the Guidelines' reference to "immediately," the reference does not support Plaintiff's understanding that all Peter's Pence funds would be distributed to the poor and suffering immediately.  In the quoted section, "immediately" refers to the obligation of dioceses and parishes not to withhold collected funds at the local level but rather to send them promptly to the place where funds are aggregated.

12

Plaintiff mention the "reliance" element of fraud, much less respond to the USCCB's argument that the Complaint fails to allege sufficient facts to show that *he relied on any statement by the USCCB* in choosing to donate.  Mem. at 14–15.  By failing to address these arguments, Plaintiff concedes that his Complaint is deficient in pleading these elements of fraud.  *See Texas*, 798 F.3d at 1110.  For these reasons too, the fraud claim should be dismissed.

### B.    Plaintiff's Proposed "Inferences" Do Not Remedy the Failure to Oppose Arguments Directed at the Complaint's Lack of Particularity.

Plaintiff resolutely refuses to identify any fraudulent statement made to him personally and upon which he relied.  Instead he asks the Court to "infer from the Complaint's allegations that the USCCB sent a script to East Providence to be read from the pulpit that informed Mr. O'Connell . . . that the purpose of the collection was to help those 'enduring the effects of war and violence, natural disasters and religious persecution.'"  Opp'n at 15 (citing Compl. ¶ 24).  The requested inference is no substitute for the factual particularity required by Rule 9(b).  Precisely because Plaintiff has failed to specify *anything* about what he heard from the pulpit, there exists no fixed basis from which to draw the desired inference.

Plaintiff retreats to the argument that the "USCCB's scripted appeal" is alone an adequate basis from which to draw inferences he hopes will keep his claim alive:  "[T]he Court should likewise infer that after hearing USCCB's scripted appeal, Mr. O'Connell understood that any donation to Peter's Pence would be applied right away to help those in need of emergency assistance."  Opp'n at 16.  This argument fails for several reasons.

First, the Complaint contains no allegation that, as the Opposition speculates, the "USCCB sent a script to East Providence to be read from the pulpit," Opp'n at 15; and there is no other allegation from which such a "fact" might be inferred.  Second, the Complaint contains no allegation that Plaintiff actually heard the "USCCB's scripted appeal" or anything resembling

it.   Third, and most tellingly, the Opposition makes no argument grounded in the specific text of any "scripted appeal."  Without connecting his speculation to at least some of the words of a "scripted appeal," there is no basis for drawing the remote, multi-step inference Plaintiff seeks here.

> The portion of the Complaint cited in the Opposition says this:
>
> Today we take up the Peter's Pence Collection, which supports the charitable works of Pope Francis.  Catholics around the globe support this collection to help the Holy Father reach out to people suffering in our world, especially those enduring the effects of war and violence, natural disasters, and religious persecutions.  Please be generous today.

Opp'n at 15 (citing Compl. ¶ 24).  If (although he does not allege it) these words (or their substantial equivalent) are what Plaintiff actually heard from the pulpit, they do not salvage his fraud claim.  The gravamen of the Complaint is his "understanding" that Peter's Pence funds would be used "immediately" and "exclusively" for the poor and suffering and his only arguable textual basis (however tenuous) is the "script" alluded to in the Complaint's paragraph 24.  *And yet the excerpted language says nothing about at all about "immediate" or "exclusive" use.*  The Complaint itself repeats that Plaintiff understood the funds would be for immediate use, *see, e.g.*, Compl. ¶¶ 5, 16, 27, 35, 49, but nothing in the "script"  gives cause to conclude that Peter's Pence funds would be distributed "immediately" or "applied right away to help those in need." Opp'n at 16.  Nor does the excerpted language say anything about the supposed "exclusive" use of his Peter's Pence donation.  *See, e.g.*, Compl. ¶¶ 35, 48, 52, 55.  Neither the word "exclusive" nor any synonym for it appears in the "script."  It contains nothing to contradict (or otherwise alter the impact of) the section of the Vatican website discussing use of Peter's Pence funds "for the many different needs of the Universal Church." Mem. at 4.  Although the Complaint cites freely from other portions of the Vatican website, the Opposition assiduously avoids

acknowledging the website's reference to use "for the many different needs of the Universal

