```
 1                 IN THE UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2   _____

 3   David O'Connell,               )  Civil Action
                                    )  No. 1:20-cv-01365-KBJ
 4                    Plaintiff,    )
                                    )
 5   vs.                            )  Motion Hearing (via Zoom)
                                    )
 6   United States Conference of    )
     Catholic Bishops,              )  Washington, D.C.
 7                                  )  January 28, 2021
                      Defendant.    )  Time:  1:30 p.m.
 8   _____

 9            Transcript of Motion Hearing (via Zoom)
                          Held Before
10        The Honorable Ketanji Brown Jackson (via Zoom)
                   United States District Judge
11   _____

12                    A P P E A R A N C E S

13   For the Plaintiff:        Marc R. Stanley
     (via Zoom)                Martin Woodward
14                             STANLEY LAW GROUP
                               6116 North Central Expressway
15                             Suite 1500
                               Dallas, Texas 75206
16
     For the Defendant:        Emmet T. Flood
17   (via Zoom)                Kevin T. Baine
                               Richard S. Cleary, Jr.
18                             WILLIAMS & CONNOLLY LLP
                               725 12th Street, Northwest
19                             Washington, D.C. 20005

20   _____

     Stenographic Official Court Reporter:
21   (via Zoom)                Nancy J. Meyer
                               Registered Diplomate Reporter
22                             Certified Realtime Reporter
                               United States Courthouse, Room 6509
23                             333 Constitution Avenue, Northwest
                               Washington, D.C. 20001
24                             202-354-3118

25
```

1          P R O C E E D I N G S

2              (REPORTER'S NOTE:  This hearing was held during the
   COVID-19 pandemic restrictions and is subject to the
3  limitations of technology associated with the use of
   technology, including but not limited to telephone and video
4  signal interference, static, signal interruptions, and other
   restrictions and limitations associated with remote court
5  reporting via telephone, speakerphone, and/or
   videoconferencing.)

6

7              THE COURTROOM DEPUTY:  Your Honor, we are here for

8  Civil Action 20-1365, David O'Connell v. United States

9  Conference of Catholic Bishops.  I'm going to ask that counsel

10 please state their appearance for the record and introduce any

11 co-counsels that might be present.

12             MR. STANLEY:  Good afternoon, Your Honor.  I'm

13 Marc Stanley and my co-counsel is Martin Woodward.  We

14 represent Mr. O'Connell and the putative class.

15             THE COURT:  Good afternoon.

16             MR. STANLEY:  Nice to meet you.

17             MR. FLOOD:  And good afternoon, Your Honor.  My name

18 is Emmet Flood.  I'm here along with my Williams & Connolly

19 colleagues Kevin Baine and Richard Cleary, and we represent the

20 sole defendant, U.S. Conference of Catholic Bishops.

21             THE COURT:  Good afternoon to you as well.

22             MR. FLOOD:  Thank you, Your Honor.

23             THE COURT:  This is a hearing regarding the

24 defendant's motion to dismiss the plaintiff's putative class

25 action complaint.  The plaintiff's complaint alleges that --

1    and I guess I'll call it USCCB, although I'll do my best to

2    keep the acronyms straight.  The plaintiff alleges that the

3    defendant is liable for fraud, unjust enrichment, and breach of

4    fiduciary duty based on the USCCB's alleged misrepresentations

5    with respect to how funds that are collected from parishioners

6    pursuant to the Peter's Pence collection are being spent.

7        In its motion, USCCB contends that this Court lacks

8    subject-matter jurisdiction over O'Connell's claims, which, I

9    believe, is a threshold consideration, even though it does not

10   come first in the motion to dismiss.  The motion also maintains

11   that the plaintiff has failed to plead fraud with particularity

12   as required by Rule 9(b) and that the defendant is entitled to

13   judgment on the pleadings under Rule 12(c) or, in the

14   alternative, entitled to summary judgment.

15       I have reviewed your briefs.  I am familiar with your

16   arguments.  So I hope that we can just have a discussion that

17   illuminates the various legal issues.  Let me start by

18   acknowledging that my hopes of how we will be able to proceed

19   are somewhat limited due to the circumstances, the constraints

20   that we face, in having to conduct this hearing virtually.  We

21   are proceeding by videoconference due to the court's closure as

22   a result of the pandemic, and I found that these circumstances

23   are not exactly ideal for having the kinds of discussions that

24   I ordinarily have with parties that appear before me.

25       So we'll do our best, but I may have to scale back in

1   terms of my ordinary level of engagement.  I will be asking you

2   questions, but probably fewer than I ordinarily would.  We

3   won't impose any time limits.  I find them distracting, and I'm

4   just trying to get to the heart of the matter.  So let's just

5   do that.

6        And I'm going to alter my typical format just a bit to

7   expedite things in this way.  I typically -- even though it is

8   a motion to dismiss, I ask the plaintiffs to start to set the

9   sort of framework of the complaint before we turn to the

10  arguments and dismissal.  I think the general complaint is

11  straightforward.  So I actually want to start with defense

12  counsel -- it is defense -- the defendant's motion -- and focus

13  in initially on the concerns about jurisdiction.  We'll do a

14  round that focuses only on that threshold issue, and the

15  plaintiff can respond, and we'll have any replies.

16       And then we'll move to what I consider sort of a

17  two-part second set of questions, which is, one, the procedural

18  question of whether the defendant is able to make the arguments

19  that it seeks to advance here about particularity and failing

20  to state a claim as a Rule 12(c), motion and then also the

21  second part of this is the merits of the defendant's argument

22  about why this matter should not be allowed to proceed, whether

23  on particularity grounds or failure to state a claim or

24  otherwise.

25       One thing that occurred to me as I reviewed this -- and

1    it could be something of a function of the way in which this

2    Court has organized its practices.  It occurred to me that the

3    parties haven't really focused on the difference between the

4    plaintiff's individual claim and the class claims with respect

5    to the arguments that they're making about particularity,

6    et cetera.  And I'm starting to wonder whether some of the

7    disputes about the complaint and its sufficiency would be

8    resolved by addressing class certification first.

9         I know that I -- you know, as part of my routine, I

10   say the class action allegations, and sometimes that works,

11   but perhaps in this case we might need to do the class

12   discussion first, but obviously not in this context, since we

13   haven't prepared for it, but I think we should keep that in

14   mind as we figure out how we're going to deal with this

15   particular motion.

16        So let me start with defense counsel, Mr. Flood, and

17   have you address jurisdiction.

18        MR. FLOOD:  Thank you, Your Honor.

19        If I might -- first of all, let me say that the -- the

20   bishops conference -- and I may just call it the Conference,

21   which might be simpler than the long acronym.

22        THE COURT:  Perfect.

23        MR. FLOOD:  The Conference -- our position is we

24   agree with the Court's initial statement that it is a threshold

25   matter.  And we also, as Your Honor noted, argued it last in

1    the sequence.  And I'd like to begin by giving the Court an

2    idea of why we did that.

3         It seems to -- to us that there are two principles of

4    very broad application that have indisputable bearing on the

5    case.  One is the principle we argue for here that there are

6    situations in which a civil court should not insert itself into

7    what are internal questions of church governance.  That

8    principle is not limited merely to a church administration or

9    property disputes or doctrine, but it also covers, in our view,

10   matters like internal governance, which includes spending

11   decisions.  We think this case is covered by that principle and

12   have so argued.

13        But there's another principle of quite general

14   application that we think is here, and I hope, Your Honor, this

15   explains why we approached the matter the way we did.  Churches

16   and, you know, ministers, you know, representatives of

17   religious orders acting, you know, in their official capacity

18   do not have some immunity from fraud claims.  That's just a

19   fact.  No one can cloak him- or herself in vestments or under a

20   church's rubric or ejus and say you may not approach me in a

21   civil court.  That's not just the law.

22        And so our -- our -- our approach here was undertaken on

23   the following thought; that if we in our briefing discussed

24   something of the particulars of what is asserted here, we --

25   that could we use that as an opportunity because we believe it

1    would generally shed light on the problem of the degree of

2    difficulty, entanglement, intrusiveness and show just what it

3    is that plaintiff seeks to have the Court do here.  And

4    that's -- so those are the two sort of background thoughts that

5    explain the sequencing we adopted.

6            THE COURT:  All right.  I mean, that's totally

7    logical, but I do think that if the Court does not have

8    jurisdiction, as you claim, with respect to the first principle

9    that you articulated, then my view of whether and to what

10   extent the plaintiffs have sufficiently alleged fraud given the

11   allegations of the complaint is not on the table.  So as a

12   threshold matter, I think, it's important for me to evaluate

13   your ecclesiastical abstention contentions.  So can we start

14   there?

15           MR. FLOOD:  So --

16           THE COURT:  Yes.

17           MR. FLOOD:  Of course, Your Honor.

18           The -- what the -- what the plaintiff seeks here, in a

19   nutshell, is a ruling from a civil court that will provide some

20   kind of scheme or schedule or internal rule of a decision for a

21   Court to adopt in which it asks the Court to impose that rule

22   on a religious organization.  So the gravamen of plaintiff's

23   complaint is that he was under the impression that the donation

24   he gave would be used immediately and exclusively for some

25   purpose.

1          And his view of the matter is that a civil court based

2     on what we regard as very thin allegations here -- but save

3     that for letter -- later -- should be able to tell a religious

4     institution how it should spend its money; right?  When you

5     say -- this is not -- it's not alleged and not brought as a

6     simple case of somebody lied to me and here's the lie and I

7     would like to vindicate the lie.

8          THE COURT:  Let me -- let me ask you why you say

9     that, Mr. Flood, because I marked in the complaint, for

10    example, paragraph 32, which is pretty clear with respect to

11    the -- what I thought was the essence of the alleged fraud,

12    which is that there is a great disparity between how this

13    Peter's Pence fund collection is being marketed and what the

14    vast majority of the collection is actually used for.  And if

15    that is the statement, isn't that a classic fraud kind of

16    dynamic?

17         In other words, he's not saying you can't use the money

18    for these other means because it violates the guidelines -- I

19    know that's in there, but I feel like that's a red herring --

20    you know, because the -- the church is supposed to be using

21    this money in a certain way.  I think the essence of the fraud

22    claim is here's all the marketing material that tells people

23    what you are using it for and, lo and behold, according to the

24    plaintiff, it's not being used for those purposes.

25         MR. FLOOD:  Your Honor, I think the first point to

1   make in response is that if we want to call statements on the

2   website marketing material about Vatican use, that should be

3   fairly read side by side with the Vatican's own website about

4   how it's used.  And we've quoted from the website in our

5   opposing papers.  And it's very clear on the Vatican website

6   that what appears in plaintiff's complaint is only some of the

7   available uses, and the Vatican website makes no secret that it

8   is also used generally for the needs of the Holy Father.  And

9   so that's -- that -- and I think that there's no getting around

10  plaintiff's intention to ask this Court to sort out which uses

11  are immediate enough and which uses are exclusive enough.

12  And --

13              THE COURT:  Except -- except, Mr. Flood, the problem,

14  I think, with that argument is that that's the kind of thing

15  that you would argue to the jury as to why it is that you --

16  your client was not fraudulent.  It's not an argument that

17  accepts the allegations in the complaint as true, which one

18  does on a 12, at least, (b)(6) kind of theory.  And we'll talk

19  about whether or not you're even able to bring that kind of

20  argument at this point in the case.  But assuming you are,

21  don't I have to accept what the plaintiff says about the

22  allegations -- excuse me -- about the, you know, marketing of

23  this, notwithstanding the fact that there may be some other

24  evidence that the plaintiff is mischaracterizing what's

25  actually going on?

1          MR. FLOOD:  Your Honor, I don't think you have to

2     accept it for this purpose, and I think the reason is that,

3     to use Your Honor's terms, we're talking about marketing

4     here, and this plaintiff has not alleged that he was the

5     recipient of marketing in this form.  It's very clear from his

6     complaint that he doesn't seem ever to have seen the USCCB

7     website.

8          THE COURT:  But you're shifting, Mr. Flood.  You're

9     not talking about this plaintiff and his standing and his

10     ability to raise these allegations; right?  I want to isolate

11     the allegations in the complaint and determine whether or not,

12     if true, they state a claim for fraud.

13          And -- and I understood you to be saying that, well,

14     what's really being stated here is not a fraud claim.  It is a

15     claim that the church should be spending the money in certain

16     ways and that's the kind of thing that courts can't get

17     involved in.  All that might be true, but I'm finding

18     allegations in this complaint that appear to be stating a claim

19     of fraud in the traditional sense.  Here's what you're saying,

20     Conference, and here's what you're actually doing, and that's a

21     fraud.

22          Now, whether or not Mr. O'Connell actually saw it, all

23     of those are other questions as to why there might be defects.

