```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA


   DAVID O'CONNELL,                  .
                                     .
            Plaintiff,               .  CA No. 20-1365 (JMC)
                                     .
      v.                             .
                                     .
   UNITED STATES CONFERENCE          .  Washington, D.C.
   OF CATHOLIC BISHOPS,              .  Friday, November 17, 2023
                                     .  2:30 p.m.
            Defendant.               .
   . . . . . . . . . . . . . . . . .


                    TRANSCRIPT OF STATUS HEARING
                 BEFORE THE HONORABLE JIA M. COBB
                    UNITED STATES DISTRICT JUDGE

   APPEARANCES:

  For Plaintiff:              MARTIN WOODWARD, ESQ.
                              Kitner Woodward PLLC
                              13101 Preston Road
                              Suite 110
                              Dallas, TX 75240

                              SIMON C. FRANZINI, ESQ.
                              Dovel & Luner LLP
                              201 Santa Monica Boulevard
                              Suite 600
                              Santa Monica, CA 90401

  For Defendant:              KEVIN T. BAINE, ESQ.
                              EMMET T. FLOOD, ESQ.
                              RICHARD S. CLEARY JR, ESQ.
                              Williams & Connelly LLP
                              680 Maine Avenue SW
                              Washington, DC 20005

  Court Reporter:             BRYAN A. WAYNE, RPR, CRR
                              U.S. Courthouse, Room 4704-A
                              333 Constitution Avenue NW
                              Washington, DC 20001


Proceedings reported by stenotype shorthand.
Transcript produced by computer-aided transcription.
```

P R O C E E D I N G S

(Via Videoconference)

THE DEPUTY CLERK: Good afternoon, Your Honor. We're on the record in civil action 20-1365, David O'Connell versus United States Conference of Catholic Bishops.

Starting with Plaintiff, please state your appearance for the record.

MR. WOODWARD: Martin Woodward, Kitner Woodward PLLC, for the plaintiff.

MR. FRANZINI: Good afternoon, Your Honor. Simon Franzini, from Dovel & Luner, for the plaintiff.

MR. BAINE: Good afternoon, Your Honor. Kevin Baine from Williams & Connelly for the defendant.

MR. FLOOD: Good afternoon, Your Honor. Emmet Flood from Williams & Connelly, also for the defendant, and with me in my office is a colleague from Williams & Connelly, Richard Cleary.

THE DEPUTY CLERK: Your Honor, before you get started, counsel, there is someone in the waiting room, a William Quinn. Is Mr. Quinn with someone.

MR. FLOOD: Ms. Franklin, Mr. Quinn is our client.

THE DEPUTY CLERK: Okay. I'm admitting Mr. Quinn.

THE COURT: Okay. Good afternoon, everyone. So we are here to allow me to resolve the pending motions. And this case has been stuck for quite some time, and that is certainly

1    on the court.  So I'm happy to move things along and again
2    hope you can appreciate that I'm still relatively new here in
3    dealing with kind of onboarding backlog that we're working
4    through.  But, certainly, I recognize that you've been very
5    patient and appreciate that patience.
6         So I set this hearing so that I could issue my ruling
7    orally as to the pending motions.  Defendant has brought a
8    motion to dismiss for lack of subject matter jurisdiction,
9    for judgment on the pleadings, and in the alternative for
10   summary judgment.  I'm going to deny those motions at this
11   time and explain my reasoning briefly on the record.
12        After putting my reasoning on the record, however, I do
13   want to discuss not only next steps in terms of discovery,
14   but also this was filed as a putative class action and I want
15   to discuss a way in which, as you have your conferences for
16   discovery, can determine whether or not that motion for class
17   certification can be briefed as early as possible.  Because
18   I imagine that if this is not a class action that that changes
19   a lot about this case.  We can deal with that after I put my
20   reasoning on the record.
21       I'll jump right to my reasoning.  The factual background
22   the parties are well aware about.  The motion to dismiss for
23   lack of subject matter jurisdiction is a threshold issue, so
24   I'll start there.
25        As the parties recognize, federal courts lack jurisdiction

