UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID O'CONNELL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES CONFERENCE OF CATHOLIC BISHOPS,<br><br>Defendant. | Case No. 1:20-cv-001365-JMC |

## JOINT STATUS REPORT AND DISCOVERY PLAN

Consistent with Fed. R. Civ. P. 26(f), Local Rule 16.3(c), and this Court's Minute Order of May 14, 2025, Plaintiff David O'Connell (Plaintiff) and Defendant United States Conference for Catholic Bishops (Defendant), submit the following Joint Status Report and Discovery Plan. This report includes a succinct statement of all agreements reached and, where the parties could not agree, a succinct description of the parties' positions. The parties are prepared to provide further briefing should the Court so request.

    1.    <u>Likelihood of Disposition by Dispositive Motion</u>

**Plaintiff's Position**: Plaintiff does not believe that this case is likely to be disposed of by way of dispositive motion.

**Defendant's Position**: Defendant acknowledges that the Court previously denied Defendant's motion to dismiss for lack of subject matter jurisdiction and motion for judgment on the pleadings, and denied without prejudice Defendant's motion for summary judgment. Defendant appealed the Court's order on its motion to dismiss for lack of subject-matter jurisdiction and motion for judgment on the pleadings, and the D.C. Circuit dismissed Defendant's appeal for lack of jurisdiction. USCCB sought rehearing en banc, which the court denied on November 4, 2025. *O'Connell v. United States Conf. of*

1

*Cath. Bishops*, No. 23-7173, 2025 WL 3082728 (D.C. Cir. Nov. 4, 2025). Judge Rao dissented in a 32-page opinion. *Id*. at *4. Judge Walker concurred in the denial of rehearing en banc, but indicated that further proceedings in this matter "threaten[] the religious defendant with irreparable First Amendment harm." *Id*. at *1 (Walker, J., concurring in the denial of rehearing en banc) (hereinafter Walker, J., concurring). Defendant intends to file a petition for writ of certiorari in the Supreme Court of the United States; that petition is due February 2, 2026. Defendant's motion for summary judgment may be renewed at a later date.

    2.    <u>Joinder, Amendment of Pleadings, and Narrowing of Issues</u>

The Court stated that the parties may "conduct discovery and then we can set a deadline for amending pleadings at the appropriate time." 11/17/23 Hr'g Tr. 15:1-5. Accordingly, the parties have not included a deadline for amending pleadings in their proposed scheduling orders.

The parties agree that factual or legal issues may not be narrowed at this time.

    3.    <u>Assignment to Magistrate Judge</u>

The Parties do not agree to the assignment of a Magistrate Judge for all purposes.

    4.    <u>Possibility of Settlement</u>

The parties do not believe that there is a realistic possibility of settling the case at this time.

**Defendant's Position**: Defendant has asked Plaintiff for his estimated damages. Defendant's understanding is that Plaintiff will only settle on a class-wide basis. Defendant is not willing to settle on a class-wide basis.

    5.    <u>Alternative Dispute Resolution</u>

The parties do not believe that the case would benefit from alternative dispute resolution at this time.

    6.    <u>Resolution by Summary Judgment or Motion to Dismiss</u>

**Plaintiff's position**: Plaintiff does not believe that the case can be resolved by motion for

summary judgment.

**Defendant's Position**: Defendant acknowledges that the Court previously denied Defendant's motion to dismiss for lack of subject matter jurisdiction and motion for judgment on the pleadings, and denied without prejudice Defendant's motion for summary judgment. Defendant appealed the Court's order on its motion to dismiss for lack of subject-matter jurisdiction and motion for judgment on the pleadings, and the D.C. Circuit dismissed Defendant's appeal for lack of jurisdiction. As noted above, Defendant intends to seek review before the Supreme Court of the United States. Defendant's motion for summary judgment may be renewed at a later date.

7. <u>Initial Disclosures</u>

Although Defendant believes that discovery should be deferred beyond that date, the parties stipulate to extend the deadline to exchange initial disclosures until at least January 12, 2026.

