**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| DAVID O'CONNELL, individually and on behalf of all others similarly situated, |
| Plaintiff, |
| v. |
| UNITED STATES CONFERENCE OF CATHOLIC BISHOPS, |
| Defendant. |

Case No. 1:20-cv-001365-JMC

## <u>JOINT STATUS REPORT AND DISCOVERY PLAN</u>

Pursuant to Fed. R. Civ. P. 26(f), Local Rule 16.3(c), and this Court's Minute Order of April 13, 2026, Plaintiff David O'Connell (Plaintiff) and Defendant United States Conference of Catholic Bishops (Defendant), submit the following Joint Status Report and Discovery Plan. This report includes a succinct statement of all agreements reached and, where the parties could not agree, a succinct description of the parties' positions. The parties are prepared to provide further briefing should the Court so request.

1.      <u>Likelihood of Disposition by Dispositive Motion</u>

**Plaintiff's Position**: Plaintiff does not believe that this case is likely to be disposed of by way of dispositive motion.

**Defendant's Position**: Defendant acknowledges that the Court previously denied Defendant's motion to dismiss for lack of subject matter jurisdiction and motion for judgment on the pleadings, and denied without prejudice Defendant's motion for summary judgment. Defendant appealed the Court's order on its motion to dismiss for lack of subject-matter jurisdiction and motion for judgment on the pleadings, and the D.C. Circuit dismissed Defendant's appeal for lack of jurisdiction. USCCB sought rehearing en banc, which the court denied on November 4, 2025.

1

*O'Connell v. United States Conf. of Cath. Bishops*, No. 23-7173, 2025 WL 3082728 (D.C. Cir. Nov. 4, 2025). Judge Rao dissented in a 32-page opinion. *Id*. at *4. Judge Walker concurred in the denial of rehearing en banc, but indicated that further proceedings in this matter "threaten[] the religious defendant with irreparable First Amendment harm." *Id*. at *1 (Walker, J., concurring in the denial of rehearing en banc) (hereinafter Walker, J., concurring). Defendant thereafter filed a petition for writ of certiorari in the Supreme Court of the United States, which the Court denied. Defendant's motion for summary judgment may be renewed at a later date.

  2.  Joinder, Amendment of Pleadings, and Narrowing of Issues

The Court stated that the parties may "conduct discovery and then we can set a deadline for amending pleadings at the appropriate time." 11/17/23 Hr'g Tr. 15:1-5. Accordingly, the parties have not included a deadline for amending pleadings in their proposed scheduling orders.

The parties agree that factual or legal issues may not be narrowed at this time.

  3.  Assignment to Magistrate Judge

The Parties do not agree to the assignment of a Magistrate Judge for all purposes.

  4.  Possibility of Settlement

The parties do not believe that there is a realistic possibility of settling the case at this time.

**Defendant's Position**: Defendant has asked Plaintiff for his estimated damages. Defendant's understanding is that Plaintiff will only settle on a class-wide basis. Defendant is not willing to settle on a class-wide basis.

  5.  Alternative Dispute Resolution

The parties do not believe that the case would benefit from alternative dispute resolution at this time.

  6.  Resolution by Summary Judgment or Motion to Dismiss

The parties agree that class certification should be resolved before any summary judgment motion is filed. Plaintiff does not believe that the case can be resolved by motion for summary judgment; Defendant disagrees.

7.    Initial Disclosures

The parties stipulate to extend the deadline to exchange initial disclosures until July 31, 2026.

8.    Discovery

The parties disagree about whether discovery should be bifurcated. The Parties' positions on bifurcation are set forth in section 13 below.  The parties' respective proposed schedules are included in exhibits 1 and 2 hereto.

The parties agree that a protective order is needed, will make best efforts to negotiate an agreed one, and will submit any disputes to the Court for resolution.  The parties have proposed deadlines for the submission of an agreed protective order and any related disputes.

9.    Preservation and Production of Documents and Electronically Stored Information ("ESI")

The parties discussed the preservation of ESI at the Rule 26(f) conference and have taken appropriate steps to ensure the preservation of ESI, including by suspending any applicable automatic deletion of potentially discoverable ESI.  The parties agree to make best efforts to negotiate an agreed ESI Order, and they have proposed deadlines for the submission of an agreed ESI Order and any disputes to the Court.

