**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DAVID O'CONNELL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES CONFERENCE OF CATHOLIC BISHOPS,<br><br>Defendant. | Case No. 1:20-cv-001365-JMC |

**[PROPOSED] AGREED ORDER REGARDING PROTOCOL FOR PRODUCTION OF HARD COPY DOCUMENTS AND <u>ELECTRONICALLY STORED INFORMATION</u>**

Based on the agreement of the Parties and the approval of this Court, this Order Regarding Protocol for Production of Hard Copy Documents and Electronically Stored Information (the "ESI Protocol") shall govern the production of all hard copy documents and electronically stored information ("ESI") (collectively "Documents") in the above-captioned action.

## I. <u>GENERAL PROVISIONS</u>

1. **Scope.** The provisions set forth herein apply to the production of all Documents, regardless of which Party is seeking or producing the Documents. These provisions shall also apply to the production of Documents by any non-party.

2. **Custodians and Search Methodology.** Each Producing Party will use reasonable search methodologies to collect Documents in response to requests for production. If a Producing Party intends to use search terms to limit its collection, review, or production of ESI, that Party shall first discuss with the Requesting Party the search terms that it proposes to use. Once the Parties have agreed on search terms,**]**

the Producing Party shall run the agreed-upon search terms across all data sources on which information pertaining to the custodian may reside (including but not limited to local hard drives, shared drives, cloud storage, external drives, tablet computers, and smartphones), and shall promptly produce all responsive, non-privileged material. Nothing in this ESI Protocol shall be construed to limit a Party's production obligations under applicable law.

3. **502(d).** Nothing in this ESI Protocol shall be interpreted to require disclosure of information protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege or immunity. The Parties do not waive any objections as to the production, discoverability, admissibility, or confidentiality of any Documents. The production of privileged or work-product protected Documents, ESI, or other information whether inadvertent or otherwise, is not a waiver of the privilege or protection from discovery in this case or in any other federal or state proceeding. It is the intent of the parties to provide the maximum protection allowed by Federal Rule of Evidence 502(d) to their productions. Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of Documents, ESI, or other information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

4. **Deviations.** Notwithstanding this ESI Protocol, the Parties may separately agree to deviate from the protocols set forth herein as to specific Documents or categories of Documents, without leave of the Court, provided that such agreement is memorialized in writing. The Parties each reserve the right to seek relief from this ESI Protocol pursuant to the Federal Rules of Civil Procedure and the Local Rules for good cause shown.

5. **Cooperation.** The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with the Federal Rules of Civil Procedure and the Local Rules.

6. **Conferral Obligations.** The Parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this ESI Protocol. If a Producing Party, notwithstanding its good faith efforts, cannot comply with any material aspect of this ESI Protocol, or if compliance with a material aspect of this ESI Protocol would be unreasonable, then within a reasonable time before the date of production or within a reasonable time after discovery of the inability or infeasibility of compliance, such Producing Party shall inform the Requesting Party in writing as to why compliance with the ESI Protocol is impossible or unreasonable. No Party may seek relief from the Court concerning compliance with this ESI Protocol unless it has conferred (or made reasonable, good faith efforts to confer) with other affected Parties and followed the appropriate procedures for discovery disputes set forth in the Federal Rules of Civil Procedure and the Local Rules.

7. **Costs.** Nothing in the ESI Protocol shall affect, in any way, a Producing Party's right to seek reimbursement for costs associated with collection, review, and/or production of documents.

8. **Excluded Categories.** The following will not be searched or produced unless good cause is shown by the Requesting Party or the Parties otherwise agree:

i. Backup data files that are maintained in the normal course of business for purposes of disaster recovery, including (but not limited to) backup tapes, disks, SAN;

ii. Deleted, "slack," fragmented, or unallocated data;

iii. Corrupted files;

iv. Temporary, transitory data such as cached data and data stored in Random access memory (RAM), temporary files, browsing histories, internet cached data, cookies or other ephemeral data;

v. Server, system, network or software application logs;

vi. Structural files not material to individual file contents that do not contain substantive content (e.g. .CSS, .XSL, .XML, .DTD, etc.).