Church."  The avoidance is unquestionably explained by the fact that the statement contradicts

one of his most basic claims.  Thinking that it would benefit him, Plaintiff introduced the Vatican

website for consideration in his Complaint.[7]  He must live with the fact that the website's

pertinent language defeats his claim to have been misled by some never-unidentified

representation of "exclusive" use.

## III.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM CANNOT GO FORWARD.

Plaintiff is correct that the USCCB's unjust enrichment argument is based on a very

simple premise:  The USCCB is not the recipient of the funds from Peter's Pence Collection, and

therefore neither received nor retained any benefit from Plaintiff.  Because the USCCB has not

received or retained Peter's Pence funds, Plaintiff cannot plausibly plead that the USCCB has

been unjustly enriched.  Precedent cited in the opening brief states this principle clearly:

> Plaintiff's claim against Fitton and Orfanedes for unjust enrichment fails for yet
> another reason.  Plaintiff has made no allegation that either Fitton or Orfanedes
> retained any of the donated funds for themselves.  Based on the allegations in the
> complaint, *Judicial Watch was the recipient of the contributions—not Fitton or
> Orfanedes.*  Unjust enrichment occurs when a person retains a benefit (usually
> money) which in justice and equity belongs to another.

*Paul v. Judicial Watch, Inc.*, 543 F. Supp. 2d 1, 8 (D.D.C. 2008) (emphasis added); *see also*

*Sabre Int'l Sec. v. Torres Adv. Enter. Sols., LLC*, 60 F. Supp. 3d 36, 41–42 (D.D.C. 2014)

(granting defendants' motion for judgment on the pleadings where no benefit was conferred on

individual defendants directly).  Plaintiff's cases speaking to the unjust enrichment standard hold

no differently.  *See United States ex rel. Westrick v. Second Chance Body Armor, Inc.*, 685 F.

Supp. 2d 129, 141–42 (D.D.C. 2010) (noting that "[u]njust enrichment must be determined by

---

[7] The Vatican's website is incorporated by reference into Plaintiff's Complaint.  *See* Mem. at 3 n.2.

the nature of the dealings *between the recipient of the benefit and the party seeking restitution . . . [,]*" and that, *"Toyobo [did] not dispute that it has retained all monies* from Zylon sales to Second Chance . . . ." (emphasis added)); *see also In re APA Assessment Fee Litig.*, 766 F.3d 39, 46–47 (D.C. Cir. 2014) (noting that claim "fits a standard pattern of unjust enrichment" because defendants deceived plaintiffs into making extra-contractual overpayments to defendants). Plaintiff's allegations, which are rebutted by uncontroverted documents cited in the Complaint, fail to plead a viable claim for unjust enrichment.[8]

Plaintiff's speculation cannot displace the need for allegations rooted in facts. "[B]aseless conjecture is not sufficient to survive a motion" under a Rule 12(b)(6) standard. *T.M. v. District of Columbia*, 961 F. Supp. 2d 169, 177 (D.D.C. 2013).  Furthermore, the USCCB's website clearly states that the Peter's Pence collection funds are sent to the Apostolic Nunciature for use by the Holy See, which has sole control over the funds' distribution.  *See* Mem. at 17–18 & nn.18–20.  The statements on the USCCB's website control over the Complaint's contrary allegations.  *See* Mem. at 16; *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004); *Edwards v. Ocwen Loan Servicing, LLC*, 24 F. Supp. 3d 21, 26 n.4 (D.D.C. 2014). Therefore, "it is clear that no relief could be granted to plaintiff under any set of facts that could be proved consistent with the allegations." *Musgrove v. Brookings Inst.*, 78 F. Supp. 3d 496, 502–03 (D.D.C. 2015) (internal quotation marks omitted) (quoting *Longwood Vill. Rest., Ltd. v. Ashcroft*, 157 F. Supp. 2d 61, 66 (D.D.C. 2001)).