24     I just want to know whether you're right that the essence of

25     the claim is something that this Court cannot consider because

1     it goes to church policy and doctrine in the way that you

2     suggest.

3              MR. FLOOD:  Your Honor, I think it goes directly to

4     church policy, church use of funds, church governance and

5     administration.  And the reason I say that is the -- the

6     plaintiff, Mr. O'Connell's own opposition in response to this

7     motion, says that he wants to take discovery on how funds

8     travel from -- from the -- from the collection plate all the

9     way to what he calls Swiss hedge funds.  He's asking the Court

10    to sort out which modes of internal transmission in a religious

11    body may or may not be fraudulent.

12             What he does not do, we submit, is ever allege that the

13    Conference had knowledge of any purported fraud.  And the

14    Conference is the sole defendant here.  And so he -- he only

15    brings the case against one defendant, and then he wants to use

16    that to expand, if we take his pleadings and his submissions at

17    face value, into the universal church.  And that -- and once

18    you expand it to universal church and it becomes questions of

19    allocation and promptness of distribution, you're into the core

20    of church governance, and he doesn't make any secret that

21    that's what he wants to do in the case.  And this appears at

22    page 22 of his opposition.  At page -- you know, throughout

23    his opposition, he makes clear that this Court is going to

24    have to decide whether there is fraud on not only the USCCB

25    website but on the Vatican website.  He's asking you to make

1    that call.

2            THE COURT:  But I thought you said at the

3    beginning -- I thought you said at the beginning that churches

4    are not immune by their nature to claims of fraud.  And so to

5    the extent that he is seeking to trace the money and figure out

6    whether or not the contributions that are being made by

7    parishioners are actually going to charitable works or going to

8    Hollywood, that that's just a means of proving his case that

9    there's a fraudulent expenditure going on in light of what

10   you -- the Conference has said about what happens to these

11   funds.

12           I don't necessarily see it as the Court deciding whether

13   or not the expenditures, the investments, the real estate

14   purchases and whatnot, are lawful or are consistent with church

15   doctrine or anything else.  I mean, I understand the nature of

16   what you're saying, that he's seeking discovery into actually

17   how the money moves, but everything about discovery is relative

18   to a purpose.  And it sounds to me from the complaint and from

19   what he's argued that the purpose of doing that is just to show

20   that the statements that are being made about what's happening

21   to this money are not true, which is the essence of a classic

22   fraud claim.

23           MR. FLOOD:  Well, Your Honor, first of all, no one is

24   immune, per se, from a claim of fraud.  I think that's well

25   established.  You can't be a church and maintain that position.

1          With that said, however, the degree of intrusiveness

2     necessary to establish a purported fraud does implicate

3     Article III in subject-matter jurisdiction.  There's just no

4     question about it.

5          That's why the Supreme Court and various, you know,

6     lower courts have said that presumptively the default position

7     is that civil courts should not get involved in -- you know, in

8     entanglement questions.  In terms of the *Bible Way* case from

9     the D.C. Court of Appeals, questions of how money was spent,

10    where it flowed, what was the accounting, you don't get

11    involved.  But the Court -- the cases also say that if there is

12    a case of fraud that can be brought and can be decided purely

13    on the basis of neutral principles, then we have a different

14    kettle of fish.

15         This case cannot be decided, it's our submission, on the

16    basis of neutral principles.  We'll have to get involved in how

17    much is too much, and I think this is on the face of the

18    complaint.  If you say exclusively, then is any deviation from

19    exclusive?  And -- and as an aside, nothing says exclusive in

20    our materials, but --

21              THE COURT:  Well, that's the answer, Mr. Flood.

22    That's why I wouldn't have to get involved; right?  Isn't --

23    isn't the degree of intrusiveness or entanglement that you're

24    highlighting here relative to the statements that the church

25    made; so that if the Conference says this money is exclusively

1    being diverted to charitable -- or, you know, purpose for --

2    given to charitable works, that's the statement on the table,

3    then evidence concerning the money going somewhere else is

4    relevant under the rules of evidence.  And through neutral

5    principles, the Court and a jury could decide whether or not

6    there was fraud.  I don't know what you mean that it's not to

7    be evaluated via neutral principles or that the Court is going

8    to have to decide how much is too much.

9           MR. FLOOD:  Your Honor, I think to take the last

10   point first, I think the "how much is too much" question is

11   certainly implicated by the claim that the money was not

12   distributed immediately.  I think immediate and immediacy is a

13   question of degree.  I think it's not possible to lay down a

14   single universal principle that separates the satisfactorily

15   and immediate from the unlawfully delayed.

16          As to exclusive, Your Honor, if we had a very different

17   case than this one in which someone stood up and spoke to this

18   defendant and said you're going to give a hundred dollars and

19   every penny is going to go to this specific purpose, we'd have

20   a different case; but we don't have that here.  The -- the

21   client -- or I'm sorry.  The plaintiff has pled the case in a

22   way that ineluctably invites the Court into the question of how

23   much is too much on the -- what he calls the exclusivity

24   question.  There is no --

25          THE COURT:  All right.  Well, let me ask Mr. Stanley.

1          I mean, do you have anything more to say on jurisdiction

2     before I ask him respond to your well-taken point?

3          MR. FLOOD:  I don't think so, Your Honor, except if

4     there's anything I could assist the Court in understanding why

5     we put the jurisdictional point last.  I think I've said my

6     peace, but I realize it's a little bit unorthodox given

7     Your Honor's statement, but we thought some education on the --

8     inform the Court on -- on the fraud and other claims would help

9     to assist in understanding the degree of entanglement and

10    intrusiveness.  That's all.

11         THE COURT:  That's very helpful.  Thank you.

12         So, Mr. Stanley, you have been listening to this

13    dialogue, and Mr. Flood makes the important and interesting

14    argument that -- that this Court would necessarily have to

15    evaluate how much is too much in the context of analyzing your

16    fraud claim given the allegations that you've made.  Why is he

17    wrong about that?

18         MR. STANLEY:  Okay.  I'd like to come back to that in

19    one second, if I may.

20         THE COURT:  Sure.

21         MR. STANLEY:  I'd like to just set the stage.  And,

22    that is, we absolutely agree that the ecclesiastical abstention

23    applies if a Court is required to interpret religious doctrine

24    or practice in order to resolve claims against a religious

25    organization.  If the claims can be resolved, like Mr. Flood

1     said, in a neutral and generally applicable principles of law,

2     you have subject-matter jurisdiction.

3          So we offer an example in our -- in our response about a

4     defrocking of a Serbian Orthodox priest that goes too far.  And

5     the Court should abstain on a lawsuit about that.  That's

6     church doctrine.

7          In this case, what we're talking about is not the

8     actions of the Vatican.  We're talking about the actions of

9     the Conference, not how the Vatican did it, but what the

10    Conference represented to the parishioners.  We did not -- we

11    cannot, have not yet sued the Holy See.  Whether that happens

12    in the future, that's another issue, but that's not up for

13    debate today.

14         In my case, we just settled a class action -- we had a

15    class certified against an organization called Gospel for Asia.

16    In that case what was happening was they were soliciting

17    donors.  There were 179 categories you could make a

18    contribution for:  water buffalos, bicycles, motorcycles,

19    lamps, heating lamps, stuff that would go to southeast Asia.

20    And they promised a hundred percent of it would be spent there

21    on those items.  In fact, it's our position that none of it was

22    spent on that.  Yet, they were a religious organization, and

23    they tried to say the same thing.

24         The class was eventually certified, and the Eighth

25    Circuit said no.  I mean, this is a proper class certification.

1   You represented these people.  You sought -- the representation

2   was made, the class members donated to it, and you didn't spend

3   the money as you promised.

4            THE COURT:  Can I just ask you because --

5            MR. STANLEY:  Please.

6            THE COURT:  -- I think Mr. Holm -- Mr. Flood has

7   isolated a little bit of daylight between the positions that

8   you're talking about with respect to total abstention and --

9   and the ability to be able to proceed.  And by that I mean, you

10  suggested in the Eighth Circuit case that you just mentioned

11  that the representations that were being challenged were

12  that a hundred percent of the money was going to some

13  organization.

14         My question -- and I think Mr. Flood's argument -- is

15  whether if the representation is not that definitive, if it's

16  just we're going to be giving this money to charity, would

17  evaluating whether or not that is a fraudulent statement in

18  light of where the money actually goes open the door to the

19  kinds of entanglement that courts have been worried about in

20  this abstention context?

21           MR. STANLEY:  Not at all.  And, in fact -- well, I

22  need to break it into two ways.  One, we're not suing the

23  Holy See for how they spent the money.  We're suing the

24  Conference for representing to us -- and if you actually look

25  at their representations, look at what they actually said --

1    and I'll come back to that.  I'll find that in a second.  In

2    the -- in the -- from the pulpit the week before it was read,

3    the week after, what people were told, and by their own

4    guidelines, that their job is to ensure that the money was

5    spent as represented.

6              In this case, just so you know, the Vatican is actually

7    engaged in lawsuits right now against the Swiss investment

8    funds involving Peter's Pence.  They just got letters rogatory

9    in the last month in Switzerland to obtain documents on the

10   fraud that was made by certain cardinals and monsignors in how

11   they were investing this money.  So they're upset about it too.

12   It's not just the donors that are upset.

13             But regardless of that, let's go back and look at

14   what was actually said.  And I need to pull up that document

15   and -- you're right.  It's difficult in doing it this way.

16   We attached the flyer they put out, and I'll make it bigger

17   so I can read it.  Footnote 7, there's an attachment that

18   said --

19             THE COURT:  Is this your complaint, because that's

20   what I'm sort of focused on.

21             MR. STANLEY:  Yes, in the complaint, footnote 7.  And

22   I can actually -- may I share my screen?  Is that easier?

23             THE COURT:  No, I have it.  I have it.  Thank you.

24             MR. STANLEY:  The week before the collection, "Next

25   week, we will take up the Peter's Pence Collection, which

1    provides Pope Francis with the funds he needs to carry out his

2    charitable works around the world."  The benefits proceed our

3    brothers -- "The proceeds benefit our brothers and sisters on

4    the margins of society, including the victims of war,

5    oppression, and natural disasters.  Please be generous."

6    Okay.  They say it's going there.  Just like my Gospel

7    for Asia case, it's going somewhere, not to posh condo projects

8    in London, not to Swiss investment funds -- where they lost a

9    lot of money -- not to movies.

10    All right.  This week, same thing, almost the same

11    statement.  And then nothing about, hey, we're going to invest

12    this.  It -- it -- if, by the way, Your Honor, they said:  Hey,

13    we're going to invest this and grow it so when there are

14    emergencies the Pope can use that -- if they said in there,

15    by the way, the Pope might use this to satisfy deficits in

16    the Vatican budget, if they said they put -- might use it

17    for anything like that and people were told that, that's fine.

18    Then they say:  Thank you for your generous

19    contribution.  You're helping people around the world.  Our

20    point is it didn't go to that.  Ten percent went to that,

21    maybe, and the discovery is going to show that.  But what the

22    discovery is also going to show is they promised every year

23    that they would ensure that the money went exactly as promised.

24    And from 2011, when they came out with that promise, to the

25    present, they never did anything to show that the money was

1    actually being spent for poor people.  They never did

2    anything -- year after year -- this 2019 thing and 2020, even

3    this year, they came out with the same representations without

4    telling people, hey, there's a controversy here on how the

5    money is being spent.

6             THE COURT:  All right.  But is the essence of your

7    claim that you have a problem with how they're spending the

8    money, whether they're spending it for poor people or not, or

9    are you focused in on the statements that have been made?

10            MR. STANLEY:  I guess I have to dummy down for

11   myself.  The dummy down for myself is what did you promise the

12   class?  We promised the class -- what did you solicit the class

13   for?  We solicited the class exclusively -- nothing else.  We,

14   the Conference of Bishops, told our dioceses, who were required

15   to report to us, and the churches, who were required to report

16   to us -- we supervise them.  We told them to say to our

17   parishioners we need money for poor people in immediate need.

18   We need it now.  Please give generously.  Whether we need it or

19   not, we need it for poor people.  Help your brothers and

20   sisters on the margins of society, including victims of war,

21   oppression, and natural disasters.

22            Not -- not $170 million going to profit to the guy that

23   started the apartment -- the condo project in London.  He made

24   $170 million off of Peter's Pence.  Not to the guy in

25   Switzerland who made a lot of money.  It's going to our

1      brothers and sisters on the margins of society, including

2      victims of wars, oppression, and natural disaster.  It didn't

3      go to them, hasn't gone to them, 2011 to present.