1   over disputes that cannot be resolved without extensive
2   inquiry into religious law and polity.  This is the
3   ecclesiastical abstention doctrine, and I reserve the
4   parties to *Serbian E. Orthodox Diocese for U.S.A. and Canada*
5   *v. Milivojevich*, 426 U.S. 696 (1976).
6       There are, however, narrow exceptions top this.  The Court
7   can decide church-related disputes if they can do so without
8   being unduly entangled in matters of ecclesiastical
9   cognizance, or if they can apply neutral principles of law.
10  And these questions are treated as jurisdictional.
11      Accordingly, when a defendant moves to dismiss for lack of
12  subject matter jurisdiction under Rule 12(b)(1), the plaintiff
13  bears the burden of establishing that a court has subject
14  matter jurisdiction.
15      Although I can consider matters outside the pleadings and
16  the motion bears closer scrutiny than a motion under, say,
17  Rule 12(b)(6), I am still required to accept the complaint's
18  factual allegations as true, and the plaintiff is afforded the
19  benefit of all reasonable inferences.
20      In its motion, defendant argues that the Court lacks
21  subject matter jurisdiction over this case because, on its
22  face, the dispute raises two basic questions about how the
23  highest authorities of the church may choose to allocate
24  funds.
25      And defendant is correct that the doctrine would prevent me

from reviewing decisions involving matters of church government as well as those of faith and doctrine, and this would include any decisions about the organization's determination of whose voice speaks for the church, whether someone may worship at church, matters that are purely ecclesiastical even if they affect civil rights.  But the doctrine does not prevent the Court from reviewing decisions when it's possible to do so using completely neutral principles of law.  And that's a proposition from *Jones v. Wolf* at 443 U.S. 595 (1979).

Importantly for this case, alleged fraud or collusion may fall into the neutral principles category where civil court review is appropriate.  And the reasoning for that exception is that when a dispute is purely secular, even if it involves a religious-affiliated organization, the perceived danger that, in resolving interchurch disputes, the state will become entangled in essentially religious controversies or intervene on behalf of groups espousing particular doctrinal belief is diminished.

And that's from *General Council of the United Methodist Church v. California Superior Court*, also a Supreme Court case, 439 U.S. 1355 (1978).  I do find, as pled, the complaint falls within the neutral principles category.

The plaintiff alleges, in short, that defendant made affirmative misrepresentations and fraudulent omissions, was

1    unjustly enriched and breached a fiduciary duty.  The elements
2    of these claims include falsity of statements, knowledge and
3    intent on the part of the statement makers, reliance, whether
4    a benefit was conferred and retained, and whether a fiduciary
5    duty was created and breached.  Those questions can be
6    resolved using neutral principles of law.
7         In other words, there's no need that I inquire into church
8    operations, religious doctrine, religious hierarchy, or
9    religious decisionmaking to evaluate the merits of this claim.
10   Instead, this is a case about what defendant represented, what
11   it knew, and the relationship between defendant and plaintiff
12   as a putative class representative.
13        I also understand that the case will not require me to
14   consider church governance, the makeup of church congregations
15   or anything related to membership and, importantly, to make
16   any judgments whatsoever about the way the church chooses to
17   use its funds.
18        To be sure, it would be improper for me to delve into those
19   purely religious determinations in order to rule.  For
20   example, I could not rule that the church could only exercise
21   its financial discretion in one way or another.  But I don't
22   believe that's required for the Court to determine, under
23   straightforward common-law principles, whether or not fraud
24   took place in this case or for a fact-finder to make that
25   determination.