**Plaintiff's Position**: Plaintiff believes that the parties should proceed to exchange Rule 26(a)(1) initial disclosures on January 12, 2026. Plaintiff does not believe that discovery should be bifurcated, as explained further below. In addition, Plaintiff contends that initial disclosures are necessary regardless of whether discovery is bifurcated. Plaintiff contends that any further stay is unwarranted, as the D.C. Circuit denied Defendant's motion to stay the mandate pending any petition for writ of certiorari based on the same arguments Defendant make herein. *See* Case No. 23-7173, Nov. 6, 2025 motion to stay mandate; Nov. 21, 2025 order denying motion to stay mandate.

**Defendant's Position**: Defendant submits that discovery should be deferred until the forthcoming petition for writ of certiorari has been decided. Defendant believes proceeding will cause irreparable First Amendment harm and is prepared to brief this issue on a briefing schedule of this Court's choosing. For purposes of this joint status report, Defendant's forthcoming petition will present serious and important constitutional issues, as to which the courts of appeals (and members of this Circuit) have diverged; there is irreparable harm associated with proceeding in discovery in this case;

3

and the balance of harms and the public interest weigh in favor of deferring discovery until the Petition is decided.[1] Plaintiff notes that the Court of Appeals has denied Defendant's stay motion. In *Philipp v. Fed. Republic of Germany*, however, another judge of this Court granted a stay motion pending the resolution of a petition for writ of certiorari after denial of a motion to stay the mandate by the Court of Appeals and the Supreme Court. 436 F. Supp. 3d 61, 65-66 (D.D.C. 2020).

There is an additional, prudential reason to defer discovery pending the resolution of Defendant's forthcoming petition. Although the D.C. Circuit concluded that it lacked jurisdiction over the USCCB's appeal, it recognized the thorny First Amendment issues may await the case on remand: "Here, it is possible that at some later stage, USCCB's church autonomy defense may require limiting the scope of the suit or the extent of discovery, or even warrant dismissal of the suit in its entirety." *O'Connell v. United States Conf. of Cath. Bishops*, 134 F.4th 1243, 1260 (D.C. Cir. 2025). If this case were to proceed, Defendant anticipates numerous and substantial First Amendment conflicts inherent in the resolution of Plaintiff's discovery requests and claims, which will generate a number of intractable disagreements that require judicial resolution. Rather than confront these issues before the Supreme Court decides whether to grant the petition, this Court should defer discovery to permit the Supreme Court to entertain review of this case without risk of the very irreparable harm that the petition seeks to avoid.

If the Court orders that discovery proceed notwithstanding the forthcoming Petition for Writ of

---

[1] In cases presenting questions of church autonomy, courts have routinely stayed proceedings pending the resolution of petitions for writ of certiorari or appeals. *See, e.g.*, Order to Stay District Court Proceedings, *Belya v. Kapral*, No. 21-1498, Dkt.87 (Sept. 9, 2021), 45 F.4th 621 (2d Cir. 2022); Order Granting Emergency Motion to Stay District Court Proceedings, *Whole Woman's Health v. Smith*, No. 18-50484, Dkt. 24-2 (June 18, 2018), 896 F.3d 362 (5th Cir. 2018); Order to Stay Discovery and Certify Interlocutory Appeal, *Demkovich v. St. Andrew the Apostle Parish*, 1:16-cv-11576, Dkt. 73 (May 5, 2019), remanded with instructions to dismiss, 3 F.4th 968 (7th Cir. 2021); Order Granting Stay, *McRaney v. N. Am. Mission Bd.*, No. 1:17-cv-80 (N.D. Miss. Jan. 5, 2021), Dkt. 72; Order Granting Stay, *Biel v. St. James Sch.*, No. 2:15-cv-4248 (C.D. Cal. Sep. 23, 2019), Dkt. 122; Order Granting Stay, *Morrissey-Berru v. Our Lady of Guadalupe Sch.*, No. 2:16-cv-9353 (C.D. Cal. Aug. 6, 2019), Dkt. 81; Order to Stay, *EEOC v. Hosanna-Tabor*, No. 2:07-cv-14124 (E.D. Mich. Dec. 28, 2010), Dkt. 78.