10.    Claims of Privilege

The parties agree to make best efforts to negotiate an order under Federal Rule of Evidence 502, and they have proposed a deadline for the submission of a proposed order under Federal Rule of Evidence 502 to the Court.

11.    <u>Expert Discovery</u>

The parties believe that the requirements for exchange of expert witness reports and information under Fed. R. Civ. P. 26(a)(2) should not be modified at this time.

The parties' proposed schedules for expert information are the same, except that Plaintiff proposes a 45-day deadline for Defendant to serve any rebuttal expert reports in connection with class certification whereas Defendant proposes a 90-day deadline. See exhibits 1 & 2 hereto.

**Defendant's Position**: Defendant agrees that the Court should impose the same deadline for Plaintiff's motion for class certification and any report(s) in support thereof.  Defendant submits that its opposition to Plaintiff's motion for class certification, and any report(s) in opposition to that motion (regardless of whether they are characterized as "rebuttal" to Plaintiff's report(s)), should be due 90 days after the deadline for Plaintiff's motion and report(s).  Plaintiff bears the burden on his motion for class certification, and it would prejudice Defendant to produce any expert report before reviewing Plaintiff's motion and any supporting expert report.  Likewise, a 90-day period (rather than a 45-day period) provides Defendant an appropriate amount of time to prepare an opposition and any expert report(s) in support of that opposition.

12.    <u>Class Actions</u>

The parties disagree on whether discovery relating to class certification and to merits should be bifurcated.  *See infra* Pt. 13.

13.    <u>Bifurcation</u>

Plaintiff believes that discovery should not be bifurcated.

**Plaintiff's Position**: Plaintiff agrees that class certification is a threshold issue that should be decided at an early stage. But, as explained below, bifurcating discovery is impractical, will prejudice Plaintiff, and will lead to disputes, inefficiencies, and delay. Accordingly, the Court should reject Defendant's proposal to bifurcate discovery. It should instead follow what

other courts in this District have done in similar situations: refuse to formally bifurcate discovery, but set an early deadline for class certification briefing to focus the parties' initial efforts on certification issues. *See, e.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 258 F.R.D. 167, 176 (D.D.C. 2009) (adopting this approach and collecting cases); *In re Domestic Airline Travel Antitrust Litig.*, 2017 U.S. Dist. LEXIS 232974, at *25 (D.D.C. Jan. 30, 2017) (same).

In deciding whether to bifurcate discovery, "Courts must consider the degree to which the certification evidence is 'closely intertwined' with, and indistinguishable from, the merits evidence in determining whether bifurcation is appropriate." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 258 F.R.D. 167, 173 (D.D.C. 2009). "The Supreme Court had directed courts considering class certification motions to engage in a 'rigorous analysis' to determine whether Rule 23's prerequisites have been satisfied, an analysis that will frequently []overlap with the merits of plaintiff's underlying claim." *McEwan v. OSP Grp.*, L.P., 2016 U.S. Dist. LEXIS 42798, at *7 (S.D. Cal. Mar. 30, 2016) (emphasis added). And indeed here, the evidence that Plaintiff needs to prove that common questions predominate is closely intertwined with and indistinguishable from the evidence Plaintiff needs to prove his underlying claim.

As set forth in the Complaint, Plaintiff claims that Defendant committed fraud by making material misrepresentations and omissions about how the Peter's Pence collection would be used when soliciting charitable contributions from Plaintiff and the putative class. *See* Complaint, Count I. Plaintiff also claims that Defendant breached its fiduciary duties by failing to ensure that the charitable contributions by Plaintiff and putative class members were spent in accordance with the promises it made. *See* Complaint, Count II.

To establish that common issues of law and fact predominate as to his fraud claims as required by Rule 23 (a class certification issue), Plaintiff will need evidence showing what

representations about the Peter's Pence collection were made to Plaintiff and putative class members; whether those representations were false; and whether Defendant knew or should have known they were false. Plaintiff will also need evidence showing that Defendant is responsible for the representations at issue. This evidence will show that Defendant made substantially similar representations that were false in substantially the same way to putative class members, meaning that the key issue of whether Defendant made misrepresentations is a common, class-wide issue. And, this same evidence is precisely the evidence Plaintiff will need to establish that Defendant made actionable misrepresentations to Plaintiff and the putative class in the first place (a merits issue). *See, e.g.*, Complaint ¶¶18-25 (summarizing evidence).