9. **Color.** By default, the Parties are required to produce in color documents that contain charts, graphs, text or other substantive information in color. Documents that contain only non-substantive

information, such as logos or hyperlinks, in color can, but need not, be produced in color. For documents produced in color, color images (.JPG, with LZW compression) shall be produced along with black and white TIFF files. Any request for cost-sharing or cost-shifting shall be resolved consistent with Federal Rule of Civil Procedure 26.

10. **Redactions.** The Producing Party shall identify redactions clearly on the face of any TIFF image or native file, with the redaction reason on the face of the document if space allows (*e.g.*, Attorney-Client ("AC"), Work Product ("WP"), Relevance, or the like). Alternatively (or in addition), the Parties may produce a "Redaction Type" coding field in the .dat file that identifies the reason for each redaction. To the extent that specific documents or document family groups require redaction, Optical Character Recognition ("OCR") may be provided as "text" for such documents.

11. **Bates Numbering.** Documents produced in TIFF format will bear a Bates prefix indicating the Party from whose files the documents originated. Documents produced from the files of Plaintiffs will be endorsed consecutively beginning with: PLAINTIFFS-000000001. Documents produced from the files of Defendant United States Conference of Catholic Bishops will be endorsed consecutively beginning with USCCB-000000001. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production. A Producing Party should use a consistent format for the Bates Numbers it uses across its productions, consisting of an alphanumeric prefix, a hyphen, and a sequential, zero-padded number of sufficient length to allow for the volume of documents expected to be produced in this matter (i.e., PREFIX-00000001). Bates numbers shall not contain spaces.

12. **Database Load Files.** Documents should be provided with Relativity- and Concordance Version 10-compatible image and data load files (*i.e.*, OPT and DAT files) using standard delimiters. Relativity- and Concordance Version 10-compatible image and data load files should be provided in a self-identified "Data" folder. An OPT image cross reference file shall provide the image range of each

record. Text shall be delivered as separate text files, referenced as a path in the .DAT file, named with the same Bates number name as the corresponding image files.

13. **Production Media.** Each Party will provide productions on the most appropriate media or method, taking into account the type of data to be transferred, the volume of such data, and each Party's system requirements (e.g., optical media (CD/DVD), external hard drive, secure FTP site). If production occurs using storage media, the producing Party shall use next-day delivery to transmit the production.

14. **Encryption.** To maximize the security of information in transit, any media or production on secure FTP on which documents are produced must be encrypted by the Producing Party. In such cases, the Producing Party shall transmit the encryption key or password to the Requesting Party, under separate cover, contemporaneously with sending the encrypted media.

15. **Processing Third-Party Documents.** A Party that issues a non-party subpoena ("Issuing Party") shall include a copy of this ESI Protocol with the subpoena. The Issuing Party is responsible for producing to all other Parties any documents obtained pursuant to a subpoena to any non-party. To the extent practical given the data volume, productions by a non-party should be produced by the Issuing Party to all other Parties within five (5) business days of the non-party's production to the Issuing Party.

## II. <u>DEFINITIONS</u>

For the purpose of this ESI Protocol, the following definitions apply, unless a contrary use or limitation on a defined term is specified:

16. "Sources" means electronic or physical document repositories.

17. "Metadata" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by the user of such system. "Metadata" is a subset of ESI.

18. "Native File(s)" means ESI in the electronic format of the application in which such ESI is normally created, viewed, and/or modified. "Native Files" are a subset of ESI.

19. "Image File(s)" mean a representation of ESI produced by (i) converting a Native File into a standard image format capable of being viewed and printed on standard computer systems; or (ii) scanning a hard copy file into a standard image file capable of being viewed and printed on standard computer systems.

20. "TIFF" refers to Tagged Image File Format, a particular form of Image File.

21. "OCR" means Optical Character Recognition, and is the machine recognition of printed characters from Image Files or other non-searchable text contained in a document into machine-encoded text so that the text can be indexed and searched for specific characters, words or phrases.

22. "Extracted Text" means the electronic extraction of a Native File's content that can be indexed and searched without OCR.

23. A "load file" is a file containing commands or information necessary to import coded, captured or Extracted data from ESI processing into a document management database, such as Relativity, and that defines the links between multiple records or document images.