---

[8] Plaintiff's contention that USCCB "requires all dioceses to report to USCCB all amounts collected, broken down by parish collections and individual gifts," Opp'n at 22, is of no moment.  Plaintiff has not cited a single authority that stands for the proposition that mere recordkeeping is actionable under an unjust enrichment theory.  Moreover, as detailed in USCCB's opening brief, both USCCB's website and the transmittal form expressly state that payment for Peter's Pence Collection be sent *directly* to the Apostolic Nunciature—*not* to USCCB.  Mem. at 17–18 & nn.18–20.  Plaintiff also cites no caselaw for the incredible proposition that a party who receives a stray payment and reroutes it to the appropriate recipient is unjustly enriched.

In an attempt to gloss over this fatal pleading deficiency, Plaintiff makes the incorrect suggestion that the Court simply can skip the causation analysis and order disgorgement from USCCB under the guise of vague notions of equity.  Not so.  "Since disgorgement primarily serves to prevent unjust enrichment, the court may exercise its equitable power only over property causally related to the wrongdoing."  *S.E.C. v. First City Fin. Corp.*, 890 F.2d 1215, 1231 (D.C. Cir. 1989).   Logically, because the USCCB does not collect or retain Peter's Pence funds, it has no "property causally related to" the alleged wrongdoing (misappropriating Peter's Pence funds).  USCCB cannot be liable for purposes of disgorgement.

The cases cited by Plaintiff do not undercut the USCCB's position because in those cases the defendants themselves were unjustly enriched and the disgorgement from third parties was causally related to defendants' own unjust enrichment.  For example, the court in *S.E.C. v. Contorinis*, 743 F.3d 296 (2d Cir. 2014), found that Contorinis himself profited from certain insider trades to the tune of $427,875.  *Id.* at 300.  The narrower question posed in *Contorinis* was "whether an insider trader can be required to disgorge *not only the profit that he personally enjoyed* from his exploitation of inside information, but also the profits of such exploitation that he channeled to friends, family, or clients."  *Id.* at 302 (emphasis added).  In *Contorinis*, both the defendant's own unjust enrichment and the relationship between the third-parties' investment returns and defendant's insider trades had already been established, therefore, the only question left related to the scope of permissible damages.

Similarly, in *Osborn v. Griffin*, 865 F.3d 417 (6th Cir. 2017), the defendants had obtained power of attorney over their infirm father and made a number of wrongful, self-dealing transactions for themselves and certain siblings at the expense of other family members.  *Id.* at 429–33.  For purposes of the disgorgement analysis, it already was established that defendants

had exploited their position as power-of-attorney holders over their father for personal gain. Therefore, like *Contorinis*, the question focused on whether the court could extend the disgorgement remedy beyond the unjust enrichment of the defendants and include "sums that Defendants wrongfully diverted from Plaintiffs, but that were ultimately passed on to innocent third parties, such as Plaintiffs' children." *Id.* at 455.  Because the innocent third parties' "sums" were a product of defendants' self-dealing transactions, the necessary causal relation for disgorgement existed.  *Id.*

This is not a case where the USCCB was the intended recipient of the Peter's Pence Collection, but chose to convey the proceeds to the Holy See rather than retain them.  Nor is this a case where USCCB has invested the funds on behalf of the Holy See or for the benefit of the Holy See.  Instead, this is a case where Plaintiff sued an entity that neither sought, nor received, nor retained any financial benefit from the wrongdoing alleged in the Complaint.  Plaintiff's Complaint therefore fails to plead a sufficient cause of action for unjust enrichment against USCCB and disgorgement from USCCB is unwarranted.