4           I think what the jury will find is 10 to 20 percent went

5      to them and the rest simply did not.  And year after year, even

6      though they promised they would ensure donor intent is

7      fulfilled -- and that's really important.  They promised donor

8      intent would be fulfilled.  It is not being fulfilled.  That's

9      fraud.  There's nothing religious about this.  If I --

10          Judge, I do a lot of fundraising.  If I raise money for

11     a building, which I just did, and I take the money instead for

12     a religious organization -- I did it for a religious group,

13     Jewish senior housing -- and we take the money instead and we

14     put the money for salaries, because that's what we decided to

15     do, that's fraud.

16          I'm not asking you to decide anything religious about

17     abortion, about whether -- same sex marriage, about whether

18     priests can marry, about -- in my religion whether something is

19     kosher or not.  We're not going that far.  We're simply saying

20     to the Conference, you represented the money is going here,

21     didn't go there.  You've had -- year after year, you're making

22     the same representation.  You're promising you're going to

23     follow up and make sure the money was spent as promised.  Did

24     you do what you promised?  And it's fraud if not.  There's no

25     religious encroachment whatsoever.

```
1            THE COURT:  All right.  Mr. Flood.

2            MR. FLOOD:  Thank you, Your Honor.

3            Picking up the last point and also something Your Honor

4    said about paragraph 32.  I don't think we actually have here

5    fairly read a specific allegation that these funds have been

6    diverted to noncharitable uses.  What we have is an allegation

7    that there are some newspaper reports that say that the Peter's

8    Pence funds were invested and invested in some, you know,

9    different modalities that some persons might find unusual or

10   worse.  But I think it's very important that the record not be

11   without more from the plaintiff that they are actually

12   asserting through specific allegations that these have, in

13   fact, been diverted to noncharitable uses.

14           THE COURT:  Let me -- let me explore that a little

15   bit, because I'm trying to understand what you mean.  At the

16   pleading stage, people plead upon information and belief all

17   the time, and their source could be a newspaper article.  I

18   mean, I don't take you to suggest that plaintiffs should have

19   already done all of the discovery that's necessary to figure

20   out where this money is going.

21           MR. FLOOD:  I -- I totally agree, Your Honor, but

22   I -- if I'm reading the complaint correctly and fairly -- and

23   I've also looked at the newspaper reports -- I don't view the

24   newspaper reports as saying this money has been diverted in the

25   way that I think a reasonable person would agree that, you
```

1    know, using the money to go to Las Vegas and gamble or using

2    the money to buy, you know, some -- a minister's brother-in-law

3    a condo or something is diversion.

4         The reports are about investments.  The investments have

5    caused some people to question the character or quality of

6    them.  That's not the same thing.  I think it's important as

7    saying the money isn't stolen.

8         THE COURT:  But why is that not a jury argument,

9    Mr. Flood?  Why isn't this a jury argument?  You're just saying

10   there's no fraud here, and that's not really the province of

11   these early-pleadings-stage kinds of motions.  You're saying

12   they're wrong; you know, to the extent that the plaintiff is

13   alleging that we are -- we've acted inappropriately or

14   improperly or we've not done what we said we were going to do,

15   he's wrong.  And that's -- that's -- that is what the jury is

16   supposed to decide at the end of day or what you would be

17   entitled to summary judgment regarding after all the facts come

18   out and the Court assesses it.

19        MR. FLOOD:  Your Honor, I don't disagree as to the

20   great run of cases, but Article III jurisprudence here cautions

21   courts at the threshold to look hard so that we don't wind up

22   in an entanglement situation.  And our position is that if, as

23   I believe counsel is asking, the Court is going to have to

24   assert itself into questions of how much is too much, where is

25   the money going; if this is an investment, is it an improper

1    investment.  That is the kind of thing forbidden by

2    Article III.  And it's forbidden both to -- to a Court, we

3    submit, but also to a jury.

4         I mean, that's why these motions get made at the

5    threshold.  Because if a juror -- 12, you know, of our fellow

6    citizens are going to sit in Your Honor's court and decide the

7    question of, well, you know, I didn't like the Elton John movie

8    or, you know, nobody said anything about, you know, high-end

9    London condos or whatever the newspaper accounts say, that

10   itself on the assumption that these are actually investments,

11   for which there's no contrary allegation, is itself

12   exceptionally intrusive.  And it would open up --

13        THE COURT:  And absolutely the defendant would have

14   the opportunity to make that argument at summary judgment

15   before the jurors would be engaged, but on the basis of the

16   allegations, I'm just not so sure, especially when we have

17   cases like *Ambellu*, RICO fraud claims, not barred, you know, on

18   this basis.

19        So it's clear, as you conceded, that churches can be

20   subject to fraud claims, and any fraud claim is going to

21   require the Court and ultimately a jury to evaluate the truth

22   of the matter being asserted.  And that -- you know, the

23   question, I guess, is whether or not that amounts to the kinds

24   of entanglements that you are asserting.

25        And I'll have to look at the cases.  I think I

1    understand that issue.  Unless you want to say something more

2    about jurisdiction -- you said something about paragraph 32

3    that I mentioned?

4              MR. FLOOD:  Yes, Your Honor.  It's -- I -- I think I

5    folded my point into my response to Mr. Stanley, which is that

6    the great disparity between marketing and use at this stage,

7    there is no allegation of unlawful use.  There is an allegation

8    that newspapers reported certain investments.  And that's the

9    only point I wanted to make.

10             THE COURT:  Right.  And let me just underscore that

11   the Court does not understand Mr. Stanley to be making an

12   argument about unlawful use, and that that may well be where,

13   you know, we're sort of blurring the lines between entanglement

14   or not concerning the -- the money at issue.  So I think I

15   understand your argument.

16        Did you want to move to your sort of -- what you

17   consider to be the key here, the first set of principles, the

18   arguments about -- about the failure to state a claim, I guess

19   and Rule 9(b)?

20             MR. FLOOD:  I will, Your Honor.  If I might be

21   allowed 30 seconds on the prior points.

22             THE COURT:  Sure.

23             MR. FLOOD:  Just by way of

24   supplementation/clarification, it's not our position that

25   churches are generally subject to all kinds of fraud claims,

1   but, rather, that an appropriately pled case, in which there is

2   no intrusion and in which the case can either be resolved

3   entirely by neutral civil law principles, there is an opening

4   there.  We don't think this case meets that, but it's -- but I

5   wanted to make sure I wasn't on the record as having conceded

6   that there is a general openness to this under Article III.

7              THE COURT:  Understood.

8              MR. FLOOD:  Thank you, Your Honor.

9        On our point about -- about the rules.  Your Honor, you

10  broke this into two parts.  So I will take Part 1 first from

11  the question whether the -- whether the kinds of arguments

12  we -- we made are cognizable by a district court for there

13  having been made under Rule 12(c).  The short answer, it will

14  not surprise the Court, is that we believe that they can be.

15  And we think that there's several reasons for this.  Perhaps

16  the most noteworthy -- or the first in order, I think, derives

17  from the language of the federal rules themselves.

18       We have brought a 12(b)(6)-type -- 12(b)(6)-type motion

19  pursuant to 12(c), and we've done that because we believe --

20  procedural point, Your Honor.  The case was brought in

21  Rhode Island federal court.  Predecessor counsel for the

22  Conference moves on, as I remember it, only venue grounds.

23  Maybe it was personal jurisdiction as well.  In any event, they

24  succeeded.  Their argument was so persuasive that even

25  Mr. O'Connell's counsel agreed and sought a transfer.

1   All right.  The -- they did not file on every

2   conceivable available ground.  I have not asked for

3   predecessor's counsel opinion on why.  I think it's a fair

4   presumption, because it is well settled in the rules

5   themselves, that a person is not -- a defendant is not

6   obligated to bring a 12(b)(6)-type motion at the beginning

7   because the opportunity to do that is preserved by Rules 12(g)

8   and 12(h)(2)(B).  And so we -- we are proceeding on that basis.

9   We think that the 12 -- that the Rule 12(b)(6) grounds are

10  perfectly appropriate at this stage, even under Rule 12(c).

11          THE COURT:  All right.  Let me just -- I -- I did

12  write about this in *Murphy*, and Mr. Stanley points that out in

13  his opposition.  And I -- I'm still very, very perplexed by the

14  confusion that appears to have arisen about these different

15  rules.

16          You suggest that Rule 12(b)(6) and Rule 12(c) motions

17  are of the same type.  But, in fact, as I said in -- in *Murphy*,

18  they're actually two different types of motions.  They both can

19  relate to whether or not the plaintiff states a claim upon

20  which relief can be granted.  That argument can be the same,

21  but the motions are different.  And they have different bases,

22  and they have different results.

23          So let me ask you this:  If you're bringing a Rule 12(c)

24  motion, which you are saying you're trying to do here, are you

25  seeking judgment on the pleadings as a result of that motion or

1    what -- what is it that you're asking the Court to do if I

2    grant your 12(c) motion?

3              MR. FLOOD:  Your Honor, we're asking you to -- to

4    grant the motion for all the reasons set forth in *Iqbal* and

5    *Twombly* and by the D.C. Circuit in the *Rollins* case.

6              THE COURT:  But that's a -- that's dismissal.  So

7    there are two different things that a court can do in a

8    situation like this, and they, in fact, track the differences

9    between 12(b) and 12(c).

10         I understood 12(c) to be a motion for judgment on the

11   pleadings.  A motion for judgment says I win judgment

12   preclusively.  Not dismiss the plaintiff's case or dismiss his

13   claims.  That's Rule 12(b).

14         So I'm asking you are you seeking judgment as a result

15   of the Court's -- let's say I agree with you concerning their

16   failure to state a claim.  Are you asking me for judgment?

17             MR. FLOOD:  Your Honor, we're asking for the full

18   panoply of relief that may be available under 12(c).  If that's

19   just judgment -- and I think there would be problems at this

20   stage if judgment were granted -- that's agreeable to us, but I

21   also think that the *Rollins* case makes very clear that the

22   12(b)(6)-type grounds are available for vindication on a 12(c)

23   motion.

24             THE COURT:  All right.  Let me explain to you.  I

25   haven't read the *Rollins* case, but I'll explain my

1  understanding, and then we can move to the -- to the merits of

2  this; all right?

3          MR. FLOOD:  Sure.

4          THE COURT:  12(c) is a motion for judgment on the

5  pleadings.  And I appreciate that Rule 12(h)(2) says that you

6  can -- you can make the argument that a plaintiff has failed to

7  state a claim upon which relief can be granted by a motion

8  under Rule 12(c).

9          But when you are doing that, I say in *Murphy* -- and --

10  and this is my view of the rules -- you're actually making a

11  different kind of argument about their failure to state a claim

12  than you are in the Rule 12(b) scenario in the following sense.

13  As a Rule 12(b) motion, you are saying, Your Honor, I would

14  like to test the allegations of the complaint.  I want you to

15  assume for the purpose of this motion that the facts that are

16  being alleged in the complaint are true.  And I say looking

17  only at those allegedly true facts, you can say this person has

18  failed to state a claim and you dismiss their complaint as a

19  result.

20          Alternatively, under Rule 12(c), when you're asking for

21  a judgment on the pleadings, you have answered, and when the

22  Court looks at both the complaint and the answer, it

23  appreciates that there's no material dispute of fact regarding

24  the allegations of the complaint.  So a Rule 12(c) motion in

25  that context says, Your Honor, we agree as a matter of fact

1   with the allegations in the complaint.  There's no need to go

2   to trial.  There's no need to go to discovery.  Everybody's in

3   agreement about the basic facts here.  And appreciating that,

4   understanding that, we win, says the defendant.

5         Now, plaintiff can also bring a motion for judgment on

6   the pleadings under Rule 12(c) to say we win.  The defendant

7   has agreed to all of the material facts, and given those facts,

8   when you look at the legal standards, we win.

9         That is why, even though they both are failure to state

10   a claim arguments, one is assuming the facts are true,

11   testing the allegations of the complaint, they fail to state a

12   claim.  The other is there is no dispute of fact.  Everything

13   they say is true, and yet they still don't win and, therefore,

14   judgment comes to us.  It's almost like we're at the end of the

15   case, as though we've done everything we need to do, we get

16   judgment.

17         The second scenario is also a failure to state a claim

18   because relief cannot be granted to the plaintiff given those

19   true facts; all right?

20         I said this in *Murphy*.  That's my view.  And as a

21   result, I look at your -- your answer, and I don't see the

22   kinds of concessions that are necessary with respect to the

23   material facts to tee up procedurally a Rule 12(c)-type motion.

24   And I think you, therefore, have waived your ability to make

25   the kind of Rule 12(b)-type argument, because you had to make

1    that before you answered.

2         The outstanding question -- and I'm going to ask this of

3    both of you -- is whether you can make a Rule 12(b) kind of

4    argument post-answer, and I'm not sure.

5         Mr. Flood, why don't you tell me a little bit about

6    that.