1       As such, at this stage, it's not apparent to me that the
2  resolution of the claims will involve impermissible religious
3  entanglement, and so I conclude that I do have subject matter
4  jurisdiction in this case.
5       I'll turn next briefly to stating my reason for denying my
6  motion for judgment on the pleadings and in the alternative
7  for summary judgment.  As the parties are well aware, entering
8  judgment on the pleadings is appropriate if the movant shows
9  that there is no disputed material fact and they are entitled
10 to judgment as a matter of law.
11      The D.C. Circuit has recognized that such motions -- I'm
12 sorry -- that was the summary judgment standard.  But for Rule
13 12(c), the D.C. Circuit has recognized that such motions are
14 rare and that the party seeking judgment shoulders a heavy
15 burden of justification.
16      I am required to accept the nonmoving party's allegations
17 as true, and consider false the controverted assertions of the
18 moving party.  Judgment on the pleadings are not appropriate
19 if there are any issues of fact that, if proved, would defeat
20 recovery even if I am convinced that the opposing party is
21 unlikely to prevail at trial.
22      In sum, if there are any material questions presented by
23 the pleadings, I cannot grant a Rule 12(c) motion, and I find
24 that to be the case.
25      I'm going to start with the fraud claims.  As the parties

1	are well aware, under D.C. law, a claim for fraudulent
2	misrepresentation or omission requires a showing that a
3	defendant made a false representation of, or willfully omitted,
4	a material fact, had knowledge of the misrepresentation or
5	willful omission, intended to induce another to rely on the
6	misrepresentation or willful omission, that the other person
7	acted in reliance on the misrepresentation or willful
8	omission, and that damages were suffered as a result.
9	    I understand plaintiff to be making two fraud-related
10	claims: fraudulent misrepresentation and fraudulent
11	concealment.  The complaint alleges fraudulent
12	misrepresentation.  O'Connell contends that defendant
13	communicated to him that money he donated would be used
14	exclusively for victims of war, oppression, natural disaster
15	or disease, and that defendant knew or should have known that
16	the proceeds were in fact used for noncharitable purposes; and
17	the plaintiff contends that these representations constitute
18	fraudulent misrepresentation.  The plaintiff also contends
19	that he donated to defendant based on these representations
20	and that the defendant intended for him to rely on its
21	statements in his decision to donate.
22	    The requirement to plead fraudulent concealment are
23	substantially the same.  However, while fraudulent
24	misrepresentation turns on a false representation, fraudulent
25	concealment turns on an omission.  And under D.C. law, mere

1    silence does not constitute fraud unless there is a duty to
2    speak.  And a duty to speak attaches in an instance where a
3    material fact is unobservable or undiscoverable by an
4    ordinarily prudent person upon reasonable inspection -- and
5    that's from *Sununu v. Philippine Airlines, Inc.*, 792 F.Supp.2d
6    39, (DDC 2011) -- or as a result of partial disclosure.
7         So, in this complaint, plaintiff alleges that defendant
8    knew or should have known that the charitable fund was not
9    used to fund charitable purposes exclusively as represented.
10   And because of this knowledge, plaintiff alleges that
11   defendant's failure to inform prospective donors of the true
12   use of funds constitutes unlawful concealment.
13        Further, plaintiff alleges that the defendant had a duty to
14   disclose because it had exclusive knowledge of the suppressed
15   facts and made representations about what the funds would be
16   used for.  Again, at this very early stage of the litigation,
17   I'm required to draw all of those inferences in plaintiff's
18   favor, and I do find that material disputes of fact remain
19   based on the defendant's answer and the briefing, including
20   whether any statements were in fact false, whether defendant
21   was actually involved in the alleged statements, whether the
22   defendant knew the statements were false, the defendant's
23   intentions regarding the statements, and plaintiff's reliance
24   on the representations.
25        For these reasons, taking the allegations as true, I deny

1     the motion with respect to Count 1.  And I'll briefly just
2     say, with respect to the 9(b) requirements, I know there was
3     some discussion in the pleadings about whether or not such a
4     motion is appropriate after an answer.  I do note that
5     defendants did answer the complaint, but don't think it's
6     necessary for me to resolve the question, because I find that
7     the complaint contains enough detail to satisfy the heightened
8     pleading requirements.