Certiorari and Defendant's proposed motion for stay, Defendant's position is that initial disclosures should be due January 26, 2026.

8. Discovery

Plaintiff believes that discovery should not be bifurcated. Defendant believes that class certification and merits discovery should be bifurcated. The Parties' positions on bifurcation are set forth in section 13 below. The parties' respective proposed schedules are included in exhibits 1 and 2.

The parties agree that a protective order is needed, will make best efforts to negotiate an agreed one, and will submit any disputes to the Court for resolution. The parties have proposed deadlines for the submission of an agreed protective order and any related disputes.

**Defendant's Position**: The parties agree that the question of class certification should determined before summary judgment. If this Court determines not to stay proceedings pending disposition of Defendant's petition for certiorari and requires the parties to proceed, Defendant's proposed schedule reflects a good-faith attempt at sequenced discovery, featuring precertification discovery and class certification briefing before any merits discovery and summary judgment briefing.

9. Preservation and Production of Documents and Electronically Stored Information ("ESI")

The parties discussed the preservation of ESI at the Rule 26(f) conference and have taken appropriate steps to ensure the preservation of ESI, including by suspending any applicable automatic deletion of potentially discoverable ESI. The parties agree to make best efforts to negotiate an agreed ESI Order, and have proposed deadlines for the submission of an agreed ESI Order and any disputes to the Court.

10. Claims of Privilege

The parties agree to make best efforts to negotiate an order under Federal Rule of Evidence 502, and have proposed a deadline for the submission of a proposed order under Federal Rule of Evidence

502 to the Court.

    11.    <u>Expert Discovery</u>

The parties believe that the requirements for exchange of expert witness reports and information under Fed. R. Civ. P. 26(a)(2) should not be modified at this time.

**Plaintiff's Position**: Plaintiff believes that class certification expert reports should be exchanged together with class certification briefs and that Plaintiffs' motion for class certification and class-certification *Daubert* motions should be heard together, as is common practice. This will streamline the schedule and will allow the Parties and the Court to address these closely related issues together.

**Defendant's Position**: Defendant agrees that the Court should impose the same deadline for Plaintiff's motion for class certification and any report(s) in support thereof. Defendant submits that its opposition to Plaintiff's motion for class certification, and any report(s) in opposition to that motion (regardless of whether they are characterized as "rebuttal" to Plaintiff's report(s)), should be due 90 days after the deadline for Plaintiff's motion and report(s). Plaintiff bears the burden on his motion for class certification, and it would prejudice Defendant to produce any expert report before reviewing Plaintiff's motion and any supporting expert report. Likewise, a 90-day period (rather than a 45-day period) provides Defendant an appropriate amount of time to prepare an opposition and any expert report(s) in support of that opposition.

    12.    <u>Class Actions</u>

The parties disagree on whether discovery relating to class certification and to merits should be bifurcated. *See infra* Pt. 13. The parties' respective proposed schedules are included in exhibits 1 and 2.

**Defendant's Position**: Defendant has included deadlines for class-related fact and expert discovery, and for class-certification motion practice, in its proposed schedule.

    13.    <u>Bifurcation</u>

**Plaintiff's Position**: Plaintiff agrees that class certification is a threshold issue that should be decided at an

early stage. But, as explained below, bifurcating discovery is impractical, will prejudice Plaintiff, and will lead to disputes, inefficiencies, and delay. Accordingly, the Court should reject Defendant's proposal to bifurcate discovery. It should instead follow what other courts in this District have done in similar situations: refuse to formally bifurcate discovery, but set an early deadline for class certification briefing to focus the parties' initial efforts on certification issues. *See, e.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 258 F.R.D. 167, 176 (D.D.C. 2009) (adopting this approach and collecting cases); *In re Domestic Airline Travel Antitrust Litig.*, 2017 U.S. Dist. LEXIS 232974, at *25 (D.D.C. Jan. 30, 2017) (same).