Similarly, to establish that common issues of law and fact predominate as to his breach of fiduciary duty claims (a class certification issue), Plaintiff will need evidence showing what promises were made to putative class members about how the Peter's Pence Collection would be used; whether Defendant was responsible for making those promises and for collecting the Peter's Pence charitable contributions from putative class members; and whether Defendant failed to ensure that the funds it collected were used according to the promises that were made. This evidence will show that Defendant breached its fiduciary duties to Plaintiff and the putative class in substantially the same way, meaning that the key issues of whether Defendant owed the putative class fiduciary duties and whether Defendant breached its fiduciary duties is a common issue. And, this evidence is precisely the same evidence Plaintiff will need to establish that Defendant owed and breached fiduciary duties Plaintiff and the putative class in the first place (a merits issue).

In short, in this case, "[d]iscovery relating to class certification is closely enmeshed with merits discovery, and in fact cannot be meaningfully developed without inquiry into basic issues of the litigation." *In re Rail Freight*, 258 F.R.D. at 175 (quoting *Gray v. First Winthrop Corp.*,

133 F.R.D. 39, 41 (N.D. Cal. 1990)). As a result, "bifurcating discovery risks prejudicing plaintiff, who must meet a high burden to show certification of the class is proper." *Obertman v. Electrolux Home Care Prods.*, 2020 U.S. Dist. LEXIS 107147, at *5 (E.D. Cal. June 17, 2020). It will "create[] unnecessary gaps in the evidence as a defendant has a strong incentive to withhold evidence even if such evidence 'overlap[s] with the merits of the plaintiff's underlying claim'" *Ahmed v. HSBC Bank USA, Nat'l Ass'n*, 2018 U.S. Dist. LEXIS 2286, at *8-9 (C.D. Cal. Jan. 5, 2018). And, it will lead to unnecessary duplication of effort and burden on the parties and witnesses, for example by requiring that many fact witnesses be deposed twice (once on class certification and then again on issues related to merits).

In addition, "Bifurcated discovery fails to promote judicial economy when it requires 'ongoing supervision of discovery.' If bifurcated, this Court would likely have to resolve various needless disputes that would arise concerning the classification of each document as 'merits' or 'certification' discovery." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 258 F.R.D. 167, 174 (D.D.C. 2009) (rejecting Defendant's proposal to bifurcate). Here, the parties already have disputes about whether discovery should be classified as "merits" or "certification" discovery, and—given how certification and merits issues are closely intertwined—will surely have many if discovery is bifurcated. This will waste party and judicial resources and is a second independent reason to reject Defendant's proposal to bifurcate. *Id.* (denying bifurcation and adopting proposal substantially similar to what Plaintiff proposes here for this reason among others); *Ahmed*, 2018 U.S. Dist. LEXIS 2286, at *8-9 (explaining that courts are "reluctant to bifurcate class-related discovery from discovery on the merits" for this reason); *see True Health Chiropractic, Inc. v. McKesson Corp.*, 2015 U.S. Dist. LEXIS 7015, at *7 (N.D. Cal. Jan. 20, 2015) ("[T]he line between 'class certification discovery' on the one hand, and 'pure merits' discovery on the other, can be difficult to discern.").

Finally, bifurcation will result in a much more lengthy case schedule and, as a result, delay resolution or trial. Following the common-sense approach of *In re Rail Freight* and *In re Domestic Airline Travel*, and the Court should instead set a case schedule through class certification, as Plaintiff proposes.