## III. <u>PRODUCTION OF HARD COPY DOCUMENTS IN ELECTRONIC FORMAT</u>

24. **Unitization:** Hard copy documents shall be logically unitized as they were unitized in their original form (i.e., distinct documents shall not be merged into a single record, and single documents or loose-leaf documents shall not be split into multiple records). Additionally, any document contained in a binder shall be unitized as a single document and all tabs associated with the binder shall be scanned and produced. Document pages which have affixed notes, such as Post-it notes, shall be imaged with and without the note attached.

25. **TIFFs.** All hard copy documents shall be produced in the form of single-page, Group IV black & white or color TIFFs (consistent with Paragraph 9) at 300 dpi. Each TIFF image shall be labeled

with unique filenames, zero-padded and with no spaces, which are unique and match the Bates number stamped on the image (*i.e.*, PREFIX-00000001). Original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape). Bates numbers, confidentiality designations, and redactions should be burned into the TIFF image files so that they appear when the document is printed. TIFF image files should be provided in a self-identified "Images" folder.

26. **OCR.** Scanned images must be OCR'd to ensure they are word searchable, using any settings needed to recognize foreign-language characters (if any) used in the documents. For each document, an extracted text file should be provided along with its corresponding TIFF image file(s) and metadata. The file name of each extracted text file should be identical to that of the first image page of its corresponding document, followed by .txt.

27. **Metadata.** Hard copy documents should be produced with at least the following searchable information in accompanying delimited data files: (1) BegBates; (2) EndBates; (3) BegAttach (4) EndAttach (5) Custodian (a/k/a Source). Custodians/Sources should be identified using the convention "Lastname, Firstname." Entity/departmental Custodians/Sources should be identified with a description of the entity or department. A Producing Party shall use a uniform description of a particular Custodian/Source across all productions.

28. **Production Rules.** The Parties will make relevancy and production determinations for hard copy documents at the document level. If, during the course of review, the family structure of hard copy documents is readily ascertainable (*e.g.*, documents that are physically bound together by staples, clips or other means, stored together in a common file indicating their family relationship, or where the family is relationship is evident from the face of one or more of the documents), the Producing Party will follow the coding and production rules for ESI. *See* ¶ 36. Privilege determinations will be made at the document level.

## IV. PRODUCTION OF ESI

29. **TIFFs.** All ESI shall be produced in unitized, single page, Group IV black & white or color TIFF files (consistent with Paragraph 9) at 300 dpi, except as provided in Paragraph 32. Each TIFF image shall be labeled with unique filenames, zero-padded and with no spaces, which are unique and match the Bates number stamped on the image (*i.e.*, PREFIX-00000001). Original document orientation should be maintained (*i.e.*, portrait to portrait and landscape to landscape). Bates numbers, confidentiality designations, and redactions should be burned into the TIFF image files so that they appear when the document is printed. TIFF image files should be provided in a self-identified "Images" folder. In addition to any other reasonable formatting, images shall contain "speaker's notes" for MS PowerPoint files, hidden pages/columns/rows/text with any substantive content for MS Excel files and "tracked changes" or additional hidden data for any MS Word documents.

30. **Metadata Fields and Processing.** The Producing Party must, to the extent possible in its productions, preserve the integrity of the underlying ESI, *i.e.*, the original formatting where feasible, the metadata (including the fields noted below in Appendix A) and, where applicable, the revision history. In addition, each of the metadata and coding fields set forth in Appendix A that can be extracted from a document at the time of collection and processing shall be produced for that document.

31. **Extracted Text Files.** For each document, an extracted text file should be provided along with its corresponding TIFF image file(s) and metadata. The file name of each extracted text file should be identical to that of the first image page of its corresponding document, followed by .txt. File names should not contain any special characters or embedded spaces. The text of native files should be extracted directly from the native file. However, if a document has been redacted, OCR of the redacted document will suffice in lieu of extracted text.