## IV.   PLAINTIFF HAS NOT PLED THE EXISTENCE OF A FIDUCIARY RELATIONSHIP.

In the opening brief, the USCCB acknowledged that a fiduciary relationship may arise in circumstances other than in such recognized relationships as attorney-client and trustee-beneficiary.  Mem. at 20–21.  The USCCB also pointed out that such a relationship requires, at a minimum, "a special relationship of trust and confidence."  Mem. at 21.  Plaintiff answers that the District of Columbia courts have left the definition of "fiduciary relationship" open-ended, and that courts are slow to dismiss claims of fiduciary breach when the existence of a fiduciary relationship requires fact-intensive inquiry.  Opp'n at 17 (quoting *CAIR v. Gaubatz*, 793 F. Supp. 2d 311, 341 (D.D.C. 2011)).   None of this is in dispute.  Still, in order to find a fiduciary

relationship after factual examination, there must first have been *at least some relationship* of some kind.  And Plaintiff has failed to allege that he had *any relationship at all* with the USCCB. Having alleged no relationship, there cannot possibly have been a "special relationship" of a fiduciary nature.

"One characteristic that District of Columbia courts have traditionally looked for is a 'special confidential relationship' that transcends an ordinary business transaction and requires each party to act with the interests of the other in mind." *Democracy Partners v. Project Veritas Fund*, ---F. Supp. 3d---, 2020 WL 1536217, at *11 (D.D.C. Mar 31, 2020) (quoting *Ying Qing Lu v. Lezell*, 919 F. Supp. 2d 1, 6 (D.D.C. 2013)).  As another opinion of this court expressed it, "[f]iduciary relationships arise when parties develop a certain amount of trust between themselves."  *MobilizeGreen, Inc. v. Cmty. Found. For Nat'l Capital Region*, 101 F. Supp. 3d 36, 46 (D.D.C. 2015) (quoting *Cordoba Initiative Corp. v. Deak*, 900 F. Supp. 2d 42, 49 (D.D.C. 2012)).  Here, Plaintiff does not allege anything approaching a relationship in which "each party [acts] with the interests of the other in mind " *Ying Qing Lu*, 919 F. Supp. 2d at 6, or that he and the USCCB had "develop[ed] a certain amount of trust between themselves," *MobilizeGreen*, 101 F. Supp. 3d at 46.   He does not allege that the USCCB communicated with him.  He does not allege that he looked at the USCCB website before making his gift.  He does not even allege that he knew of the USCCB's existence at the relevant time.  He alleges no relationship at all, and where none has been alleged, there can be no entitlement to go forward on a fiduciary duty theory.

Plaintiff is not helped by the case law he relies on.  Both *CAIR* and *Democracy Partners* apply a four part test derived from *Firestone v. Firestone*, 76 F.3d 1205 (D.C. Cir. 1996), for determining whether a fiduciary relationship exists in a particular case.  None of these factors

advances Plaintiff's argument.  The first factor is "the nature of the relationship." *Id.* at 1211.

Plaintiff has alleged no relationship at all with the USCCB other than that at some point

(apparently after making his gift) he examined its website.  The second factor is "the promises

made." *Id.*  Plaintiff does not allege that the USCCB itself made any *promise to him* before

giving.  Third is "the type of services or advice given." *Id.*  Again, Plaintiff makes no allegation

that he gave or received either services or advice to or from the USCCB.  The final factor is "the

legitimate expectations of the parties." *Id.*  Plaintiff neither alleges or otherwise gives cause to

believe that he expected anything, legitimate or otherwise, from the USCCB and there is no

allegation or other reason to believe that the USCCB expected anything at all from Plaintiff.