7         MR. FLOOD:  Well, Your Honor, I begin by saying I

8    very much hope you can because the kind -- I hope we can,

9    rather, because the kind of argument that we've made is a

10   12(b)(6)-type argument.  We don't think it's waived, and not

11   only -- and we don't think that for a couple of reasons.

12        First, I think that were it to be determined that we've

13   waived it, I think there would be an element of unfairness in

14   that.  You know, the initial motions made in Rhode Island

15   federal court were made against the backdrop of a set of

16   federal rules that preserves the ability to make those kinds of

17   arguments later, which is to say that no party is obligated to

18   make every available 12(b)(6) -- 12(b), rather, grounds for

19   dismissal in a first motion or they are forever waived.  That's

20   not -- that's not the -- the text and purpose of the rules.

21        And so the idea we -- that we may have waived by reason

22   of the procedural sequence in this case, especially when we're

23   here in front of Your Honor because plaintiff successfully

24   moved the case, having essentially agreed with -- with us

25   about -- about the jurisdictional flaw -- venue flaw.  So I

1    just think there's an element on fairness, and I think if you

2    look at Rule 1 --

3             THE COURT:  I'm sorry.  Can I just ask you because --

4    I must not understand the procedural history enough to be able

5    to evaluate what you're saying.  Was there something about the

6    circumstances in Rhode Island that made it necessary for the

7    defendant to answer?

8             MR. FLOOD:  I don't think so, Your Honor.  I mean, I

9    think the circumstances were such that there clearly was not

10   proper venue, and I think that the plaintiffs, once they saw

11   the motion on that basis, understood that.

12            THE COURT:  Right.  So the unfairness would only

13   arise if there was something that made the defendant answer

14   such that they then lost their ability to make these kinds of

15   arguments.  The defendant presumably could have brought their

16   motion for transfer, had the case transferred, the answer is

17   still outstanding, and brought their 12(b)(6) motion to

18   dismiss; right?

19            MR. FLOOD:  Well, Your Honor, I'm not sure that

20   the -- that the cases permit the sequential motions of that

21   sort; right?  And for the extended matters to Your Honor, the

22   possibility of doing that was proposed to Mr. Stanley by my

23   partner, who said he was not agreeable to that.  And given the

24   very short timetable because -- as Rule 12 provides, once that

25   first decision is entered on the venue question, there's a very

1   brief time to make the -- file an answer.

2          And so we did it on that abbreviated time and then very

3   promptly by -- consistently, as we believe, with the text of

4   the rules -- brought the 12(b)(6)-type motion under 12(c).  And

5   I just think the idea that it's forever waived if you don't

6   bring it in a very first motion --

7          THE COURT:  Well, Mr. Flood, I mean, I get your point

8   in general.  I don't understand it to be unfair because the

9   rules are what they are, but I get your point that, you know,

10  it seems like, wow, this is forever waived.  But the question

11  is:  What is the "it"?

12         The only argument that is waived in this sense is the

13  mere testing of the allegations of the complaint, and there are

14  many, many defendants who don't even bother with the motion to

15  dismiss, especially in a fraud-type case where they understand

16  that there are genuine issues of material fact as to what is

17  going on, and they answer.  And then they answer, and they move

18  for a very rapid discovery schedule or, you know, early motion

19  for summary judgment because they say we win on -- you know, we

20  know that this isn't true and so they just move the case that

21  way.

22         So it's not as though you don't get to litigate this

23  matter, like you're waiving something substantial.  The only

24  thing you're waiving is the ability to make an argument that,

25  based purely and solely on the allegations of the complaint

1  taken as true, the plaintiffs cannot proceed, and it sounds to

2  me like you have many other arguments for why you think they

3  can't.

4       MR. FLOOD:  Your Honor, I'm -- I'm compelled to

5  disagree with the Court on the question of whether we're

6  waiving something, whether we just haven't waived something

7  substantial.  It seems to me that the -- that the right

8  afforded by the rules and preserved by Rules 12(g) and 12(h) to

9  bring *Iqbal*- and *Twombly*-type arguments under 12(c) is

10 something very substantial.  It would be substantial for any

11 defendant, but it's particularly substantial for a church

12 defendant that enjoys a degree of protection or immunity or

13 ecclesiastical abstention.

14      At the end of the day, Your Honor, a similar question

15 was presented -- and I -- refer the Court to a decision by

16 Judge Cooper of this Court on a question like this, and the

17 answer he provided, drawing, I think, in part on Your Honor's

18 own jurisprudence in this area was -- was this:  Can a

19 12(b)(6)-type argument -- can -- can this motion to dismiss

20 type Rule 12 arguments be brought under Rule 12(c).  And his

21 answer was sometimes they can and sometimes they can't.  And

22 when he was -- and this case is called Jimenez against

23 McAleenan, who was the Secretary of HHS, I think, a couple

24 years ago.

25      And -- and in deciding that a 12(b)(6)-type motion could

1    be brought, Judge Cooper quoted, actually, from the *Rollins*

2    case that I mentioned.  And the *Rollins* case says, very

3    expressly, other circuits have held that *Iqbal* and *Twombly*

4    apply to 12(c) motions -- and it gives some citations -- and we

5    do likewise.

6         Now, I -- I had not read Your Honor's jurisprudence in

7    this area in the *Murphy* case and *Alliance of Artists* and some

8    of your other opinions in this to extend across any and every

9    conceivable Rule 12(c) case.  I did not find -- I confess,

10   Your Honor, I did not read the briefs in all those cases, but I

11   did not find in any of the Court's opinions a situation in

12   which the defendant posing the 12(b)(6)-type argument in a

13   12(c) posture had made the rule-based arguments under Rules

14   12(g) and 12(h)(B)(2) [sic].  I just didn't see that there.

15   And so perhaps Your Honor's jurisprudence does extend across

16   every possibility, but it seemed to me --

17        THE COURT:  I mean, I just don't understand how it

18   can't.  Because I don't know what it means to have Rule 12(c)

19   and Rule 12(b)(6) mean the same thing.  I don't understand what

20   it means to say we'd like to bring a Rule 12(b)(6) argument as

21   a Rule 12(c) motion when those are different things; when one

22   is asking for judgment versus asking for dismissal when

23   Rule 12(b) says a motion asserting any of these defenses must

24   be made before pleading if a responsive pleading is required.

25        I don't know what it means to suggest that we don't have

1   to worry about that part and we can just say the same thing in

2   the context of a Rule 12(c) motion.  And so my attempt in

3   *Murphy* and looking at Wright and Miller and working through it

4   is to explain why it is that there's language in (h)(2), for

5   example, that makes it seem as though you might be able to do

6   that, but, in fact, it's really not opening the door to

7   repeating a Rule 12(b)(6) kind of analysis after the answer.

8        So let me have Mr. Stanley respond, he wants to.  I

9   think it's unlikely that I'm going to change my view of what's

10   happening with the rules.  So the question, I think, that is

11   most productive at this point, Mr. Flood, is whether Rule 9,

12   your arguments about particularity, are actually also

13   encompassed by this waiver of process or prospect or whether

14   Rule 9 is something else entirely that really doesn't have to

15   do with the timing of an answer.

16             MR. FLOOD:  Your Honor, I think that --

17             MR. STANLEY:  May I respond on Rule --

18             MR. FLOOD:  Oh, I'm sorry.

19             THE COURT:  Yes.  Go ahead, Mr. Stanley.  Just -- you

20   can respond on this point that we've been making and then go to

21   Rule 9.

22             MR. STANLEY:  Yeah, I'm not going to belabor it.  I

23   do want to correct the record, though.  Mr. Flood, I guess,

24   wasn't involved in this at the time, but if you look at

25   Document 14, we agreed to a consent motion for extension of

1   time to answer the complaint.  There wasn't a rush to answer.

2   We gave them plenty of time to answer it.  That was their

3   choice.

4        The truth is that the table's already set for counsel,

5   for Mr. Flood and Mr. Baine, by the Rhode Island counsel.

6   There were two different sets of lawyers, and they could have,

7   as the judge said, simply done a motion to transfer.  And they

8   didn't go that way.  They went with a 12 -- Rule 12(b) motion,

9   which required the Court's consideration, would have required

10  us to -- to resolve it.  So the fairness is we've been through

11  that process once.  It wasn't extraordinarily heavy on us, but

12  we did do it.  And --

13       THE COURT:  Mr. Stanley, let me just be clear.  You

14  said -- so you say in responding to your complaint, they filed

15  the Rule 12 motion and it included a transfer component; is

16  that what it was?

17       MR. STANLEY:  That's what it was, yes, ma'am.  Let me

18  find it exactly, and I'll tell you the -- it was -- I'm

19  going -- there it is.  Motion to dismiss.  It's Document No. 7

20  in this case and a brief, and it was under Rule 12 to dismiss

21  it, Rule 12(b).

22       And so the Court eventually found that as moot, but that

23  was their -- their -- their response.  I actually expected

24  them -- when they got the case to D.C., I expected them to say,

25  hey, we didn't really take a stab at some of the 12(b)(6)

 1    stuff, are you okay with us taking another bite at the apple

 2    before we answer.

 3              THE COURT:  Yes.  Can I pause?

 4        Mr. Flood, why didn't you do that; right?  Isn't that

 5    your unfairness issue?  In other words, you appreciated that

 6    there was some limitation with respect to 12(b)(6) because when

 7    you came to D.C., you sought to move under 12(c).

 8              MR. FLOOD:  That's correct, Your Honor.

 9              THE COURT:  So why didn't you try to reopen the 12(b)

10    motion that you had previously -- that had you previously

11    issued or -- you know, the motion that you had before in

12    Rhode Island?

13              MR. FLOOD:  The short answer, Your Honor, is that I

14    was not quarterbacking the case at that point.  My partner

15    Mr. Baine is -- is muted on the line, and my understanding is

16    he did reach out to counsel and suggest to him that we would

17    like to file a motion of that sort, and -- and now I will read

18    you counsel's response to that, Your Honor.

19        Actually, I'll begin with Mr. Baine.  This is May 26th

20    of last year.

21              THE COURT:  I'm sorry.  When did the answer come in?

22    Was it prior to the filing of the original motion to

23    transfer/dismiss?

24              MR. FLOOD:  No, Your Honor.  On that subject, I don't

25    believe my client through predecessor counsel actually moved

1  for a transfer.  I think that the motion was made by

2  Mr. Stanley on behalf of the plaintiff, and I'm advised that

3  we, in fact, did not move for a transfer.

4         THE COURT:  Okay.

5         MR. FLOOD:  The transfer motion was made solely by

6  the plaintiff --

7         THE COURT:  Okay.

8         MR. FLOOD:  -- and was granted by the Court.  So I'm

9  happy to have the opportunity to clear that up.

10        Given the timing until the transfer was made -- I have a

11  chronology here somewhere, Your Honor -- around the third week,

12  I believe, of May in 2020.  The transfer order was issued on

13  May 21 by a Rhode Island federal court denying the motion as

14  moot and granting plaintiff's motion, which it calls a

15  cross-motion in its minute order, to transfer.  And so that's

16  the 21st.

17        I think under the rules there's only -- there are only

18  three weeks then to answer that absent an extension of time,

19  and, of course, if it were possible to actually file another

20  12(b) motion before the answer, it would make sense, of course,

21  to extend that time to permit a full motion.

22        I now come to the record in -- in the matter -- or to --

23  to the back and forth.  On May 26th, my -- my partner

24  Mr. Baine, you know, asked for an extension of time.  He

25  believed -- he -- he worded the request as a 30-day extension

1    for time to respond.  He did not use the word "answer" or the

2    word "move."  He used the more general term.

3            In response, same day, Mr. Stanley wrote back and said

4    nice to meet you, et cetera, and said we agree to --

5            MR. STANLEY:  That's actually not true.  Can I -- I

6    have the email up.  He did talk about a motion in his initial

7    letter.

8            MR. FLOOD:  Well --

9            MR. STANLEY:  Can we -- can we at least make the

10   record correct?  He says:  I understand our response by way of

11   answer or motion is now due on June 4th.  So he was

12   contemplating a motion when he did that.

13           MR. FLOOD:  Answer -- answer or motion is, of course,

14   generic for all possibilities.

15           MR. STANLEY:  Right.

16           MR. FLOOD:  And I'll gladly provide this exchange to

17   the Court.

18           THE COURT:  All right.

19           MR. FLOOD:  But if I --

20           THE COURT:  Keep going, Mr. Flood.

21           MR. FLOOD:  If I may finish just one sentence,

22   Your Honor.  The response says:  We agree to a July 6th answer

23   date, but we do not agree that a section -- second motion to

24   dismiss would be proper.  And in those circumstances,

25   Your Honor would have -- motion being -- with an opposition to

1   any effort to bring a motion having been clearly stated.  What

2   we adopted is rather than make an emergen- -- rush motion and

3   burden the Court with that, to answer and then promptly move

4   under 12(c).