9         I do think the fact that there was an answer is relevant to
10    the overall purpose of the rule, which is to provide enough
11    information to the defendant to be able to respond to the
12    complaint, which isn't done, but I think that Plaintiff has
13    alleged a narrow time frame, persons involved, what was said;
14    and all of this is, in my view, sufficiently detailed to
15    satisfy a Rule 9(b).

16        My findings with respect to unjust enrichment are similar
17    to my ruling on the first count.  It's just simply at this
18    stage, prediscovery in the case, where I'm required to take
19    plaintiff's allegations as true, I believe that plaintiff's
20    complaint checks the relevant boxes.

21        Under D.C. law, a claim for unjust enrichment requires
22    that a plaintiff confer a benefit on a defendant who in turn
23    retained the benefit.  Further, it must be the case that,
24    under the circumstances, the defendant's retention of the
25    benefit is unjust; and in the complaint, plaintiff alleges

Case 1:20-cv-01365-JMC   Document 39   Filed 11/19/23   Page 11 of 20

11

that defendant retained the benefit of his donations to the fund, Peter's Pence fund, and he alleges that the donations were induced by false representations and omissions and that the retention of these donations was unjust.

And I know that there are disputes about whether in fact the defendant did retain the donations or whether the defendant is actually the proper defendant at all. These factual disputes do not allow me to grant the motion.

Finally, for breach of fiduciary duty, under District of Columbia law, the plaintiff must allege facts sufficient to establish that the defendant owed such a duty to a plaintiff and breached that duty. And they must also plead probable cause and injury, and plaintiff makes these allegations in his complaint, that a fiduciary duty was generated by certain promotions, advertisements, the overseeing and collection of funds, and that the defendant breached the duty by not ensuring that the charitable contributions were spent in accordances with promises made.

As plaintiff recognizes, this question about a fiduciary relationship is often a fact-intensive inquiry that's often based on a fuller record, and given my rulings on the other matters and at this earlier stage, I do think it would be premature and not appropriate for me to grant the motion given plaintiff's allegation.

And finally, there was a motion to treat the motion in the

1   alternative as one for summary judgment.  Plaintiff has
2   responded to defendant's statements by representing that he
3   isn't in a position to respond because he needs further
4   discovery.
5       Although I did not see that the motion included a
6   declaration to support that contention, I do agree that
7   plaintiff would be entitled to some information to have a
8   reasonable opportunity to present all the material that is
9   pertinent to the motion.  So I will decline to convert the
10  motion to one for summary judgment at the time, and deny it
11  certainly without prejudice.
12      So, again, thank you for your patience as I get this case
13  unstuck, but that's my ruling.  I think what we need to do
14  next is set a date for a scheduling conference and a deadline
15  for a Rule 26(f) report.
16      But I wanted to just take a step back and ask plaintiff's
17  counsel, because this case has been filed as a putative class
18  action, and I know that the defense has not moved, at least
19  yet, to strike any class allegations, and I certainly haven't
20  delved into that issue; but it seems to me that there's some
21  question particularly concerning, I would say -- to the extent
22  that the fraud counts require some showing about individual
23  people who donated their individual understanding and
24  reliance, that there may be some questions about commonality.
25      I mean, I don't know -- I don't want to put you on the