In deciding whether to bifurcate discovery, "Courts must consider the degree to which the certification evidence is 'closely intertwined' with, and indistinguishable from, the merits evidence in determining whether bifurcation is appropriate." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 258 F.R.D. 167, 173 (D.D.C. 2009). "The Supreme Court had directed courts considering class certification motions to engage in a 'rigorous analysis' to determine whether Rule 23's prerequisites have been satisfied, an analysis that will frequently []overlap with the merits of plaintiff's underlying claim." *McEwan v. OSP Grp.*, L.P., 2016 U.S. Dist. LEXIS 42798, at *7 (S.D. Cal. Mar. 30, 2016) (emphasis added). And indeed here, the evidence that Plaintiff needs to prove that common questions predominate is closely intertwined with and indistinguishable from the evidence Plaintiff needs to prove his underlying claim.

As set forth in the Complaint, Plaintiff claims that Defendant committed fraud by making material misrepresentations and omissions about how the Peter's Pence collection would be used when soliciting charitable contributions from Plaintiff and the putative class. *See* Complaint, Count I. Plaintiff also claims that Defendant breached its fiduciary duties by failing to ensure that the charitable contributions by Plaintiff and putative class members were spent in accordance with the promises it made. *See* Complaint, Count II.

To establish that common issues of law and fact predominate as to his fraud claims as required by Rule 23 (a class certification issue), Plaintiff will need evidence showing what representations about

the Peter's Pence collection were made to Plaintiff and putative class members; whether those representations were false; and whether Defendant knew or should have known they were false. Plaintiff will also need evidence showing that Defendant is responsible for the representations at issue. This evidence will show that Defendant made substantially similar representations that were false in substantially the same way to putative class members, meaning that the key issue of whether Defendant made misrepresentations is a common, class-wide issue. And, this same evidence is precisely the evidence Plaintiff will need to establish that Defendant made actionable misrepresentations to Plaintiff and the putative class in the first place (a merits issue). *See, e.g.*, Complaint ¶¶18-25 (summarizing evidence).

Similarly, to establish that common issues of law and fact predominate as to his breach of fiduciary duty claims (a class certification issue), Plaintiff will need evidence showing what promises were made to putative class members about how the Peter's Pence Collection would be used; whether Defendant was responsible for making those promises and for collecting the Peter's Pence charitable contributions from putative class members; and whether Defendant failed to ensure that the funds it collected were used according to the promises that were made. This evidence will show that Defendant breached its fiduciary duties to Plaintiff and the putative class in substantially the same way, meaning that the key issues of whether Defendant owed the putative class fiduciary duties and whether Defendant breached its fiduciary duties is a common issue. And, this evidence is precisely the same evidence Plaintiff will need to establish that Defendant owed and breached fiduciary duties Plaintiff and the putative class in the first place (a merits issue).

In short, in this case, "[d]iscovery relating to class certification is closely enmeshed with merits discovery, and in fact cannot be meaningfully developed without inquiry into basic issues of the litigation." *In re Rail Freight*, 258 F.R.D. at 175 (quoting *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 41 (N.D. Cal. 1990)). As a result, "bifurcating discovery risks prejudicing plaintiff, who must meet a

8

high burden to show certification of the class is proper." *Obertman v. Electrolux Home Care Prods.*, 2020 U.S. Dist. LEXIS 107147, at *5 (E.D. Cal. June 17, 2020). It will "create[] unnecessary gaps in the evidence as a defendant has a strong incentive to withhold evidence even if such evidence 'overlap[s] with the merits of the plaintiff's underlying claim'" *Ahmed v. HSBC Bank USA, Nat'l Ass'n*, 2018 U.S. Dist. LEXIS 2286, at *8-9 (C.D. Cal. Jan. 5, 2018). And, it will lead to unnecessary duplication of effort and burden on the parties and witnesses, for example by requiring that many fact witnesses be deposed twice (once on class certification and then again on issues related to merits).