**Defendant's Position**: Defendant requests that this Court bifurcate discovery, with discovery prior to the deadline for Plaintiff's motion for class-certification limited to that issue. Class certification is a threshold issue. If a class is not certified, the case is unlikely to proceed, and discovery on the merits will prove to have been a waste of everyone's time and resources, in addition to being a further strain on Defendant's First Amendment rights. Bifurcation would ensure the timely resolution of class certification; promote judicial economy; and reflect the fact that, although some issues relate both to the merits and to class certification, there are certain issues that relate only to class certification. Bifurcation would also help ameliorate some thorny issues relating to church autonomy. In that respect, bifurcation would reflect the D.C. Circuit's recognition "that the USCCB's church autonomy defense may require limiting the scope of the suit or the extent of discovery, or even warrant dismissal of the suit in its entirety." *O'Connell v. United States Conf. of Cath. Bishops*, 134 F.4th 1243, 1260 (D.C. Cir. 2025). Most notably, Defendant expects that bifurcation would exclude from class-certification discovery inquiry into the ways in which Peter's Pence donations were spent, and the state of mind of the USCCB as to the veracity of statements alleged at paragraphs 18-25 of Plaintiff's Complaint. By contrast, class certification discovery may encompass, for example, discovery into the fact of particular statements by the USCCB or from the pulpit, Plaintiff's reliance (if any) on such statements, and USCCB's knowledge of the fact of those statements.

This Court has discretion to order bifurcation of discovery. In *Hubbard v. Potter*, for example, the court ordered bifurcation of discovery, and the assigned Magistrate Judge entertained

8

discovery motions. 2007 WL 604949, at *2 (D.D.C. Feb. 22, 2007) (directing limited discovery tailored to particular case).  In determining whether bifurcation is appropriate, "courts consider the following factors: (1) expediency, meaning whether bifurcated discovery will aid the court in making a timely determination on the class certification motion; (2) economy, meaning 'the potential impact a grant or denial of certification would have upon the pending litigation,' and whether the definition of the class would 'help determine the limits of discovery on the merits;' and (3) severability, meaning whether class  certification and merits issues are closely enmeshed." *Ballard v. Kenan Advantage Grp., Inc.*, 2020 WL 4187815, at *1 (N.D. Ohio July 20, 2020) (quoting 3 Newberg on Class Actions, § 7:17 (5th ed.)); *see also In re Domestic Airline Travel Antitrust Litig.*, 2017 WL 11565592, at *4 (D.D.C. Jan. 30, 2017).

Each of these factors favors bifurcation in this case.  First, bifurcation aids the court in the timely determination of a class certification motion.  The parties agree that the class-certification deadline should precede the summary-judgment deadline.  To be sure, there may be *some* overlap between merits and class-based discovery, for example, discovery relating to the typicality of Plaintiff's claims.  But discovery into other subjects—*e.g.*, the element of USCCB's knowledge under Plaintiff's claim of fraud (as distinguished from its knowledge of what was said from the pulpits), and the way in which Peter's Pence donations were used—is unnecessary to a determination of class certification under Fed. R. Civ. P. 23.  As discussed below, bifurcation ensures that the Court can stick to the proposed class-certification schedule, by avoiding unnecessary discovery disputes and additional complicated (and substantial) questions of church autonomy.

Second, bifurcation promotes economy.  Denial of Plaintiff's motion for class certification may narrow the case and obviate or limit the need for further merits discovery.  And full merits discovery is likely to embroil the parties and Court in even more disputes over the scope of

appropriate discovery and the limits of the First Amendment.  As in any case, each party may have certain protected communications or work product.  And here, given the nature of the allegations and Defendant's status as a religious organization, there are additional privileges relating to documents, communications, and testimonial discovery bearing on the First Amendment and matters of church governance.

This is not a theoretical concern.  Plaintiff's requests for production of documents seek communications with the "Holy See, Vatican City, [and] Apostolic Nunciature."  RFP 19.  Defendant claims a privilege for, at a minimum, internal Church communications, and assertion of that privilege may well generate motion practice.  Motion practice relating to the assertion of a First Amendment privilege may well delay the class-certification decision, including (depending on the issue) prompting recourse to appellate review.  *Cf. O'Connell*, 134 F.4th at 1256-57 (recognizing mandamus as a "safety valve for correcting serious errors" (cleaned up)).  Insofar as that request relates to the merits of Plaintiff's claims, bifurcation helps enable the parties to avoid a number of significant disputes arising from the particular First Amendment issues at play in this case.