32. **Native Files.** Unredacted spreadsheets, including Excel files, .CSV files and other similar spreadsheet files, audio, and video files shall be produced as Native Files, with all metadata intact,

including embedded formulae, file properties, and the other metadata fields listed in Appendix A. Native Files should be provided in a self-identified "Natives" directory. Each Native File should be produced with a corresponding single-page TIFF placeholder image, which will contain language indicating that the document is being produced as a Native File. Native Files should be named with the beginning Bates number that is assigned to that specific record in the production. A "NativeLink" entry for each Native File should be included in the .DAT load file indicating the relative file path to each native file on the production media. Native Files should be produced with extracted text and applicable metadata fields as set forth in Appendix A.

33. **Redaction of Spreadsheets.** For spreadsheets containing information subject to redaction, the spreadsheet may be redacted natively or produced as a TIFF image files with burned in redactions. In such cases, the Producing Party will make reasonable efforts to ensure that its discovery vendor, prior to conversion to TIFF, reveals hidden data and slides from redacted spreadsheets and formats the files so as to be readable (for example, column widths should be formatted so that numbers do not appear as "##ff###-#1/4") and all single-page TIFF images shall include row and column headings. To the extent that the Requesting Party considers the redacted versions insufficient (for example, where hidden formulas are relevant or the usefulness of the document depends on the ability to sort or reformat the data), the Parties will meet and confer to determine how and if the document can be produced in native format without the redacted information.

34. **Structured Data.** The Parties shall meet and confer regarding production format of any structured data and/or non-standard data requests. The Parties will work to identify an appropriate format that will allow the Requesting Party to use and search the data in a meaningful way, such as an already existing and reasonably available report, or an export from the original database of discoverable information in a format compatible with Microsoft Excel or Microsoft Access produced in native format. A Producing Party shall neither be obligated to create and/or produce a copy of a database, nor provide

another Party with access to a database except as required by Federal Rule of Civil Procedure 34.

35. **Requests for Other Native Files.** Other than as specifically set forth above, a producing Party need not produce documents in native format. If good cause exists for the Requesting Party to make reasonable requests for production of certain documents in native format, the Requesting Party may request production in native format by providing (1) a list of the Bates numbers of documents it requests to be produced in native format; and (2) an explanation of the need for reviewing such documents in native format. The Producing Party shall not unreasonably deny such requests. Each document produced in response to such requests shall be produced with a "NativeLink" entry in the .DAT load file indicating the relative file path to each Native File on the production media, and all extracted text and applicable metadata fields set forth in Appendix A.

36. **Parent-Child Relationships.** Parent-child relationships (*e.g.*, the association between e-mails and attachments) will be preserved through a GroupID or BegAttach field, which should be populated with the same value across a family (parent and attachments). E-mail attachments will be consecutively produced with the parent email record.

37. **Duplicates.** Each Party shall globally de-duplicate ESI at the family level wherever possible and appropriate, including, without limitation, duplicate e-mail, to reduce unnecessary cost of reviewing and producing exact duplicate documents. The identity of other custodians of de-duplicated items must be listed in the "All Custodians" field of the copy of the record that is produced. If productions are made on a rolling basis, an overlay file shall be produced updating any appropriate fields for previously produced documents (*e.g.*, "All Custodians," "All Path," etc.). Family groups shall be maintained at all times. For example, a duplicative attachment should be produced twice if attached to unique emails. In producing emails, the Producing Party will exclude emails constituting exact duplicates of emails within the produced email string. Any de-duplication tool used by a Party must ensure that an email will be suppressed only if its recipients (including cc and bcc recipients), subject, body text (excluding specified

automatic footers and normalized to consolidate white space), and attachments are wholly included in another, more complete email. For purposes of this paragraph, only email messages in which the parent document and all attachments are exactly the same will be considered duplicates.

38. **Threading**. Email thread analysis (threading) using industry standard, automated tools may be used to reduce the volume of Emails reviewed and produced. If Email threading is used, the production shall include inclusive Emails, so long as they include all of the responsive information from their respective threads, including attachments. For example, if an Email in a string deviates from the thread such that it contains attachments that are not included in the most complete thread, then that individual Email and its attachments shall also be produced. Following production of most inclusive email threads, for good cause and subject to the proportionality standard, a Receiving Party may make reasonable requests for individual lesser-included emails. The Producing Party shall cooperate reasonably in responding to any such requests if the requested lesser-included emails otherwise would have been subject to production. A Party may request production of individual lesser-included emails, including after the close of discovery, upon reasonable notice if such emails are reasonably needed for use as exhibits in depositions, motions, hearings, or at trial, and the Producing Party shall cooperate reasonably in responding to such requests.