    The factual relationships described in Plaintiff's authorities do not strengthen his case for

finding a fiduciary relationship here.  *Democracy Partners* involved a person who deceptively

procured employment for the purpose of stealing/publicizing the employer's information, and in

those circumstances the court found the possibility of a fiduciary employer-employee

relationship.  2020 WL 1536217, at *12–14.  *CAIR* involved a similar fact pattern and similar

result.  793 F.Supp. 2d at 341.  *Cordoba* recognized the possibility of a fiduciary relationship

when the plaintiff alleged that the defendant had swindled him after he "held himself out as a

close friend . . . and advisor . . . for more than five years, attempted to raise funds on behalf of

Cordoba, donated funds to an affiliate of Cordoba, acted as an advisor to Cordoba's principals

for several years, invited [a Cordoba principal] to stay in his home for several months," and other

actions.  900 F. Supp. 2d at 49.  In every one of these cases there was a close relationship,

inarguably containing elements of trust and reciprocity which, taken together, were enough to

justify the claim's surviving a motion to dismiss.  The "relationship" between Plaintiff and the

USCCB suggested in the Complaint does not remotely resemble any of these cases.  If mere

after-the-fact consultation of a website were enough to create a fiduciary relationship, the concept of "fiduciary" will not only have been denuded of its "special" quality, it will also have been stretched so thinly as to lose all legal significance.

Plaintiff's attempt to rest a fiduciary-breach claim on the USCCB Guidelines founders on his inability to allege that he ever saw, or heard, or was aware of, those Guidelines (or anything in them) before making his gift.  His argument reduces to the following proposition:  that a guidance document created by the Catholic bishops' conference and addressed not to the faithful in the pews but rather to those who administer national collections in individual dioceses, somehow created a fiduciary relationship with every individual Catholic parishioner in the United States.  No known fiduciary relationship is so expansive, and Plaintiff offers no legal support for so patently untenable a notion.  And his point that "in many jurisdictions . . . state statutes explicitly define anyone who solicits charitable contributions as a fiduciary," Opp'n at 18 (citing Utah and Ohio statutes), backfires:  The District of Columbia has no such statute; the fact of legislative broadening in *other* jurisdictions only underscores the absence of such a basis in *this* jurisdiction.  The novel expansion of fiduciary duty law Plaintiff seeks should be denied.

## V.  THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE NO NEUTRAL PRINCIPLES CAN RESOLVE PLAINTIFF'S QUESTIONS ABOUT THE IMMEDIATE AND EXCLUSIVE USE OF PETER'S PENCE FUNDS.

The USCCB has moved to dismiss this case under Rule 12(h)(3), asserting the basis set forth in Rule 12(b)(1), namely, lack of subject matter jurisdiction.  As our opening brief spells out, a civil court lacks competence to decide matters of church administration.  *See* Mem. at 22–27.  There is no doubt of Plaintiff's aspiration to have this Court resolve the case by substituting judicial authority for the Church's authority.  The Complaint and Opposition make clear that Plaintiff wants the Court to take judicial action in at least the following ways:

- Substitute the Court's judgment for that of the Holy See on the question of how Peter's Pence funds are used, invested and allocated, as for example, "how the Peter's Pence funds travel . . . into Swiss hedge funds," Opp'n at 22;

- Interpret, and judicially declare the legal meaning of, U.S. Catholic Church Guidelines for collections at the national, diocesan, and parish level, Opp'n at 4–5, 18;

- Consider and resolve any questions arising from the interrelationships among statements made (i) on the Vatican website; (ii) on the USCCB website; (iii) in individual dioceses; and (iv) from pulpits in parishes around the country, Opp'n, *passim*;

- Determine whether the Vatican has distributed Peter's Pence funds "immediately," Opp'n at 5; and

- Determine whether the Vatican has distributed Peter's Pence funds "exclusively" to the poor and oppressed. Opp'n at 6, 16 n.16.

Such intrusive questions are outside a civil court's competence.  Neutral principles cannot decide them.