5          THE COURT:  Not getting into your litigation

6   strategy, you could have also disputed that; right?  I mean,

7   the Court does have process for these for adjudicating early

8   stage disputes between the parties regarding what is the

9   appropriate course of action.  And it may well be that the

10  initial Court's determination that your -- that your motion to

11  dismiss was moot was actually not correct, such that you were

12  entitled to renew your motion to dismiss and should have never

13  been adjudicated on the merits in the previous forum.

14         Mr. Stanley.

15         MR. STANLEY:  Yes.  That's exactly right.  And that

16  was our position.  And he responded by saying:  Thank you for

17  agreeing to the 30-day extension.  And that's not a rush.

18  That's several weeks plus 30 days.  I understand your position.

19  It is not our intention to file another preanswer motion.  The

20  motion for judgment on the pleadings or motion for summary

21  judgment would not be precluded upon providing an answer.  That

22  was their choice to go this way.  And then he -- I complimented

23  him on working with Thurgood Marshall.  And he compli- -- he

24  talked about that, and we talked about that for a moment.  But

25  that was it.

1       And then he agreed to prepare a stipulation.  We agreed

2   to sign it.  I liked our position.  So I definitely was taking

3   that position.  I did not -- I wasn't sure I was going to win

4   if it actually went that way, but they chose to go a different

5   route, and that was evident in their response.

6           THE COURT:  Well, that -- that was actually helpful

7   just to understand fully why Mr. Flood is suggesting that there

8   might be a fairness issue.

9       To the extent that they did previously bring a motion to

10  dismiss under 12(b)(6) timely and prior to the answer and it

11  was never ruled upon, I do now understand at least your

12  suggestion, Mr. Flood, that it would be fair to allow you to

13  make those same arguments in this context.

14      Now, on the other hand, as Mr. Stanley is suggesting and

15  given the Court's own evaluation of the rules, that may well

16  have been, you know, your choice; that -- that your -- and I

17  see that Mr. Baine has popped up.  Maybe he'd like to say

18  something, but let me just finish putting on the table my

19  thought that perhaps, you know, the -- the parties proceed at

20  their own peril to the extent that they are making an

21  evaluation of what they believe the rules require or allow, and

22  if the thought was, well, we'll do this as a 12(c) motion

23  because it's our understanding that the rules allow it, if the

24  Court disagrees, then you would necessarily be precluded.

25          Mr. Baine.

1           MR. BAINE:  Your Honor, thank you.  I'm not dressed

2    for court because I took at face value the Court's request that

3    only people who are speaking appear.

4           THE COURT:  That's quite all right.

5           MR. BAINE:  But since people have tried to

6    characterize why I made decisions, I'd like the opportunity to

7    explain it, if I may.

8           THE COURT:  You may.

9           MR. BAINE:  And it's simply this:  That I thought

10    that Mr. Stanley was correct when he said that the rules don't

11    allow a second motion pursuant to Rule 12(b)(6) to dismiss the

12    complaint because the rules say that failure to state a claim

13    can't be raised on a second motion solely under 12(b)(6).  It

14    says if you want to do that, if you've made any motion under

15    Rule 12(b) that's denied, you have to answer.

16           THE COURT:  But the motion wasn't denied, Mr. Baine.

17    The mistake may have been that what happened was that the

18    original motion really doesn't count as a motion because the

19    Court just --

20           MR. BAINE:  That's what I wanted to get to.  That's

21    what I wanted to get to.  The rules say you can't make a second

22    12(b) motion, but -- so you have to -- so normally you have to

23    answer and then make the failure-to-state-a-claim argument

24    under 12(c), which is expressly allowed by the rules.

25        Now, my point about the unfairness here is simply

1    this -- and, quite frankly, if the Court thinks that the motion

2    should be brought under 12(b)(6) and not under 12(c), we would

3    respectfully ask to amend the motion to make it under 12(b)(6).

4    But the reason why we thought we had to make it under 12(c) was

5    because ordinarily when you -- when you made one 12(b)(6), the

6    rules say, well, you can't make a second one.

7         Normally what would have happened after the 12(b)(1)

8    motion in Rhode Island, which the defendant concedes was

9    proper, was correct, the Court would have dismissed the case.

10   The complaint would have been refiled in D.C.  We would have

11   filed a motion under Rule 12(b)(6) to dismiss the new

12   complaint.  But the defendants persuaded the judge to transfer

13   the case rather than dismiss it.  And so we thought well, we

14   can't make a second motion and label it 12(b).  We have to

15   label it 12(c).

16              THE COURT:  I understand your point.

17              (Indiscernible simultaneous cross-talk.)

18              MR. BAINE:  -- wrong about that, we hereby move to

19   amend it to make it under 12(b).

20              THE COURT:  All right.

21              MR. BAINE:  But it shouldn't be a game of gotcha.  It

22   shouldn't be a game.  It should be -- we should look at the

23   rules and try to -- try to follow a procedure that's -- that's

24   just and fair to us.  If I made the mistake of putting the

25   wrong letter after 12 in the motion, my mistake.

1          THE COURT:  Well, I -- I totally understand your

2     point, and we'll sort it all out.

3          I just want, you know, everyone who comes before me to

4     at least appreciate that there is actually a distinction

5     between 12(b) and 12(c) with respect to what the Court is

6     supposed to be doing, what the parties are supposed to be

7     arguing.  And I know that many, many courts have said, oh,

8     these are basically the same thing.  And in my view, they're

9     not.

10          MR. BAINE:  And all I --

11          THE COURT:  It matters.

12          MR. BAINE:  All I can say, Your Honor, is you're

13     correct.  That at this stage, because we've answered it, you

14     may also look at the answer as well as the complaint.  Then you

15     have to ask the same question:  Now that I see the answer and

16     now I see the complaint, has the plaintiff alleged facts which

17     would entitle the plaintiff to relief?  And we don't think it

18     has.  We don't think they have.

19          THE COURT:  But -- but in that view of the world,

20     Mr. Baine, the answer does no work.  In other words, just

21     looking at the answer doesn't matter if I'm asking the same

22     questions.

23          My view is that 12(c) actually requires an answer for a

24     reason and that you're doing something when you issue judgment

25     on the pleadings on the basis of both the complaint and the

1    answer.  Not just I look at the answer and I put it down and I

2    go back to the 12(b) world.

3        But all that said, I mean, we've sort of, you know, been

4    around this corner.  All I'm suggesting is that it is possible

5    that in -- and I do understand with all of the machinations

6    moving around, I consistently and typically transfer cases with

7    pending motions, with the motion still pending, because I never

8    want to do anything to the parties' rights concerning pleadings

9    that they have made or motions they have made if it's not my

10   case.  So I figure the judge who gets it can decide what to do

11   with this motion.

12        It appears in this situation that the motion was somehow

13   mooted before the case was transferred, which led to confusion

14   about whether it had been handled and, therefore, if you make

15   it again in this context, is it a second motion that violates

16   the rules or whatever?  And it seems to me that in that

17   circumstance, the -- the defendant has a good argument that it

18   isn't a second motion; that it doesn't transgress the rules in

19   that way because we were never -- you know, we never got any

20   answer or relief with respect to our first motion under these

21   circumstances, especially since the plaintiff was the one who

22   requested the transfer.

23        So all that said, you know, I'll have to go back and see

24   whether -- you know, what I think about that, and maybe they'll

25   be -- you know, give you an opportunity to evaluate in writing

1    as to whether or not the Court should construe the motion

2    that exists as one under 12(b)(6).  But I think if it sticks

3    as a 12(c) based on my view, you lose because 12(c) is not

4    doing what it is that you're requesting me to do in this

5    context.

6         Mr. Stanley.

7         MR. STANLEY:  I just want to say two things.  One,

8    that was the route they chose, and the rules are very clear; a

9    motion asserting any of the 12(b) defenses must be made before

10   a pleading -- before pleading if a responsive pleading is

11   allowed.  They went and chose to do the responsive pleading.

12   So it's now too late.  That's the path they chose.

13        In terms of fairness, we're now a year down after we

14   filed the suit, and we're -- we're out of the starting gate, in

15   our view, and ready to get discovery.

16        THE COURT:  But there's no prejudice to you,

17   Mr. Stanley, if they were allowed to make these motions.  I

18   mean, I understand the rules preclude it, but if they -- if the

19   Court were to somehow construe this as a 12(b)(6) that was

20   properly filed in light of the unique circumstances of this

21   case, you're not necessarily prejudiced by that, are you?

22        MR. STANLEY:  I think so.  I -- we could have at

23   least argued -- we could have argued beforehand that it wasn't

24   inappropriate, but the real point is I think it sets a bad

25   precedent.  The rules clearly state that once you file an

 1   answer, it's too late to do it.  And I think that sets a bad

 2   precedent.  I think you talked in the *Tapp* case that you can't

 3   convert a 12(c) into 12(b) motion.  And I just don't think it's

 4   proper.

 5          THE COURT:  All right.  I understand this.  I think

 6   it was very helpful.  And, Mr. Baine, thank you for coming on

 7   and explaining your perspective, and the procedural history was

 8   helpful.

 9          Let's talk about -- let's assume for a second that we

10   are moving forward with the arguments that are being made.

11   What -- what about this particularity, Mr. Flood?  And let

12   me -- let me just home in, in the interest of time, on my

13   concern.  It's something that I articulated at the beginning,

14   which is:  As I read your motion, it seems to be making

15   particularity arguments only with respect to the plaintiff's

16   individual claim, but the complaint is a class -- a putative

17   class action complaint.

18          So even if I agree with you, that he hasn't said who,

19   what, where, when with respect to the, you know, summer of 2018

20   in his own circumstance, are you making the argument that the

21   complaint in general fails on Rule 9(b) grounds?

22          MR. FLOOD:  Your Honor, I think the only succinct way

23   I can say it is we're making the argument that this complaint

24   alleging these facts fails on Rule 9(b) grounds.  We're not in

25   a position to move on any complaint other than the one brought,

1    and the complaint brought alleges facts relating to

2    Mr. O'Connell, and, in our view, those do not survive the 9(b)

3    rigors.

4              THE COURT:  Let me put it this way.  Let's say I

5    cross out the paragraphs that relate to Mr. O'Connell -- and

6    there's only a couple -- and I left in everything elsewhere

7    where he says here are all the statements that the Conference

8    has made, he quotes at length, he says where they come from,

9    you know, this is in the bulletin announcement, this is

10   provided to all the churches to be read from the pulpit, this

11   is on the website, all that remains, and the only thing that I

12   cross out, pursuant to your argument, is the section starting

13   on page 14, paragraphs 34 through 36; all right?

14        Are you suggesting that what remains is not particular

15   enough under Rule 9(b)?

16             MR. FLOOD:  Your Honor, there's a couple -- I need to

17   take this from a couple of different angles.  First of all,

18   without an individual plaintiff -- you know, some plaintiffs --

19   some groups -- some- -- someone other than Mr. O'Connell

20   whom -- who does not actually allege that he heard this,

21   there's no hearer, there's no receiver.  And so all the

22   elements -- for example, the reliance element is missing.  If

23   that's all -- if this is all we have are these three

24   paragraphs, some of the other elements that are, you know --

25   that are fundamental components of -- of a fraud claim are just

1     not there.

2            THE COURT:  And so you think it's not enough that it

3     alleges that these statements were made and that millions of

4     dollars come in from parishioners around the world, or at least

5     around the country, as a result?

6            MR. FLOOD:  Your Honor, I think it is nowhere near

7     enough, and there are any number of reasons why.  First of all,

8     this plaintiff doesn't allege that he read or saw or heard

9     those statements before he acted.

10           THE COURT:  No, I'm not talking about him.  I'm

11     talking about the class allegation claims.  An individual

12     plaintiff can say this sort of thing happened to me but

13     describe the scheme more broadly.  And I'm trying to understand

14     whether you are suggesting that the -- that the individual

15     plaintiff, all of the particulars of his own potential

16     individual claims have to be in there.  And if they're not, why

17     doesn't that just eliminate the ability for the individual

18     claim to advance but not the class claim?

19           MR. FLOOD:  Your Honor, the -- the plaintiff and

20     plaintiff's counsel are the masters of this complaint.  One

21     would think that if one were intent on -- on seeking the kind

22     of remedy sought and on, you know, surviving the preliminary

23     motions and pursuing this through the normal process, there

24     would be a plaintiff who could actually say here's what I

25     heard and here's what I replied on and here's how I was

1   wronged.