1    spot, but I guess my question is do you think that we can set
2    a schedule that would allow briefing on the class
3    certification question early, because I imagine if this case
4    is not certified as a class, then that changes a lot about the
5    case.  I don't know how much is at stake if this were just an
6    individual plaintiff case and not a class.  So maybe you can
7    speak to that, Mr. Woodard.
8             MR. WOODWARD:  Sure.  Thanks, Your Honor.  I agree that
9    it makes sense to proceed with class certification, or at
10   least as soon as is reasonable.  In connection what that,
11   though, we will need some discovery, and we are ready to move
12   forward just as soon as we can with the 26(f) conference and a
13   26(f) report.
14        We actually had already served a request for production of
15   documents on the day that the defendant filed its answer.
16   That was then followed, of course, with the motions that Your
17   Honor just ruled on, and the request for production hasn't
18   been responded to.  But it will be useful, we think, in sort
19   of outlining the types of discovery we're going to be seeking
20   in connection with our class certification motion, and it's
21   certainly the groundwork and foundation for what we think to
22   be a productive discussion about how long it might take
23   defendants to gather up and produce the materials that we're
24   asking for that will help resolve the issues.
25          Then briefly, just to respond to Your Honor's point about

1    the relationship of the fraud claims that we've alleged to
2    class certification issues, there's plenty of case law that
3    speaks to an inference of reliance if reliance is even to be a
4    required element where you have, as we've alleged, a
5    fraudulent scheme that's more or less uniform, we think that
6    that is -- the discovery is going to bear that out.  And if
7    that in fact proves to be the case, that is likely to be one
8    of the arguments that you'll hear when we move to certify that
9    claim, if we choose to do so.
10           THE COURT:  Okay.  And that's fair.  And again, I'm not
11   suggesting that I'm ruling, but I just gathered that it seems
12   like a case where, to the extent discovery can be bifurcated,
13   to deal with class certification first.  And it may be
14   possible that there's no way to disentangle from the merits
15   and that that's not possible.
16      So maybe instead of saying bifurcating discovery, if
17   there's some way that discovery can be phased such that some
18   of these issues can be addressed early, that would be
19   beneficial.  Again, it may be completely impossible to
20   disentangle, and I'll let you all discuss that.  I certainly
21   don't want to have overlapping and confusing phases of
22   discovery where parties don't know what box that they're in.
23      And then similarly, Mr. Woodward, just because I noted this
24   in the briefing that there was some question about whether or
25   not this is the proper defendant, obviously, that's a question

1   as well that we would want to resolve early.  And so I don't
2   know if you've had any conversations with defense counsel
3   about that issue, but I guess you can conduct discovery and
4   then we can set a deadline for amending pleadings at the
5   appropriate time.
6        Okay.  So -- and then who's speaking for the defense?
7             MR. FLOOD:  I am, Your Honor.  Mr. Flood.
8             THE COURT:  Okay.  Mr. Flood, so that's my ruling,
9   again, without prejudice, for any further motions that you may
10  file, I just think it's premature at this stage given the
11  allegations in the complaint.  Do you have a sense of how much
12  time it will take for the 26(f) report to be filed in the
13  conference?  How much time do you need?  And I'll ask
14  Mr. Flood the same thing.
15            MR. FLOOD:  I don't have a clear sense, Your Honor.
16  Next week is challenging --
17            THE COURT:  Yes.
18            MR. FLOOD:  -- to confer.  And then December, of course,
19  is holiday month, but I should think sometime in December even
20  if it's closer to the holidays at the end, and I would propose
21  talking to Mr. Woodward and Mr. Franzini and then figuring out
22  what we can do.  But I would think, with allowance for the
23  holidays, several weeks ought to be enough time.
24            MR. WOODWARD:  We agree.  I think that's right.
25            THE COURT:  Mr. Flood, do you have a proposed date,