In addition, "Bifurcated discovery fails to promote judicial economy when it requires 'ongoing supervision of discovery.' If bifurcated, this Court would likely have to resolve various needless disputes that would arise concerning the classification of each document as 'merits' or 'certification' discovery." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 258 F.R.D. 167, 174 (D.D.C. 2009) (rejecting Defendant's proposal to bifurcate).  Here, the parties already have disputes about whether discovery should be classified as "merits" or "certification" discovery, *see* §7 (parties dispute whether initial disclosures constitute "merits" or "certification" discovery), and—given how certification and merits issues are closely intertwined—will surely have many if discovery is bifurcated.  This will waste party and judicial resources and is a second independent reason to reject Defendant's proposal to bifurcate. *Id*. (denying bifurcation and adopting proposal substantially similar to what Plaintiff proposes here for this reason among others); *Ahmed*, 2018 U.S. Dist. LEXIS 2286, at *8-9 (explaining that courts are "reluctant to bifurcate class-related discovery from discovery on the merits" for this reason); *see True Health Chiropractic, Inc. v. McKesson Corp.*, 2015 U.S. Dist. LEXIS 7015, at *7 (N.D. Cal. Jan. 20, 2015) ("[T]he line between 'class certification discovery' on the one hand, and 'pure merits' discovery on the other, can be difficult to discern.").

Defendant argues that disputes over potential attempts by Defendant to claim privilege as to "internal Church communications" will result in motion practice and delay the Court's decision on class

certification. But such disputes are likely to arise regardless; for example, any records of Defendant's collection, administration, accounting, or disposition of any donated funds—without which Plaintiff cannot show whether Defendant complied with its duties to ensure donor money was ultimately spent as Defendant represented to class members—could be subject to Defendant's anticipated "privilege" claims. Thus, resolving all such closely related disputes at once (instead of attempting to parse out only evidence unrelated to the "merits" and then have the same dispute again over similar "merits" evidence) will preserve the resources of the Court and the parties.

Finally, Defendant argues that "it is a common practice to defer merits discovery in cases against religious bodies asserting First Amendment defenses." (citing *Collette v. Archdiocese of Chicago*, 200 F. Supp. 3d 730 (N.D. Ill. 2016); *Pardue v. Center City Consortium Schools of the Archdiocese of Washington, Inc., et al.*, 875 A.2d 669 (D.C. 2005)). But the cases it cites are not about bifurcating class discovery and merits discovery. Rather, in those cases, a First Amendment issue (different from the one here) turned on a disputed fact. So, to allow the First Amendment issue to be decided first, those cases allowed limited discovery to proceed only on that issue. That situation has nothing to do with the present situation, where Defendant's First Amendment issue turns on the pleadings not a disputed fact and has already been decided in Plaintiff's favor, and the dispute is about whether class and merits discovery should be bifurcated.

In sum, the Court should not bifurcate discovery. Following the common-sense approach of *In re Rail Freight* and *In re Domestic Airline Travel*, and the Court should instead set a case schedule through class certification, as Plaintiff proposes.

**Defendant's Position**: If the Court orders discovery to proceed during the pendency of Defendant's forthcoming petition for writ of certiorari, Defendant requests that this Court bifurcate discovery, with discovery prior to the deadline for Plaintiff's motion for class-certification limited to that issue. Class certification is a threshold issue. If a class is not certified, the case is unlikely to

proceed, and discovery on the merits will prove to have been a waste of everyone's time and resources, in addition to being a further strain on Defendant's First Amendment rights. Bifurcation would ensure the timely resolution of class certification; promote judicial economy; and reflect the fact that, although some issues relate both to the merits and to class certification, there are certain issues that relate only to class certification. Bifurcation would also help ameliorate some thorny issues relating to church autonomy to this Court for resolution. In that respect, bifurcation would reflect the D.C. Circuit's recognition "that the USCCB's church autonomy defense may require limiting the scope of the suit or the extent of discovery, or even warrant dismissal of the suit in its entirety." *O'Connell v. United States Conf. of Cath. Bishops*, 134 F.4th 1243, 1260 (D.C. Cir. 2025). Most notably, Defendant expects that bifurcation would exclude from class-certification discovery inquiry into the ways in which Peter's Pence donations were spent, and the state of mind of the USCCB as to the veracity of statements alleged at paragraphs 18-25 of Plaintiff's Complaint. By contrast, class certification discovery may encompass, for example, discovery into the fact of particular statements by the USCCB or from the pulpit, Plaintiff's reliance (if any) on such statements, and USCCB's knowledge of the fact of those statements.