Plaintiff's only answer is to say that privilege disputes are likely to occur regardless of the scope of discovery.  Though Defendant agrees that class discovery might include unavoidable First Amendment privilege disputes, the First Amendment privilege is most likely to be implicated in discovery in subjects that relate primarily to the merits of Plaintiff's claims.  *Supra* pp. 8, 10.  Thus, as a matter of efficiency, it is surely in the interest of the Court and parties to avoid disputes where possible.  And as a matter of fairness, and mindful of "the need to protect the rights of all parties"— both recognized considerations in the case law—it is likewise appropriate to fashion discovery to avoid unnecessary disputes.  *In re Domestic Airline Travel Antitrust Litig.*, 2017 WL 11565592, at *4 (D.D.C. Jan. 30, 2017).

Given the risk of intruding on matters of church governance, it is a common practice to defer

merits discovery in cases against religious bodies asserting First Amendment defenses. *See, e.g., Collette v. Archdiocese of Chicago*, 200 F. Supp. 3d 730, 735 (N.D. Ill. 2016) (denying motion to dismiss, but limiting the scope of discovery to the "narrow" issue of the applicability of the "ministerial exception"); *Pardue v. Center City Consortium Schools of the Archdiocese of Washington, Inc., et al.*, 875 A.2d 669, 670-72 (D.C. 2005) (affirming order of Boasberg, J., barring suit under application of the "ministerial exception," following limited discovery only on that issue).[1] Bifurcation was necessary in those cases because courts seek to fashion discovery in cases implicating the First Amendment in an attempt to avoid intrusion into church governance. The Supreme Court has frequently and recently confirmed that the First Amendment "radiates ... a spirit of freedom for religious organizations, an independence from secular control or manipulation." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 186 (2012) (citing *Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in North America*, 344 U.S. 94, 116 (1952)). And, again, the D.C. Circuit has recognized the possibility of limitations on discovery in this very case. *O'Connell*, 134 F.4th at 1256, 1260.

Recognizing that the "very process of inquiry" can "impinge on rights guaranteed by the Religion Clauses," *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 502 (1979), courts enforce First Amendment protections to avoid the entanglement created by a "protracted legal process pitting church and state as adversaries." *Rayburn v. Gen. Conference of Seventh-Day Adventists*, 772 F.2d 1164, 1171 (4th Cir. 1985). And that would be the result if church personnel and records here are "subject to subpoena, discovery, [and] the full panoply of legal process designed to probe the mind of the church." *Id*. Indeed, the sensitivity of merits discovery is a relevant consideration even outside the First Amendment context. In *Ballard*, a putative class action under the Fair Credit

---

[1] Although it is Defendant's position (as explained in its earlier dispositive motion) that the First Amendment bars this case from proceeding at all, Defendant acknowledges that this Court previously denied that motion.

11

Reporting Act, the court recognized that the "avoidance of premature disclosure of sensitive" information supported bifurcating discovery.  2020 WL 4187815, at *2.

The Manual for Complex Litigation has recognized that in such cases, "discovery into aspects of the merits unrelated to certification delays the certification decision and can create extraordinary and unnecessary expense and burden." Manual for Complex Litigation (Fourth) § 21.14 (2004).  As a result, merits discovery risks the expenditure of resources on a claim unlikely to be pursued.

Third, as stated, although there may be overlap between merits and class-certification discovery, there are issues that do not require discovery before the class-certification question. And more fundamentally, it is not the case (as Plaintiff suggests) that the potential for discovery disputes forecloses bifurcation here.  To the contrary, the *Hubbard* case involved a dispute concerning the appropriate scope of class-certification discovery *following bifurcation*.  That dispute was resolved, and the case proceeded.  And here, proceeding with merits and class-certification at the same time is likely to generate a greater number of discovery disputes, because of the important First Amendment interests at stake.

14.   Pretrial Conference

The parties agree that the Court should set the date of the pretrial conference following its decision on Plaintiff's anticipated motion for class certification.

15.   Trial Date

The parties request that the Court set a trial date at the pretrial conference.