39. **Technology Assisted Review**. After the Producing Party has (i) informed the Requesting Party of an intent to use Predictive Coding or another form of Technology Assisted Review; (ii) disclosed to the Requesting Party the intended methodology; and (iii) discussed with the Requesting Party any concerns it expresses in connection with the proposed methodology, the Producing Party may use Predictive Coding or another form of Technologically Assisted Review in its document review and production process, subject to, or as qualified or determined by, the Court.

40. **Time Zone.** To the extent reasonably practicable, ESI shall be processed and standardized to the Coordinated Universal (UTC) time zone.

41. **Password-Protected ESI.** The Producing Party will take reasonable steps, prior to production, to unencrypt or restore any discoverable ESI that is encrypted (*e.g.*, password-protected) or corrupt. Relevant, non-privileged documents that can be reasonably unencrypted or restored will be produced.

42. **Documents That Cannot Be Imaged.** In the event that an electronic document is identified as requiring production, and the file is not amenable to TIFF conversion after good-faith, reasonable efforts to remedy any issues (*e.g.*, corruption, password protection), a slipsheet will be produced as a placeholder. The metadata for the file will be produced as available under this ESI Protocol.

## V. ESI DISCLOSURES

43. Within 30 days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

a. Custodians. The 8-10 custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control.

b. Non-custodial Data Sources. A list of non-custodial data sources (*e.g.,* shared drives, servers, or shared sites), if any, likely to contain discoverable ESI.

c. Third-Party Data Sources. A list of third-party data sources, if any, likely to contain discoverable ESI (e.g., graphic design asset repositories/vendors, third-party email providers, messaging platforms, mobile device/mobile application providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

d. Inaccessible Data. A list of data sources, if any, likely to contain unique, discoverable ESI not available from accessible ESI sources (by type, date, custodian, electronic system or

other criteria sufficient to specifically identify the data source) that the party identifies as not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

## VI. PRIVILEGE AND REDACTION LOGS

44. **Privilege Logs**. Unless otherwise agreed, all responsive Documents that a Producing Party withholds from disclosure in full based on a claim of privilege must be listed by document, or by category, where appropriate, according to family structure, in a privilege log to be supplied in a reasonable time period to the Requesting Party, generally within 45 calendar days of the service of a Party's responses to the document request(s) to which the documents are responsive. The Producing Party will provide its privilege log in a text-searchable form that allows the Receiving Party to sort the entries chronologically (e.g., Excel). The parties need not log communications involving counsel on or after the date of the filing of the initial complaint.

45. **Redaction Logs**. In the event that the reason for a redaction cannot be discerned from the face of the TIFF image after good faith efforts, or a party redacts all or substantially all of the text of a document on the grounds of privilege, confidentiality, or as required by state or federal law or regulation, the redacting party shall prepare a redaction log listing the basis for each such redaction.

46. **Contents of Privilege and Redaction Logs.** Unless otherwise agreed, a party's privilege or redaction log must provide sufficient information to substantiate its privilege in accordance with the Federal Rules of Civil Procedure.

47. **Email Chains**. Email chains contained within a single document shall be considered one document for purposes of the log (*i.e.*, earlier emails in the chain need not be logged separately). The privilege description of an email chain in a party's privilege log must adequately describe the basis for the privilege in the entire email chain. For the avoidance of doubt, a party need not individually list the "To," "From," "CC"," "BCC," or other descriptors such as Date and Subject, for the earlier emails in the chain.

It is so ORDERED.