Established First Amendment doctrines limit the circumstances in which a civil court may insert itself into church administration.  The Opposition takes the position that "the applicability of ecclesiastical abstention turns on whether a court will be required to interpret religious doctrine or practice."  Opp'n at 24.  The prohibition extends far more broadly than that: "[I]t is well established *that a civil court may not interfere in matters of church government*, as well as matters of faith and doctrine."  *United Methodist Church v. White*, 571 A.2d 790, 793 (D.C. 1990) (emphasis added) (citing *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 116 (1952)).  As the cases cited on pages 23–27 of the USCCB's opening brief reflect, and as the D.C. Court of Appeals has specifically said, "a church's financial regime . . . necessarily reflects an array of decisions about . . . the leaders' corresponding responsibility to account for those funds, that a civil court cannot arbitrate without entangling itself in doctrinal interpretations[.]"

*Bible Way Church of Our Lord Jesus Christ of the Apostolic Faith v. Beards*, 680 A.2d 419, 429 (D.C. 1996), *cert denied*, 520 U.S. 1155 (1997).

If, as the USCCB submits, the First Amendment ecclesiastical abstention doctrine applies here, the USCCB should not have to face discovery or summary judgment proceedings or trial in this case.[9]  "The First Amendment's Establishment Clause and Free Exercise Clause grant churches an immunity from civil discovery and trial under certain circumstances in order to avoid subjecting religious institutions to defending their religious beliefs *and practices* in a court of law."  *United Methodist Church*, 571 A.2d at 792 (emphasis added) (citing *NLRB v. Catholic Bishop of Chicago*, 440 U.S 490 (1979)).  The First Amendment jurisdictional question calls for immediate resolution and cannot be deferred until the summary judgment or trial stages.

Should the case proceed without a threshold determination of the First Amendment jurisdictional issue, then, "once exposed to discovery and trial, the constitutional rights of the church to operate free of judicial scrutiny would be irreparably violated."  *Id.* at 793.

---

[9] In the Opposition's final paragraph, Plaintiff asks the Court to "order that discovery proceed forthwith."  Opp'n at 27.  For the reason discussed above, the USCCB cannot be subjected to the kind of open-ended discovery Plaintiff seeks.  Precisely because Plaintiff has not stated cognizable claims of fraud and breach of fiduciary duty, he is not entitled to discovery in any event relating to such claims.  As to his unjust enrichment claim, the USCCB has pointed out that its website contains material affirmatively stating that it is not the recipient of Peter's Pence funds and is therefore not in a position to "disgorge" them.  Plaintiff introduced that website to the case, relied on it extensively in his Complaint and Opposition, and has thereby incorporated it into his Complaint.  Those statements contradict a key allegation in the unjust enrichment cause of action.  Because Plaintiff incorporated that website and relied upon it in the Complaint, *see* Mem. at 3 & n.2 (citing cases), those website statements should control.  *Id.*  On that basis, the unjust enrichment claim should be dismissed without discovery. Notwithstanding the foregoing, if the Court concludes that discovery is necessary to resolve the unjust enrichment claim, it should be limited to the issues presented by that claim as enumerated in the USCCB's Statement of Material Facts as to Which There Is No Genuine Issue, ECF No. 22-2 and Plaintiff's Statement of Genuine Issues, ECF No. 24-1.

## **<u>CONCLUSION</u>**

For the foregoing reasons, as well as for the reasons stated in the opening brief, the

USCCB respectfully asks this Court to dismiss this case pursuant to Rule 12(h)(3), or enter

judgment on the pleadings on all counts, and/or grant summary judgment in favor of the

USCCB.

<div style="margin-left: 50%;">

Respectfully submitted,

By: /s/ *Kevin T. Baine*
Kevin T. Baine (D.C. Bar #238600)
Emmet T. Flood (D.C. Bar #448110)

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel.: (202) 434-5000
Fax: (202) 434-5029
kbaine@wc.com
eflood@wc.com

*Attorneys for United States Conference of
Catholic Bishops*

</div>

August 21, 2020

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2020, I caused a true and correct copy of the foregoing

to be served on all counsel of record via the Court's electronic filing system.


Dated: August 21, 2020                                    By: /s/ *Kevin T. Baine*_____