2         You're putting me, candidly, Judge, in an impossible

3   position to say what somebody else might say if they had heard

4   it.  Let me point out that the statements referred to on the

5   website are -- are statements that -- they're on the website,

6   just as the Vatican statements, which complement them, are on

7   a website.  And -- but I don't know how the case will go

8   forward as a class other than on an analogy to what we know

9   now.  I would be speculating if I did otherwise.  And on

10  analogy --

11        THE COURT:  So shouldn't we -- shouldn't we do the

12  class part first then?  I mean, this was my -- my point in

13  raising this is shouldn't we sort out the class allegations

14  under these circumstances?  Where you're saying these are

15  website statements, we don't know who saw, we don't know who

16  heard, we don't understand the reliance -- not from a Rule 9(b)

17  standpoint necessarily, because I think you understand what it

18  is he's talking about, but just in terms of can this go forward

19  as a class action, shouldn't we sort that out?  And then in the

20  context of that, we will know whether Mr. O'Connell is typical,

21  whether he's an adequate representative based on what he says

22  happened to him?

23        MR. FLOOD:  Well, Your Honor, in -- in all candor,

24  this is a little bit outside my lane and my zone of preparation

25  today.

1          THE COURT:  Okay.

2          MR. FLOOD:  If -- if we could give you an informed

3    opinion on that, you know, by written submission, obviously

4    we'd be glad and -- and promptly prepared to do just that.

5          But it seems to me, Your Honor, that if -- if a

6    complaint is brought and it's brought as a putative class

7    action -- and there are roughly 50 million Catholics in the

8    United States and on any given Sunday, you know, I surmise

9    maybe half of them are in the pews.  And if the plaintiff comes

10   forward with -- if counsel comes forward with this sole

11   plaintiff and he turns out to be a person who didn't hear any

12   of this and, if in addition to that -- and here I'd like to

13   supplement something Your Honor said.  Excuse me.

14         I don't believe there is an allegation that my client,

15   the Conference, automatically provides or imposes or gives the

16   scripted material, from which he's asking you to draw this

17   inference, to the diocese.  That's an assumption that -- that I

18   have not been allowed to test yet.  And it is a multi-step

19   inference for which there is no predicate.

20         THE COURT:  But wait.  I'm sorry, Mr. Flood.  Again,

21   I'm just -- I'm getting confused because many of your

22   arguments, in my view, start getting into summary judgment

23   territory as opposed to the allegations in the complaint.

24         So I see on paragraph 24 the allegation that the

25   Conference also furnishes specific instructions for

1        Peter's Pence appeals to be read from the pulpit at church

2        services.  And then he quotes something that says, in parens,

3        "*Please read this text from the* <u>*pulpit, or*</u> *include it as part*

4        *of your weekly announcements.*"  So there is an allegation in

5        the complaint that the Conference is providing specific

6        instructions to the parishes to make these statements, and we

7        have to accept that as true at this stage; right?  That's what

8        *Iqbal* and *Twombly* tell us; right?

9              MR. FLOOD:  Your Honor, we have to -- you have to --

10       our submission is you have to take the complaint in its

11       totality.  And if something in the allegations, his intention

12       or -- contradicts something else or something on the website,

13       which plaintiff is relying on, you should look to that.

14             The Conference's website, you know, fairly read makes it

15       pretty clear, I think, that this is -- although this -- he has

16       read the text correctly, it is not, by any means, obligatory.

17       He has not alleged as a fact that the Conference has actually

18       provided to his diocese and from there to his parish and from

19       there to the pulpit in his case.  And there are a couple of

20       places on the site, which it's clear, and it says, you know, I

21       mean, how to give for Peter's Pence:  If your diocese --

22       archdiocese does not participate, if you want further

23       information for resources.  Now, I didn't want to introduce a

24       body of factual information in response to an opening -- or as

25       supplement to a motion of this sort.

1           But if he's going to say that the instructions were

2    provided, then he's got to take into account that the website

3    and nothing else that he's pointed to actually supports that.

4    It's a bare allegation in -- in intention and contradiction, I

5    submit, with the website itself.

6                    THE COURT:  All right.  Mr. Stanley.

7                    MR. FLOOD:  That's our claim.

8                    THE COURT:  Mr. Stanley.

9                    MR. STANLEY:  Thank you.

10          First of all, I want to remind everybody that the

11   Conference said in their -- in their motion -- I mean in their

12   reply -- for the purpose of this motion we are ". . . not

13   disputing any of Plaintiff's allegations, such as they are."

14   And if you look at the allegations themselves, it's different

15   than what Mr. Flood said.

16          If you look at paragraph 48 under fraud, it says that

17   they -- the Conference consistently, routinely, and uniformly

18   solicited donations for the collection.  By doing this, they

19   ". . . communicated to Plaintiff and to each Class member

20   that" -- they communicated to us -- that the money would be --

21   ". . . they donated to Peter's Pence would be used exclusively

22   for these purposes."  And if you go down -- it says material

23   representation.

24          Then we go to paragraph 50, and it says, ". . .

25   Plaintiff and Class members decided to donate to Peter's Pence

1   based in part on the representations communicated to them by"

2   the Conference.  It does say that the plaintiff did rely on it.

3          And then on the next paragraph, it says the same thing.

4   But for it, he wouldn't have given.  He had damages.  And so we

5   did say that O'Connell did, in fact, rely on the Conference's

6   representations to them as flooded down to the church.

7          THE COURT:  And, Mr. Flood, if that turns out to be

8   not true, which I assume will be the Conference's position,

9   isn't that the work of discovery and summary judgment and, if I

10   can't figure it out based on the evidence, eventually trial.

11   That's the essence of the -- the claim to be evaluated going

12   forward, isn't it, Mr. Flood?

13          MR. FLOOD:  Your Honor, I think that -- that the

14   Court ought to evaluate that claim in the context of the other

15   claims.  And the other claim -- one of the other claims is he

16   heard something from the pulpit, but he does not give it any

17   content.  To get from a script that is available to dioceses on

18   the -- on the Conference's website to an actual hearing by a

19   plaintiff and actual reliance requires multiple factual steps.

20   And the burden is on the plaintiff to make -- allege at least

21   enough --

22          THE COURT:  But only isn't that in the context of

23   helping the defendant to understand the nature of the fraud?  I

24   mean, I -- I sometimes think defendants make too much of

25   Rule 9(b) and its assertion that you have to plead fraud with

1    particularity when the cases indicate that really its function

2    is just to make sure that we don't have such vague allegations

3    concerning fraud that a defendant doesn't have any idea what

4    really to defend itself against.

5          Here we have particular statements.  We have an

6    allegation of reliance on such statements by the plaintiff and

7    other class members.  We have an allegation that those

8    statements mattered because at least the plaintiff -- and he

9    alleges also class members -- gave the money because they heard

10   these solicitations and they believed the representations that

11   were being made and an allegation that, in fact, those

12   statements were not true, because at the end of the day, the

13   money was not being used for what was being represented.

14         I -- I'm just struggling to understand why that's

15   unclear from a Rule 9(b) standpoint and why you suggest that

16   that's not sufficient to at least get us past -- at least on

17   the class-wide claims to get us past this very initial early

18   hurdle that the rules require.

19         MR. FLOOD:  Your Honor, the short of it is that

20   Mr. O'Connell is -- wants to pursue a fraud claim.  Fraud

21   requires a specific false representation.  The thing that he

22   says is false he never alleges that he heard, and the thing he

23   says he heard he can't particularize enough to know whether

24   it's even false.

25         The whole approach to -- plaintiff's whole approach to

1    the complaint is like one of these little paper toys that

2    adults would make for me when I was a boy.  And on one side was

3    a blue coloring, and on the other side was yellow.  And they

4    could spin it like a top, and it looked like it was green.

5    But I -- it wasn't green.  There was a blue side and a yellow

6    side.  And if plaintiff wants to be green, he should say that

7    he heard a thing that misled him personally; and he never does

8    that.

9         He says in his opposition on page 16, in the --

10   footnote 17, he says his ". . . fraud allegations are based on

11   USCCB's affirmative representations."  But USCCB, he doesn't

12   allege, actually ever made any representations at all to him.

13   Because he doesn't have that, he asks you to draw an inference.

14   And he asks you to draw it as, I presume, one of those fair

15   inferences as permissible from a complaint when a reviewing

16   court at this stage looks at the facts alleged.

17        But he does not allege any connecting inferences between

18   what is on one version of a script and what he heard.  He

19   doesn't do it because he can't tell you what he heard, and he

20   doesn't do it because he doesn't allege the connecting joints.

21   He wants a three- or four-stage inference, and we submit that's

22   too much to ask at this stage of the case.

23             THE COURT:  Mr. Stanley.

24             MR. STANLEY:  Again, paragraph 48 says just the

25   opposite of what Mr. Flood is saying.  You can't recast

1    this.  By doing these communications -- by doing the

2    representations or what they set out, they -- the Conference

3    ". . . communicated to Plaintiff and to each Class member that

4    any money he donated to Peter's Pence would be used exclusively

5    for these purposes."  He said he received a communication from

6    them.

7            THE COURT:  All right.

8            MR. FLOOD:  But, of course, Your Honor, it doesn't

9    say he received that communication, and I think that's the key.

10           THE COURT:  And I also think that that -- you -- you

11   are not suggesting, Mr. Flood, that you wouldn't be able to

12   make that kind of argument in the summary judgment context

13   after, of course, you depose plaintiff and have gotten the full

14   statement as to what he heard or what he saw?  You'd make this

15   same argument to me at summary judgment, wouldn't you?

16           MR. FLOOD:  Your Honor, I think we will make any

17   argument that Your Honor will permit at that stage, if we find

18   ourselves at that stage.

19        My only point is that these burdens in a fraud claim,

20   you know, rest in the first instance with the plaintiff.

21   Plaintiff has to come forward with particulars of this sort.

22   We submit he hasn't done it as to the content of the statement.

23   We submit also that he certainly hasn't done it as to

24   allegations, you know, that -- that my client, the Conference,

25   made false statements, that they knew they were false and in

1     making them they intended to deceive somebody.  He hasn't even

2     responded --

3              THE COURT:  How can you ever say more about

4     knowledge?  Isn't in the complaint enough to say that the

5     Conference, you know, makes these statements and the record

6     demonstrates that the -- the newspaper says the money is not

7     going and I allege, upon information and belief, that the

8     Conference knew the money wasn't going at the time they made

9     the statement?  How can you say more than that from a

10    particularity standpoint?

11             MR. FLOOD:  Well, it seems to me, Your Honor, that --

12    that if the -- if the gist of the complaint, as -- as I -- I

13    believe it's fair to say, is that the money was not spent

14    exclusively and immediately, then plaintiff ought to say

15    something about how the -- the defendant -- here the only

16    defendant -- knew that and, nevertheless, made the statements

17    knowing and understanding that they were false.  And he doesn't

18    do anything of the kind.  I mean, I understand --

19             THE COURT:  It's not enough, in your view, for him

20    to say that the Conference is responsible for collecting

21    these solicitations, that the Conference is responsible for --

22    he makes some statements about what the Conference does;

23    right?

24             MR. FLOOD:  He does, Your Honor.  And -- and, again,

25    you know, I think there just comes a point, I think, where the

1    Court -- we -- we, you know, respectfully ask the Court to look

2    at the website.

3         There is nothing in the record and there's -- the record

4    is the wrong term, and I withdraw that term, Your Honor.

5    There's nothing in the complaint and there's nothing on the

6    website -- and much to the contrary -- to suggest or -- or show

7    that the Conference oversees this; that it actually does the

8    solicitations, that it collects the money, that it's

9    responsible for conveying it.  All of that is just unfounded

10   and that a lack of basis is set forth on the very website they

11   invoke for other purposes.

12        THE COURT:  So you believe that I can go to the

13   website in order to test the proposition at paragraph 3 that

14   the Conference has solicited and collected hundreds of millions

15   of dollars in donations from parishioners, you think that at

16   this stage of the case the Court is to go to the website and

17   try to determine whether it provides evidence that supports or

18   rebukes this statement?

19        MR. FLOOD:  Your Honor, I don't think you need to --

20   it's a question of -- of having the Court find evidence, at

21   least not at this stage.  But if plaintiff can use the website

22   as a sword, we ought to be able to use at this stage the same

23   website as a shield to this -- the assertions made there.  And

24   if you go there, you will find -- at least in two different

25   places -- number one, that -- that the -- the Conference does

1    not collect this money and, number two, that the money is not

2    to be sent to the Conference.  It's to be sent to the

3    nunciature.