1            or do you want to confer and submit a proposal to me?
2                    MR. WOODWARD:  I think it makes sense, Your Honor,
3            for us to confer and submit a proposal.  I'm not sure what
4            Mr. Flood feels about that.  If it's easier to propose dates,
5            just looking at my calendar, I could pick -- just the broad
6            parameters what you laid out, I think maybe it would be most
7            productive for us to confer and then come back to you with
8            what works for both sides.
9                    THE COURT:  Okay.  Why don't we do this:  Why don't you
10           all confer, and if you send a joint email to chambers letting
11           us know the time frame that you want to have the scheduling
12           conference in and the time frame or date that you've agreed to
13           submit the discovery planning report, the Rule 26(f) report,
14           then we'll just issue a minute order memorializing those
15           dates.
16                   MR. WOODWARD:  That sounds good, Your Honor.  Thank you.
17                   THE COURT:  All right.  Is there anything else we
18           should address today before concluding the hearing, and then
19           I'll receive your information and set the minute order for the
20           scheduling conference?
21                   MR. FLOOD:  Your Honor, I would like to mention just
22           one thing by way of what might informally be thought of as a
23           possible heads-up.
24                   THE COURT:  Okay.
25                   MR. FLOOD:  We'll want to confer, our legal team, with

1      our client about Your Honor's ruling.
2              THE COURT:  Okay.
3              MR. FLOOD:  But as Your Honor pointed out at the
4      beginning, the ecclesiastical abstention doctrine partakes
5      of something jurisdictional, and so I think we have a live
6      continuing question now of whether there is subject matter
7      jurisdiction.
8              THE COURT:  Okay.
9              MR. FLOOD:  We are at least going to give consideration
10     of whether that calls for an immediate appeal of one kind or
11     another.
12             THE COURT:  Sure.
13             MR. FLOOD:  And related to that is the consideration
14     of conducting discovery, you know, when that question is
15     pending is also something covered or not by the same doctrine.
16             THE COURT:  Sure.
17             MR. FLOOD:  It doesn't mean of course we won't be
18     meeting with Mr. Woodward per your directions we of course
19     will but I just thought I'd signal that for you Your Honor and
20     let's see how our conversations go and we may be back with you
21     with something in the manner of a motion there.
22             THE COURT:  Sure.  I appreciate that.  Thank you for
23     letting me know.
24             MR. FLOOD:  Thank you, Your Honor.
25             THE COURT:  Okay.  If that's it, I will look forward to

1  hearing from you, and I will issue a minute order.  If you
2  do file such a motion, I'll be on the lookout for it, and I
3  promise I will resolve it promptly.
4          MR. FLOOD:  Thank you.  Actually, Your Honor, I do have
5  one other question just obviously without purporting to do
6  what I cannot do, namely, fix for you or have you tell us with
7  any determination you may not have made, but does Your Honor
8  intend to reduce your oral ruling today for an order for the
9  docket?  And the reason I ask of course is if we did think an
10 appeal was necessary, I think the law is we've gotta have
11 something on the docket to start the timeline.  So that's just
12 an open question, not necessarily looking for an answer today,
13 just an expectation question.
14         THE COURT:  Sure.  I was just going to put an order
15 that says for the reasons stated orally on the record that the
16 motions are denied.  My understanding was that was sufficient
17 in terms of...
18         MR. FLOOD:  And I'm not quarreling with Your Honor at
19 all, so much as I think there are some technical features of
20 the D.C. Circuit regime not shared with others that can affect
21 the running of the time.  I don't think it affects our ability
22 actually to file something.
23         THE COURT:  Right.
24         MR. FLOOD:  That was the nature of my inquiry.  And I
25 suppose if we have a transcript from the court reporter, that

1      will go a long way toward.
2              THE COURT:  But to your question, yes.  I'm going to
3      put an order on the docket that formally denies the motion,
4      but it will just simply say for the reasons stated orally on
5      the record.
6              MR. FLOOD:  I think that answers my question.
7      Thank you, Your Honor.
8              THE COURT:  Okay.  Thank you so much.  Have a good one.
9          (Proceedings adjourned at 2:56 p.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

\* \* \* \* \* \*

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter.

*/s/ Bryan A. Wayne*
Bryan A. Wayne