      This Court has discretion to order bifurcation of discovery. In *Hubbard v. Potter*, for example, the court ordered bifurcation of discovery, and the assigned Magistrate Judge entertained discovery motions. 2007 WL 604949, *2 (D.D.C. Feb. 22, 2007) (directing limited discovery tailored to particular case). In determining whether bifurcation is appropriate, "courts consider the following factors: (1) expediency, meaning whether bifurcated discovery will aid the court in making a timely determination on the class certification motion; (2) economy, meaning 'the potential impact a grant or denial of certification would have upon the pending litigation,' and whether the definition of the class would 'help determine the limits of discovery on the merits;' and (3) severability, meaning whether class certification and merits issues are closely enmeshed." *Ballard v. Kenan Advantage Grp., Inc.*, 2020 WL 4187815, at *1 (N.D. Ohio July 20, 2020) (quoting 3 Newberg on Class Actions, § 7:17 (5th ed.)); *see*

11

*also In re Domestic Airline Travel Antitrust Litig.*, 2017 WL 11565592, * 4 (D.D.C. Jan. 30, 2017).

Each of these factors favors bifurcation in this case. First, bifurcation aids the court in the timely determination of a class certification motion. The parties agree that the class-certification deadline should precede the summary-judgment deadline. To be sure, there may be *some* overlap between merits and class-based discovery, for example, discovery relating to the typicality of Plaintiff's claims. But discovery into other subjects—*e.g.*, the element of USCCB's knowledge under Plaintiff's claim of fraud (as distinguished from its knowledge of what was said from the pulpits), and the way in which Peter's Pence donations were used—is unnecessary to a determination of class certification under Fed. R. Civ. P. 23. As discussed below, bifurcation ensures that the Court can stick to the proposed class-certification schedule, by avoiding unnecessary discovery disputes and additional complicated (and substantial) questions of church autonomy.

Second, bifurcation promotes economy. Denial of Plaintiff's motion for class certification may narrow the case and obviate or limit the need for further merits discovery. And full merits discovery is likely to embroil the parties and Court in even more disputes over the scope of appropriate discovery and the limits of the First Amendment. As in any case, each party may have certain protected communications or work product. And here, given the nature of the allegations and Defendant's status as a religious organization, there are additional privileges relating to documents, communications, and testimonial discovery bearing on the First Amendment and matters of church governance.

This is not a theoretical concern. Plaintiff's requests for production of documents seek communications with the "Holy See, Vatican City, [and] Apostolic Nunciature." RFP 19. Defendant claims a privilege for, at a minimum, internal Church communications, and assertion of that privilege may well generate motion practice. Motion practice relating to the assertion of a First Amendment privilege may well delay the class-certification decision, including (depending on the issue) prompting recourse to appellate review. *Cf. O'Connell*, 134 F.4th at 1256-57 (recognizing mandamus as a "safety

valve for correcting serious errors" (cleaned up)). Insofar as that request relates to the merits of Plaintiff's claims, bifurcation helps enable the parties to avoid a number of significant disputes arising from the particular First Amendment issues at play in this case.

Plaintiff's only answer is to say that privilege disputes are likely to occur regardless of the scope of discovery. Though Defendant agrees that class discovery might include unavoidable First Amendment privilege disputes, the First Amendment privilege is most likely to be implicated in discovery in subjects that relate primarily to the merits of Plaintiff's claims. *Supra* pp. 10-12. Thus, as a matter of efficiency, it is surely in the interest of the Court and parties to avoid disputes where possible. And as a matter of fairness, and mindful of "the need to protect the rights of all parties"—both recognized considerations in the case law—it is likewise appropriate to fashion discovery to avoid unnecessary disputes. *In re Domestic Airline Travel Antitrust Litig.*, 2017 WL 11565592, * 4 (D.D.C. Jan. 30, 2017).