16.   Other Matters

N/A

Dated: June 25, 2026                                  Respectfully submitted,


                                                     By:/s/ Martin Woodward

                                                     Simon Franzini (Cal. Bar No. 287631)*
                                                     simon@dovel.com
                                                     Jonas Jacobson (Cal. Bar No. 269912)*
                                                     jonas@dovel.com
                                                     DOVEL & LUNER, LLP
                                                     201 Santa Monica Blvd., Suite 600
                                                     Santa Monica, California 90401
                                                     Telephone: (310) 656-7066
                                                     Facsimile: (310) 656-7069

                                                     Martin Woodward (admitted *pro hac vice*)
                                                     Texas Bar No. 00797693
                                                     martin@kitnerwoodward.com
                                                     KITNER WOODWARD PLLC
                                                     13101 Preston Road, Suite 110
                                                     Dallas, Texas 75240
                                                     Telephone: (214) 443-4300
                                                     Facsimile: (214) 443-4304

                                                     *Counsel for Plaintiff David O'Connell*


                                                     By:/s/ Emmet T. Flood (with permission)

                                                     Emmet T. Flood (D.C. Bar #448110)
                                                     Kevin T. Baine (D.C. Bar #238600)
                                                     WILLIAMS & CONNOLLY LLP
                                                     680 Maine Avenue, S.W.
                                                     Washington, D.C., 20024
                                                     (202) 434-5000
                                                     kbaine@wc.com
                                                     eflood@wc.com
                                                     *Counsel for Defendant United States*
                                                     *Conference of Catholic Bishops*

13

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DAVID O'CONNELL, individually and on behalf of all others similarly situated,

Plaintiff,

v.

UNITED STATES CONFERENCE OF CATHOLIC BISHOPS,

Defendant.

Case No. 1:20-cv-001365-JMC

**EXHIBIT 1**

**[DEFENDANT'S PROPOSED] SCHEDULING ORDER**

Upon consideration of the Parties' Joint Status Report and Discovery Plan filed on June 25, 2026, the Court adopts the following schedule through class certification:

| Event | Deadline |
|---|---|
| Proposed Protective Order, ESI Order, Rule 502 Order | July 31, 2026 |
| Close of discovery re Class Certification issues | May 28, 2027 |
| Motion for Class Certification<br><br>Deadline to Serve Opening Expert reports re: Class Certification | July 30, 2027 |
| Opposition to Motion for Class Certification<br><br>Deadline to Serve Rebuttal Expert reports re: Class Certification | 90 Days after Motion is filed |
| Reply ISO Motion for Class Certification | 30 Days after Opposition is filed |
| Daubert Motion(s) re: Class Certification | 30 Days after Opposition is filed |
| Oral Argument/Evidentiary Hearing on Motion for Class Certification | 15 days after briefing is complete on motion for class certification and *Daubert* motions |

14

Following the Court's decision on class certification, the Parties are ORDERED to meet and confer regarding the remaining case schedule and file a supplemental Rule 26(f) report setting forth their proposed case schedule(s) within 14 days of the Court's order on class certification.

SO ORDERED.

Dated:

_____
JUDGE JIA M. COBB
U.S. District Court for the District of Columbia

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAVID O'CONNELL, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES CONFERENCE OF CATHOLIC BISHOPS, <br><br> Defendant. | Case No. 1:20-cv-001365-JMC |

**EXHIBIT 2**

**[PLAINTIFF'S PROPOSED] SCHEDULING ORDER**

Upon consideration of the Parties' Joint Status Report and Discovery Plan filed on June 25, 2026, the Court adopts the following schedule through class certification:

| Event | Deadline |
|---|---|
| Proposed Protective Order, ESI Order, Rule 502 Order | July 31, 2026 |
| Close of discovery re Class Certification issues | May 28, 2027 |
| Motion for Class Certification <br><br> Deadline to Serve Opening Expert reports re: Class Certification | July 30, 2027 |
| Opposition to Motion for Class Certification <br><br> Deadline to Serve Rebuttal Expert reports re: Class Certification | 45 Days after Motion is filed |
| Reply ISO Motion for Class Certification | 30 Days after Opposition is filed |
| Daubert Motion(s) re: Class Certification | 30 Days after Opposition is filed |
| Oral Argument/Evidentiary Hearing on Motion for Class Certification | 15 days after briefing is complete on motion for class certification and *Daubert* motions |

16

Following the Court's decision on class certification, the Parties are ORDERED to meet and confer regarding the remaining case schedule and file a supplemental Rule 26(f) report setting forth their proposed case schedule(s) within 14 days of the Court's order on class certification.

SO ORDERED.

Dated:

_____
JUDGE JIA M. COBB
U.S. District Court for the District of Columbia