DATED: ____________

___________________________________
JUDGE JIA M. COBB
U.S. District Court for the District of Columbia

**STIPULATED AND AGREED TO**

By: __*/s/ Martin Woodward*________

Simon Franzini (Cal. Bar No. 287631)*
simon@dovel.com
Jonas Jacobson (Cal. Bar No. 269912)*
jonas@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

Martin Woodward (admitted *pro hac vice*)
Texas Bar No. 00797693
martin@kitnerwoodward.com
KITNER WOODWARD PLLC
13101 Preston Road, Suite 110
Dallas, Texas 75240
Telephone: (214) 443-4300
Facsimile: (214) 443-4304

*Counsel for Plaintiff David O'Connell*

By:__*/s/ Emmet T. Flood*___________

Emmet T. Flood (D.C. Bar #448110)
Kevin T. Baine (D.C. Bar #238600)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue, S.W.
Washington, D.C., 20024
(202) 434-5000
kbaine@wc.com
eflood@wc.com
*Counsel for Defendant United States Conference of Catholic Bishops*

**APPENDIX A: METADATA FIELDS**

| Field Name | Field Description |
|---|---|
| BEGBATES | Beginning Bates number as stamped on the production image |
| ENDBATES | Ending Bates number as stamped on the production image |
| BEGATTACH | First production Bates number of the first document in a family |
| ENDATTACH | Last production Bates number of the last document in a family |
| ATTACHCOUNT | Number of attachments in the family group (parent and attachments) |
| CUSTODIAN/ SOURCE | Includes the Individual (Custodian) or Non-Custodial Source from whom/which the documents originated. |
| ALL CUSTODIAN (or GLOBALSOURCE) | A semi-colon delimited list of all Custodians and Non-Custodial Sources in possession of a document (i.e., all Individual(s)/sources from whom/which documents were de-duplicated out (De-Duped Custodian)). |
| SUBJECT | Subject line of email |
| TITLE | Title from properties of document |
| DATESENT | Date email was sent (format: MM/DD/YYYY) |
| TIMESENT | Time email was sent (in UTC; format: HH:MM:SS) |
| DATERECEIVED | Date email was received (format: MM/DD/YYYY) |
| TIMERECEIVED | Time email was received (in UTC; format: HH:MM:SS) |
| TO | All recipients that were included on the “To” line of the email |
| FROM | The name and email address of the sender of the email |
| CC | All recipients that were included on the “CC” line of the email |
| BCC | All recipients that were included on the “BCC” line of the email |
| | |

| | |
|---|---|
| CONVERSATIONID | Email thread identifier generated by the email system, used to identify and verify inclusive/most-complete emails for purposes of Paragraph 38 (Threading) |
| AUTHOR | Any value populated in the Author field of the document properties |
| FILENAME | Filename of an electronic document (Edoc or attachment) |
| EXTENSION | File extension of an electronic document (EDoc or attachment) |
| MD5HASH | MD5 hash value of the file |
| FILEPATH | Original file path showing where the document was stored.<br><br>For email, this should be the email folder path (e.g. johndoe.pst\Inbox\).<br><br>For loose files, this should be the path to the file (e.g. Johndoe\Desktop\My Documents\) |
| ALLFILEPATHS | Paths to duplicate maintained by other Custodians/Sources |
| DATEMOD | Date an electronic document was last modified (format: MM/DD/YYYY) (Edoc or attachment) |
| TIMEMOD | Time an electronic document was last modified (in UTC; format: HH:MM:SS) |
| DATECREATED | Date the electronic document was created (format: MM/DD/YYYY) (Edoc or attachment) |
| TIMECREATED | Time the electronic document was created (in UTC; format: HH:MM:SS) |
| FILETYPE | The document file type (e.g. MS Word, Excel) |
| PAGECOUNT | Number of pages in the document |
| DOCTEXT | File extension for email or Edoc (e.g. .doc) |
| TEXTLINK | Searchable Text File Link |
| NATIVELINK | Native File Link (Native Files only) |
| CONFIDENTIALITY DESIGNATION | The confidentiality designation (if any) pursuant to the Protective Order |

| | |
|---|---|
| REDACTED | For documents containing redactions (format: Y/N) |
| REDACTION TYPE | The reason for the redaction, if a redaction log is not provided |

*Designations listed above are friendly names for ease of reference. Actual column names used in load files may differ so long as the column names are consistent across the Producing Party's production and have the same meaning as the entries above.