4              THE COURT:  I just -- I guess I don't understand your

5    view that a shield is supposed to be what's happening at the

6    motion to dismiss stage.  I'm just confused by that, because

7    the motion to dismiss stage, a defendant is not shielding him-

8    or herself.  The defendant is, in fact, accepting for the

9    purpose of the motion what plaintiff says.  That's what I

10   thought those motions do.  Now, maybe I'm wrong about that.  I

11   don't think so.  And if that's the case, my looking at the

12   website is not helpful from the defendant's perspective because

13   I'm just testing the allegations of the complaint.

14             MR. FLOOD:  I don't disagree with -- with

15   Your Honor's description of the Court's role here, but it

16   seems to me -- and while I'm not familiar with any cases

17   from -- from the district courts in this circuit, there's good

18   case law in -- in other -- in other circuits to the effect that

19   if a plaintiff makes an assertion and -- and includes a website

20   as part of the complaint and if in the other parts of the

21   website that assertion is flatly contradicted, then the Court

22   adopts the view of the website in contradiction to it.  I

23   mean --

24             THE COURT:  So is there a part of the website that

25   says, quote, the Conference does not solicit or collect money

1    from parishioners for the Peter's Pence collection?

2          MR. FLOOD:  Your Honor, there's certainly a part that

3    says send your money directly to -- to the nunciature and

4    don't send it to us.  And -- and there is nothing else on the

5    website, I'm confident, that says the diocese -- that the

6    Conference, rather, oversees the collection or does the

7    collecting or retains the collection or anything of that sort.

8          THE COURT:  So the absence of a statement by the

9    Conference indicating that it does this, you think, is

10   sufficient contradiction that I at the motion to dismiss stage

11   can take that to undermine what the plaintiff has said here?

12         MR. FLOOD:  Your Honor, I think the absence of that,

13   combined with the affirmative statements that the money is

14   supposed to go directly to the nunciature are more than

15   adequate in the absence of, you know, greater detail by the

16   plaintiff.

17         THE COURT:  All right.  Mr. Stanley.

18         MR. STANLEY:  I don't think that they're bank

19   robbers, but if a boss tells someone like me -- my boss tells

20   me I want you to plan a bank robbery, I want you to hire -- go

21   get the bank robbers, tell them how they're going to do it,

22   give them all the plans, tell them exactly what they're going

23   to do, have them rob the bank on this day, then have them send

24   the money straight to me, you won't touch it, you can say I'm

25   out -- I'm out of -- I'm out of trouble.  Certainly in RICO and

1    other cases -- we haven't alleged RICO yet -- but the issue

2    here is really the false representation that they made.  They

3    represented -- and if you look at -- at their One Church One

4    Mission, they say very clearly that we and you, the churches --

5    the dioceses and the churches, are going to follow this set of

6    rules ". . . to adhere to the fundamental principle of 'donor

7    intent.'  Donors should be informed about the intended uses of

8    donated resources.  Donors must be assured that the gifts will

9    be used for the purposes in which they were given."

10   Recognition, handle with confidentiality, et cetera.  Then they

11   go back and forth --

12          THE COURT:  I understand, Mr. Stanley.  Help me to

13   understand that set of allegations.  Because the thing that

14   worries me a little bit about your reliance on that is the

15   conversation that we had at the beginning about entanglement.

16          So to the extent that you're suggesting that what is

17   wrong here is that the plaintiff -- excuse me -- that the

18   Conference and the Vatican are not actually following its own

19   guideline, then doesn't Mr. Flood have a point; and is that the

20   function of your pointing to these other statements about

21   ensuring that donors 'monies goes to their intended uses?

22          MR. STANLEY:  First of all, are we still talking

23   about 9(b), or have we gone back to the motion to dismiss or

24   something else?

25          THE COURT:  We're sort of talking about both at the

1   same time, 9(b) and motion to dismiss, but I wanted to make

2   sure that I understood -- you -- you at various points said

3   it's critical, Your Honor, that you understand that the

4   Conference at times has guidelines and statements and rules

5   about ensuring that donors' money goes to where it's intended.

6         And I'm just trying to flesh out whether any part of

7   your claim is about the failure to do what they said they were

8   going to do with the money.

9         MR. STANLEY:  Well, no.  The failure to understand

10  what was being done with the money, not what -- not promising

11  what they're going to do.  We all encounter people who make

12  representations to us in general things, whether they have a

13  right to or not, that sometimes they just don't check.  They

14  don't know what they're talking about.

15        They continued year after year with a very specifically

16  worded solicitation that they promised that -- me, as -- I

17  wouldn't know any better if I'm in a church and they say, hey,

18  do something right.  There's this special collection going to

19  people with special needs, they're suffering from poverty,

20  they're -- they're on the edges of society.  Please give this

21  money now.

22        They don't know -- have a clue one way or the other --

23  we're going to find through our discovery they never checked to

24  see if that was true or not, year after year after year.  Yet

25  they promised to.  Not only did they promise to -- to

1    themselves, but they promised to the churches, to the dioceses,

2    and the churches and the parishioners, the rules of the game

3    for these special collections are that we're going to know what

4    we're talking about.  We're going to make sure that when you

5    give money that you're giving to something real, and that's --

6    that's the neglect I was talking about before.

7        THE COURT:  Mr. Stanley, but you're not bringing -- I

8    didn't understand you to be bringing or making some kind of a

9    negligence claim; right?  What you've just articulated is a

10   whole other set of duties that, I guess, one could make a claim

11   about, that's separate and apart from the fraud.

12       MR. STANLEY:  It's not just negligence.  If you know

13   something not to be true and there was no -- from the last --

14   from 2015 on, they knew it wasn't true, and they kept doing it

15   over and over again.  So there will be a time period from 2011

16   to 2015 where they actually knew.  And discovery is going to

17   let us get into these documents and see what they knew and

18   didn't know about Peter's Pence.  But if they knew that it

19   wasn't going there, but yet every year they repeated the same

20   thing, that's fraud.  It's a --

21       THE COURT:  Obviously.  So you're using -- so you're

22   using this notion of a duty to ensure that the money is going

23   to where it's supposed to go to fulfill the element of

24   knowledge in the context of the fraud; that -- that you're

25   saying because there's this requirement that they have adopted

1    to ensure the donor funds are used for precise purposes, one

2    could infer that they knew when they made the representations

3    that it was going to X place that it really wasn't?

4              MR. STANLEY:  Right.

5              THE COURT:  Okay.

6              MR. STANLEY:  Yes.

7              THE COURT:  I mean, I think I understand it.  You

8    said that there's overlap between that and the totally separate

9    kind of claim about negligence with respect to their following

10   their own guidelines and that that claim might well raise the

11   kinds of concerns that Mr. Flood is talking about with respect

12   to entanglement, et cetera.

13             MR. STANLEY:  We think they knew for most of these

14   years it wasn't going as they were doing [sic], and that's

15   fraud.  There may be a line, and we may lose on 2011 to 2012,

16   2013, 2014.  I haven't seen the documents yet.  They may have

17   known.  They may not have known.  I don't know the answer.

18             But I believe that -- and that when we go for class

19   certification we'll add some documents to let us know exactly

20   what we're going for on that, if they did know or should have

21   known.  We'll look at that and make those arguments to the

22   Court then.

23             But for 9(b), again, we say that he heard the

24   representations.  We'll make -- they can take the -- the

25   deposition of the -- the reverend who made the representations.

1    They can take the deposition of the bishop who sent it down

2    there and find out what was said and not said.  And we have

3    tons of other people in the wings who have contacted us after

4    this lawsuit was filed that say I'm angry about this.  This is

5    exactly what I thought I was giving a lot of money to, and I'm

6    really not happy with it, and they also want to join in as

7    members of the class or class representatives, if we need to

8    substitute or add somebody.  But there is a large outcry of

9    this.  I'm not picking on the church because it's a church.

10   It's the fraud of it, the fact of what happened here.

11        THE COURT:  All right.  I think I understand.  Let me

12   give Mr. Flood a chance, and then I'll come back to you

13   finally, Mr. Stanley.  I'm -- I'm mindful of the time.

14        Mr. Flood.

15        MR. FLOOD:  Your Honor, to -- to Mr. Stanley's last

16   observations, as a matter of survival on adequacy of the motion

17   at this point, it's not enough that he believes that my client,

18   the bishops' conference, knew about its uses or, you know,

19   diversions or allocations that his client doesn't approve of.

20   He has to allege that, and he hasn't alleged that.  There was

21   no specific allegation with any semantic content that doesn't

22   fail under Your Honor's analysis at the front of the *Tran* case

23   to show that.

24        It's not enough to say they knew.  It's not enough to

25   say, you know, they knew or should have know known.  If you

1   look at the complaint, it says in paragraph 15 they ". . . knew

2   or should have known" that Peter's Pence contributions were

3   diverted.  That's boilerplate.  At 49 --

4          THE COURT:  So -- sorry.  What, Mr. Flood, are they

5   supposed to say?  What would they need to have said in order to

6   satisfy Rule 9 for this purpose?

7          MR. FLOOD:  Respectfully, Your Honor, at a minimum, I

8   should think they ought to say something about why it is

9   that -- you know, something factual, not by way of an

10  explanation, but allege some facts that show that the

11  Conference, which has a coordinating role in the promotion for

12  those dioceses to then elect to follow through and actually

13  have the -- have the campaign, that why it is in doing that

14  there's any reason, in fact, to think that they knew how the

15  Vatican, which handles contributions from six continents, was

16  actually allocating its funds, and they don't do that.

17         It's a -- it's -- I think there's a tendency with

18  churches -- and I suppose not only the churches -- to think of

19  it as a single monochromatic, monolithic organization in which

20  everyone knows what everybody else is doing, but the conference

21  is -- is an independent entity.  It's a nonprofit.  It's based

22  in D.C.  It's not in Rome.  And I just don't think it's enough

23  at the threshold to say, these guys, if they didn't know how

24  the Vatican was spending this money, by golly, they should have

25  and that's fraud.  I just respectfully submit something more

1    than that is required to satisfy --

2           THE COURT:  At the allegation stage.  Not at the -- I

3    mean, you are probably correct if the facts don't bear out that

4    they actually knew, but I just am worried about the suggestion

5    that prediscovery a plaintiff in a fraud case has to have

6    specific facts concerning information that really is only in

7    the purview of the defendant, which is what they knew at any

8    particular time.  The plaintiff can allege that, and then we go

9    to discovery.  And when it's clear that they didn't actually

10   know, you win.

11          MR. FLOOD:  With -- Your Honor, I don't disagree with

12   the rule as you formulate it with the following qualification:

13   If in addition to the arch- -- to the Conference -- I keep

14   saying the archdiocese.  I apologize.  If in addition to the

15   Conference, they had also alleged that my son's swim team was a

16   participant in this and they had some role, one would expect

17   there to be allegations about why it is that they had the kind

18   of knowledge that would obligate them to go forward in a case

19   like this.

20          THE COURT:  Only insofar as your son's swim team has

21   nothing to do with this.  He says in his complaint that this

22   very institution, the Conference, is the one that's collecting

23   the money.  And he says that the Conference, through these

24   other guidelines, indicates that donor money is supposed to go

25   to where it's supposed to go.  So it's not as though they're

1    your son's swim team or somebody who has nothing to do with the

2    allegations at issue here.  And the question is just whether

3    it's enough having made those allegations at the very beginning

4    of the case to get past this initial hurdle.

5        MR. FLOOD:  I agree, Your Honor.  I don't want to

6    overparse your language, but it's not enough, I submit, to

7    say they had something to do with it.  I think much more

8    is required is -- because it's fraud.  It has been

9    particularized.

10       Now, this is not something -- I'm not suggesting that

11   there's some insanely draconian legal gloss that attaches to

12   Rule 9(b).  We all know it's actually to the contrary.  But if

13   you sue a single defendant and you sue them in fraud, it's not

14   enough to say, as plaintiff says four, five, six times, they

15   knew or should have known.  Knew or should have known is the

16   language of negligence.

17       THE COURT:  But, Mr. Flood, these -- he's also

18   alleging that these are the very defendants who are making the

19   statement that he says is fraudulent; right?  I take your point

20   in the world in which the person -- the party at issue is

21   someone who doesn't have any connection to the allegedly

22   fraudulent statement or to the underlying facts that would

23   indicate that this is fraud.

24       But he says these are the people who are making the

25   statements, see the website, see the brochures and materials.

1   These are the people who, he alleges, are collecting the

2   money; right?  So they're not just random people.  They're --

3   they're the statement makers and the money collectors.  And so

4   the question is saying they knew at the time they made the

5   statement, is that sufficient or do they have to have -- or

6   does he have to have more in terms of how they might know

7   or what is the org chart between the Conference and the

8   Vatican?

9        And I'm just not sure -- given the allegations that

10  place the Conference at the center of this with respect to the

11  alleged misrepresentations, I'm not sure he needs to say more

12  than when they made the statement, they knew.

13            MR. FLOOD:  Well, and our response to that,

14  Your Honor, I think is, number one, when they made the

15  statement, they need to make it to him.

16        Number two, the statement that he points to, which is in

17  the script, it does not say what he interpreted it to mean and

18  cannot be fairly read to say immediate and exclusive.

19        Number three, if you're going to identify a defendant as

20  a fraudster in a complaint, you ought to come forward with

21  facts, you know, specific enough to show why they had the

22  improper mental state and -- and knowledge and also an attempt

23  to deceive.