Given the risk of intruding on matters of church governance, it is a common practice to defer merits discovery in cases against religious bodies asserting First Amendment defenses. *See, e.g., Collette v. Archdiocese of Chicago*, 200 F. Supp. 3d 730, 735 (N.D. Ill. 2016) (denying motion to dismiss, but limiting the scope of discovery to the "narrow" issue of the applicability of the "ministerial exception"); *Pardue v. Center City Consortium Schools of the Archdiocese of Washington, Inc., et al.*, 875 A.2d 669, 670-72 (D.C. 2005) (affirming order of Boasberg, J., barring suit under application of the "ministerial exception," following limited discovery only on that issue).[2] Bifurcation was necessary in those cases because courts seek to fashion discovery in cases implicating the First Amendment in an attempt to avoid intrusion into church governance. The Supreme Court has frequently and recently confirmed that the First Amendment "radiates ... a spirit of freedom for religious organizations, an independence from

---

[2] Although it is Defendant's position (as explained in its earlier dispositive motion) that the First Amendment bars this case from proceeding at all, Defendant acknowledges that this Court previously denied that motion.

13

secular control or manipulation." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 186 (2012) (citing *Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in North America*, 344 U.S. 94, 116 (1952)).  And, again, the D.C. Circuit has recognized the possibility of limitations on discovery in this very case.  *O'Connell*, 134 F.4th at 1256, 1260.

Recognizing that the "very process of inquiry" can "impinge on rights guaranteed by the Religion Clauses," *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 502 (1979), courts enforce First Amendment protections to avoid the entanglement created by a "protracted legal process pitting church and state as adversaries." *Rayburn v. Gen. Conference of Seventh-Day Adventists*, 772 F.2d 1164, 1171 (4th Cir. 1985).  And that would be the result if church personnel and records here are "subject to subpoena, discovery, [and] the full panoply of legal process designed to probe the mind of the church." *Id*.  Indeed, the sensitivity of merits discovery is a relevant consideration even outside the First Amendment context.  In *Ballard*, a putative class action under the Fair Credit Reporting Act, the court recognized that the "avoidance of premature disclosure of sensitive" information supported bifurcating discovery.  2020 WL 4187815, at *2.

The Manual for Complex Litigation has recognized that in such cases, "discovery into aspects of the merits unrelated to certification delays the certification decision and can create extraordinary and unnecessary expense and burden." Manual for Complex Litigation (Fourth) § 21.14 (2004).  As a result, merits discovery risks the expenditure of resources on a claim unlikely to be pursued.

Third, as stated, although there may be overlap between merits and class-certification discovery, there are issues that do not require discovery before the class-certification question. And more fundamentally, it is not the case (as Plaintiff suggests) that the potential for discovery disputes forecloses bifurcation here.  To the contrary, the *Hubbard* case involved a dispute concerning the appropriate scope of class-certification discovery *following bifurcation*.  That dispute was resolved, and the case proceeded.  And here, proceeding with merits and class-certification at the same time is likely to

14

generate a greater number of discovery disputes, because of the important First Amendment interests at stake.

Defendant's proposed schedule reflects bifurcation of class-related and merits discovery.

14. Pretrial Conference

The parties agree that the Court should set the date of the pretrial conference following its decision on Plaintiff's anticipated motion for class certification.

15. Trial Date

The parties request that the Court set a trial date at the pretrial conference.

16. Other Matters

**Plaintiff's Position**: Plaintiff believes that Defendant's attempt to petition the U.S. Supreme Court for a writ of certiorari related to its earlier appeal will be unsuccessful.

**Defendant's Position**: Defendant plans to file a petition for certiorari related to its earlier appeal. The petition is meritorious.