24        There's -- there's really nothing in the complaint

25  that's not the kind of boilerplate ruled out by -- by the rule

1   and the case laws about -- about this knowledge element and

2   this intent element.  They're asking you to assume that because

3   they managed to cobble together, you know, pieces of the

4   website that nobody has ever alleged to have seen.

5           THE COURT:  All right.  Any final thoughts on this,

6   Mr. Flood?  I'm going to give Mr. Stanley the last word, but

7   I'm happy to entertain any other arguments that we haven't

8   touched on here.

9           MR. FLOOD:  With Your Honor's leave, I know we

10  touched on this, but if I could say one last thing about the

11  jurisdictional argument.  The basis -- the centerpiece of the

12  complaint is that Mr. O'Connell gave money but he didn't -- but

13  his gift was not used, exclusively and immediately solely for

14  the poor.

15          THE COURT:  I'm sorry.  I didn't hear you.  Solely

16  for --

17          MR. FLOOD:  For the poor or the displaced.

18          THE COURT:  Thank you.

19          MR. FLOOD:  I'm sorry.  This necessarily, unavoidably

20  invokes questions of church governance and how money is spent.

21  You cannot claim that the fraud consists in imperfect immediacy

22  or fatal lack of -- of directness and at the same time say this

23  can be decided on neutral principles.  Inevitably, unavoidably

24  the Court or a jury will be put in a position ultimately of

25  saying how much is too much, how soon is too soon.  And the

1    same thing goes with exclusivity.

2         THE COURT:  Can I ask you how much is too much but

3    not relative to the canons or to the Bible; right?  I mean,

4    it's not asking whether this is true or untrue as it relates to

5    religious teachings, is it?

6         MR. FLOOD:  No, not at all, Your Honor.  This is not

7    a doctrine case, you know, or -- you know, like the defrocking

8    case that -- that my counterpart mentions.  This is about the

9    use of church funds for the church's charitable purposes.

10         THE COURT:  Can I -- if the Court's ultimate

11    ruling -- and I'm -- I don't know how we get here, but I'm just

12    trying to play out what you're suggesting about entanglement.

13    What if the answer is the defendants just have to say exactly

14    what is happening to the money?  They don't have to change

15    their practice.  They don't have to give more to the poor

16    versus, you know, not.  And so it's not really about are you

17    breaking some sort of rule or law or principle based on how you

18    allocate money, but the answer is just you have to tell people

19    this is what we do with the money.  Why isn't that a neutral

20    principle kind of analysis?

21         MR. FLOOD:  Well, I think, Your Honor, because in --

22    in the real world, in the world of hierarchal church with

23    worldwide jurisdiction and a bishops' conference located in one

24    country, to avoid, you know, the -- the very rigorous -- to

25    survive a motion to dismiss, the only possibility in the world

1   in which Your Honor's suggestion becomes law is to have a kind

2   of disclosure that is so detailed, so ramified it would be like

3   one of those -- you know, all the disclaimers on those -- on

4   those medication commercials for people my age that I see.  You

5   have to say it's going here and there's not going to be any of

6   this and you don't have to worry about that and the other

7   thing.

8        The bishops' conference in one country, I submit,

9   doesn't know what the Vatican does.  I'm not offering that as a

10  proposition of fact to create a factual issue.  I'm just saying

11  that in the natural scheme of things, given the nature of the

12  church and where the -- the Conference fits, they're just not,

13  by reason of structure, in a position to have that knowledge.

14        THE COURT:  And so isn't Mr. O'Connell's claim that

15  they shouldn't be telling people where it goes?  So fine.  They

16  don't know what the Vatican does with the money.  The essence

17  of the fraud claim is here are all these statements where

18  they're telling people it goes to the poor.  And so isn't the

19  answer don't say where it goes.  Don't solicit; right?  It's

20  not -- that's not complicated.

21        Don't solicit money telling people this goes to the poor

22  if you either don't know where it goes or if it's going to all

23  of these investments and whatever before it gets to the poor,

24  such that people are confused or people feel as though they

25  haven't been leveled with in terms of how this money is being

1     allocated.

2          MR. FLOOD:  With respect to Your Honor, I don't think

3     that could be the answer.  And I don't think it could be the

4     answer because the -- the -- the alternative you've given is --

5     and I don't mean to mischaracterize it.  Sounds like you've

6     either got to tell them everything or you've just got to be

7     quiet about it.  And I think both are -- I think that the "be

8     quiet about it" is just utterly impracticable.  I don't think

9     you can ask parishioners in the pews to give money without

10    giving them some sense of where it might go.  This is kind of a

11    rhetorical point about how appeals work.

12          On the other side -- on the other part of the

13    disjunction, I don't think you can itemize every conceivable

14    use because I don't think, in a local church, meaning the

15    church in this or that country, is going to have that

16    information and I also --

17          THE COURT:  But can I ask you --

18          MR. FLOOD:  Could I have one last point, Your Honor?

19          THE COURT:  Yeah.

20          MR. FLOOD:  Just one.

21          And I also think to insist on that as a rule of law for

22    churches that raise money going forward is to impose an

23    exceptionally intrusive and burdensome standard on something

24    that at least before this case I'm not aware any Court has ever

25    contemplated.

1           THE COURT:  Can I -- can I ask you a hypothetical?

2     And then I'll move to Mr. Stanley.

3           MR. FLOOD:  Of course, Your Honor.

4           THE COURT:  This is not this case because you are

5     alleging that -- or maybe -- I don't know.  We haven't really

6     seen your side of the case yet, but I can imagine you would

7     argue that, you know, as the Pope apparently did in some of the

8     responses to the articles, that he's making investments and

9     some percentage of it is going to the poor.

10          But in a world in which -- let's say a hundred percent

11    of the money was going to, you know, Vatican operations and

12    none of it was going to the poor and yet we had the same facts

13    concerning solicitations being made with the statement this is

14    going to the poor, is that a viable basis for a fraud claim or

15    would that still be subject to the entanglement concerns that

16    you're talking about?

17          MR. FLOOD:  The short answer, Your Honor, is I don't

18    know.  It's a whole lot closer to actionable fraud than what we

19    have here, because I think that a 100-percent erroneous

20    assertion, it would be highly problematic from a deception

21    standpoint.  Now that, I think, alone doesn't give a

22    plaintiff -- in Your Honor's hypo, I don't think that is enough

23    alone to deliver all elements of the fraud.  But I think, you

24    know, it does sound to me like it's a false statement and on

25    Your Honor's hypo, it's an in- -- inarguably false statement

1     that can't be qualified away, not what we have here.

2              THE COURT:  And -- and no defense, I'm a church, this

3     would have you looking at my uses of the money, wouldn't be --

4     would you or would not be able to make the kind of

5     jurisdictional claim that you're making here?

6              MR. FLOOD:  Your Honor, I'd want to know a whole lot

7     more about the factual context, but I think the best I can say

8     on -- on your hypo is it would be a much more difficult case

9     than what we have here.  Because the idea of the -- of, you

10    know, faithful discretion, the idea, you know -- the things

11    that are said on the Vatican website, that's all taken out of

12    play.  If everybody is lying about this, then I think, you

13    know, a church member -- I think -- let me put my point

14    differently and then I'll -- and then I'll shut up.

15             I think Your Honor's hypothetical becomes very close to

16    those very rare -- I can only find two of them -- cases in

17    which a church says -- in which the Court has said, you know,

18    somebody who raises money in a subscription, where there's a

19    specific purpose, clearly identified commitment forms are

20    filled out -- for example, to building a building, and then

21    they don't build the building and just keep it in the church

22    treasury -- courts have allowed those kinds of cases to go

23    forward, and I think Your Honor's hypothetical, if not on all

24    fours, is much, much closer to that.

25             THE COURT:  All right.  Thank you.

1          MR. FLOOD:  Thank you, Your Honor.

2          THE COURT:  Mr. Stanley, I'll give you the final

3    word.

4          MR. STANLEY:  Thank you very much.

5          Again, none of that happened here.  The representations,

6    it's not very complex.  They give a very small paragraph of

7    what they passed down, what they're going to do with the money.

8    It didn't say, hey, we're going to build a rainy day fund,

9    we're going to invest in apartments and condos in London or

10   Swiss funds or movies, and then if it spins off profit, we'll

11   have a bigger one or we will lose money.  It didn't say one day

12   we might use it for church deficits.

13         This was the rule of the game.  Give money for this.

14   And our client will testify that he did not give money to the

15   church.  He gave money as a pass-through.  He was giving money

16   to poor people.  His goal was not to give any money to the

17   church.  His goal was to give money to people who were on the

18   edges.  And --

19         THE COURT:  But I guess Mr. Flood's point is, all

20   right.  So fine.  Even if the allegations in the complaint are

21   true, that only 10 percent of this money actually ends up going

22   to poor people, does the Court really have the authority to

23   evaluate that in -- in order to assess whether or not there's

24   fraud?

25         MR. STANLEY:  Yes.  Because our position will be --

1    and, again, the discovery will allow us to show behind there

2    that a hundred percent was supposed to go to the poor people,

3    not 10 percent.  And that when it turns out, the facts that

4    come out, that the money went to Cardinal Becciu's relatives

5    instead of poor people -- and they aren't poor -- they went to

6    investment fund managers in Switzerland, they went to --

7    170 million went to this profit, went to this developer in

8    London, who was very suspicious, that the multi-fund -- it went

9    wrong.  This was run amuck.  This was a fund that nobody -- who

10   was watching whatever.  It wasn't done right.

11       Again, our client's testimony will be he expected a

12   hundred percent of it to go to the poor, not to be gone this

13   way, and it was very poorly done.

14           THE COURT:  Is that an expectation that just comes

15   from him, or are you saying that's what they said?

16           MR. STANLEY:  That's what they said to him.  It was

17   going to go to the poor and people in the margin.  And, again,

18   discovery will show this, and we'll get this out, but that's

19   our position.

20       As to the bottom line, we're happy with our complaint.

21   It's -- as you said in the *Tapp* case, "It is . . . axiomatic

22   that for the purpose of the court's consideration of the

23   Rule 12(c) motion, all of the well-pleaded factual allegations

24   in the adversary's pleadings are assumed to be true and all

25   contravening assertions in the movant's pleadings are taken to

1    be false."

2          And any contravening assertions they simply denied, but

3    this other stuff about what's on the Pope's website, that's in

4    their -- in their motions.  But our pleadings, the well-pleaded

5    factual allegations, are assumed to be true, which is also what

6    they said in their reply.  For the purpose of this motion,

7    the Conference is not disputing any of the plaintiff's

8    allegations.

9          So we're resting on our pleading, we're happy with our

10   pleading, and we think the Rule 12(c) should be denied, and we

11   think denying (b) allegations, we think there's -- we told --

12   we told them what he relied on and we gave it out very clearly.

13          THE COURT:  But you don't say on June 12th, 2018,

14   while in this particular church service, Pastor So-and-So said

15   X; right?

16          MR. STANLEY:  We did -- you have to -- maybe -- maybe

17   not clearly on that day, and you talked about that in your

18   *Tran* case.  You said you don't have to give every -- it's just

19   give them fair notice of what's going.  But what we do say is

20   that this is a once-a-year solicitation, a special collection

21   once a year.  What we do say is that O'Connell heard that and

22   he relied on it and he donated money.  So, yeah, we do say it.

23          And, again, they can take the deposition of the pastor,

24   see what he -- the Father to see what -- what he said and what

25   was instructed to him to say.  We can get all that there, but

1     O'Connell is going to say that's exactly what he heard.  And

2     that's what he said here.  And if you look, it's very clear --

3     paragraphs 48 to 51 are very clear on that.

4              THE COURT:  All right.  Thank you very much.  I will

5     take the motion under advisement and issue a written ruling.

6              MR. STANLEY:  Thank you for your patience.

7              THE COURT:  Thank you.

8              MR. FLOOD:  Thank you, Your Honor.

9              THE COURT:  Have a good day.

10             (The proceedings concluded at 3:34 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF OFFICIAL COURT REPORTER

2

3            I, Nancy J. Meyer, Registered Diplomate Reporter,

4      Certified Realtime Reporter, do hereby certify that the above

5      and foregoing constitutes a true and accurate transcript of my

6      stenograph notes and is a full, true, and complete transcript

7      of the proceedings to the best of my ability.

8

9                         Dated this 1st day of February, 2021.

10

11                    /s/ Nancy J. Meyer
                      Nancy J. Meyer
12                    Official Court Reporter
                      Registered Diplomate Reporter
13                    Certified Realtime Reporter
                      333 Constitution Avenue Northwest, Room 6509
14                    Washington, D.C. 20001

15

16

17

18

19

20

21

22

23

24

25