Dated: December 15, 2025                                Respectfully submitted,


By: /s/ Simon Franzini

Simon Franzini (Cal. Bar No. 287631)*
simon@dovel.com
Jonas Jacobson (Cal. Bar No. 269912)*
jonas@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Admitted *pro hac vice*

Martin Woodward (admitted *pro hac vice*)
Texas Bar No. 00797693

martin@kitnerwoodward.com
KITNER WOODWARD PLLC
13101 Preston Road, Suite 110
Dallas, Texas 75240
Telephone: (214) 443-4300
Facsimile: (214) 443-4304

*Counsel for Plaintiff David O'Connell*


By: */s/ Emmet T. Flood (with permission)*

Emmet T. Flood (D.C. Bar #448110)
Kevin T. Baine (D.C. Bar #238600)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, D.C., 20024
(202) 434-5000
kbaine@wc.com
eflood@wc.com
*Counsel for Defendant United States Conference of Catholic Bishops*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID O'CONNELL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES CONFERENCE OF CATHOLIC BISHOPS,<br><br>Defendant. | Case No. 1:20-cv-001365-JMC |

# EXHIBIT 1

# [DEFENDANT'S PROPOSED] SCHEDULING ORDER

Upon consideration of the Parties' Joint Status Report and Discovery Plan filed on December 15, 2025, and having been fully apprised of the premises, it is hereby ORDERED that Defendant's proposed schedule is adopted as follows:

| Event | Deadline |
|---|---|
| Proposed Protective Order, ESI Order, Rule 502 Order | February 13, 2026 |
| Close of discovery re Class Certification issues | December 11, 2026 |
| Motion for Class Certification<br><br>Deadline to Serve Opening Expert reports in support of Class Certification | February 12, 2027 |
| Opposition to Motion for Class Certification<br><br>Deadline to Serve Expert reports in opposition to Class Certification | 90 Days after Motion is filed |
| Reply ISO Motion for Class Certification | 30 Days after Opposition is filed |
| Daubert Motion(s) re: Class Certification | 30 Days after Opposition is filed |
| Oral Argument/Evidentiary Hearing on Motion for Class Certification | 15 days after briefing is complete on motion for class certification and *Daubert* motions |

Following the Court's decision on class certification, the Parties are ORDERED to meet and confer regarding the remaining case schedule and file a supplemental Rule 26(f) report setting forth their proposed case schedule(s) within 14 days of the Court's order on class certification.

SO ORDERED.

Dated:

_____

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DAVID O'CONNELL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES CONFERENCE OF CATHOLIC BISHOPS,<br><br>Defendant. | Case No. 1:20-cv-001365-JMC |

# EXHIBIT 2

# [PLAINTIFF'S PROPOSED] SCHEDULING ORDER

Upon consideration of the Parties' Joint Status Report and Discovery Plan filed on December 15, 2025, the Court adopts the following schedule through class certification:

| Event | Deadline |
|---|---|
| Proposed Protective Order, ESI Order, Rule 502 Order | February 13, 2026 |
| Close of discovery re Class Certification issues | December 11, 2026 |
| Motion for Class Certification<br><br>Deadline to Serve Opening Expert reports re: Class Certification | February 12, 2027 |
| Opposition to Motion for Class Certification<br><br>Deadline to Serve Rebuttal Expert reports re: Class Certification | 45 Days after Motion is filed |
| Reply ISO Motion for Class Certification | 30 Days after Opposition is filed |
| Daubert Motion(s) re: Class Certification | 30 Days after Opposition is filed |
| Oral Argument/Evidentiary Hearing on Motion for Class Certification | 15 days after briefing is complete on motion for class certification and *Daubert* motions |

19

     Following the Court's decision on class certification, the Parties are ORDERED to meet and confer regarding the remaining case schedule and file a supplemental Rule 26(f) report setting forth their proposed case schedule(s) within 14 days of the Court's order on class certification.

SO ORDERED.

Dated:

                                                                _____
                                                                JUDGE JIA M. COBB
                                                                U.S. District Court for the District of Columbia